# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Blackjewel L.L.C., *et al.*, | ) | Case No. 19-30289 |
| | ) | |
| Debtors.[1] | ) | (Joint Administration Requested) |

### SUPPLEMENTAL EMERGENCY MOTION OF DEBTORS AND DEBTORS-IN-POSSESSION FOR INTERIM AND FINAL ORDERS AUTHORIZING DEBTORS TO (A) OBTAIN SECURED PRIMING POST-PETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364; (B) AUTHORIZE DEBTORS TO USE CASH COLLATERAL AND OTHER COLLATERAL AND GRANT ADEQUATE PROTECTION TO PRE-PETITION SECURED LENDERS PURSUANT TO 11 U.S.C. §§ 105, 361, 362 AND 363; (C) SCHEDULE FINAL HEARING PURSUANT TO RULES 4001(b), 4001(c) AND 9014; AND (D) GRANT RELATED RELIEF

Blackjewel L.L.C. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") hereby move (the "Supplemental Motion") this Court, pursuant to sections 361, 362, 363, 364 and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules for the United States Bankruptcy Court for the Southern District of West Virginia (the "Local Rules"), for entry of an interim order to be provided shortly to this Court by the Debtors (the "Interim Order"): (a) authorizing the Debtors to obtain secured priming debtor-in-possession financing with priority over certain administrative expenses secured by priming liens on certain property of the Debtors' estates; (b) authorizing the Debtors to use cash collateral and other collateral and grant adequate protection; (c) modifying the automatic stay to the extent necessary

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtors' taxpayer identification number are as follows: Blackjewel, L.L.C. (0823); Blackjewel Holdings L.L.C. (4745); Revelation Energy Holdings, LLC (8795); Revelation Management Corporation (8908) and Revelation Energy, LLC (4605). The Debtors' headquarters are located at 1051 Main Street, Milton, West Virginia 25541-1215.

to implement the terms of the DIP Orders; (d) scheduling a final hearing (the "Final Hearing"); and (e) granting related relief.

On July 1, 2019, the Debtors filed the *Emergency Motion of Debtors and Debtors-In-Possession For Interim And Final Orders Authorizing Debtors to (A) Obtain Secured Priming Post-Petition Financing Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364(C)(1) and 364(C)(3); (B) Authorize Debtors to Use Cash Collateral and Other Collateral and Grant Adequate Protection to Pre-Petition Secured Lenders Pursuant to 11 U.S.C. §§ 105, 361, 362 And 363; (C) Schedule Final Hearing Pursuant to Rules 4001(B), 4001(C) and 9014; and (D) Grant Related Relief* [Docket No. 12] (the "Motion"). The Motion, exhibits and declarations in support thereto, as well as the facts and legal support described therein, are incorporated herein by reference in their entirety.[2]

In further support of this Supplement Motion, the Debtors respectfully state as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2. This is a core proceeding under 28 U.S.C. § 157(b), and the Debtors consent to entry of a final order by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory bases for the relief requested herein are sections 361, 362, 363 and 364 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004 and 9014 and Local Rule 4001-2.

---

[2] All terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

**REQUEST FOR RELIEF**

5.  As the Court is aware, the Debtors did not proceed with the relied requested in the Motion during the first day hearing for the reasons set forth on the record. Since the conclusion of the first day hearing, the Debtors and their professionals have been working around the clock in an effort to avoid the conversion of these Chapter 11 Cases to chapter 7 cases and to preserve the Debtors' business.

6.  By the Supplemental Motion, the Debtors seek approval of a two-step process to obtain DIP financing, as follows:

Step One: The Debtors hereby seek immediate approval of the DIP Loan to be funded by the DIP Lender, in the aggregate principal amount of $20,000,000, which amount consists of (i) existing prepetition revolving debt owed to the DIP Lender in the total amount of $11,020,131.23, and (ii) the amounts totaling $16,800.00 paid by the DIP Lender on behalf of the Debtors to deliver payroll checks of the Debtors to their Wyoming employees (collectively, the "Roll-up"), with the remaining amount of $8,963,068.77 being loaned to the Debtors in a single advance upon the grant of the Supplemental Motion (the "DIP Loan New Money"). The terms of the DIP Loan from the DIP Lender will remain as described in the Motion, except for the following: (i) the DIP Loan New Money will be subordinated in priority to the Third Party DIP Loan, as defined below, and (ii) the DIP Loan New Money will be secured by first liens and security interests on all of property of Blackjewel L.L.C., thus priming the liens currently held by Riverstone on the Riverstone Collateral and the liens held by United Bank on the United Bank Collateral.

Step Two: The Debtors have obtained additional debtor-in-possession financing from a new third party that is substantially final as to its terms and is subject to the third party's final

internal approval which is expected no later than tomorrow morning. The third party lender, who is not affiliated with the Debtors or any of the Debtors' officers and directors (the "Third Party Lender") is expected to provide a DIP loan (the "Third Party DIP Loan"). The Debtors expect to file a motion for approval of the Third Party DIP Loan later today and will ask the Court to set a hearing with respect to such loan for tomorrow, subject to this Court's availability. The expected terms of the Third Party DIP Loan are the following: (i) the amount of the Third Party DIP Loan is $15 million, (ii) the Third Party DIP Loan will be used to purchase (a) United Bank's prepetition revolving line of credit with an outstanding principal balance of $5,000,000 and (b) United Bank's term loan with an outstanding principal balance of $1,003,393.21, with the remaining amount being loaned to the Debtors in a single advance upon the grant of the Supplemental Motion. In addition, the Third Party DIP Loan will be secured by a first-priority priming security interest in and continuing lien upon all property of Blackjewel L.L.C. and will be senior to (i) the liens currently held by Riverstone on the Riverstone Collateral, (ii) the liens associated with the United Bank loans to be purchased by the Third Party Lender, and (iii) the liens to be held by the DIP Lender with respect to the DIP Loan New Money.

7.  Section 364(d)(1) authorizes the Debtors to obtain postpetition credit secured by a lien that is senior to existing liens on the encumbered property, without the consent of the existing lienholders, if the debtors cannot otherwise obtain such credit and the interests of existing lienholders are adequately protected. *See* 11 U.S.C. § 364(d)(1).

8.  Courts have identified a number of factors that support a debtor's determination to obtain credit secured by a "priming" lien, including:

> (a) whether the party subject to a priming lien has consented to such treatment;

(b) whether alternative financing is available on any other basis (*i.e.*, whether any better offers, bids or timely proposals are before the court);

(c) whether the proposed financing is necessary to preserve estate assets and is necessary, essential, and appropriate for continued operation of the debtor's business;

(d) whether the terms of the proposed financing are reasonable and adequate given the circumstances of both the debtor and proposed lender(s); and

(e) whether the proposed financing agreement was negotiated in good faith and at arm's length and entry therein is an exercise of sound and reasonable business judgment and in the best interest of the debtor's estate and its creditors.

*See*, *e.g.*, *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 37-39 (Bankr. S.D.N.Y. 1990); *Bland v. Farmworker Creditors*, 308 B.R. 109, 113-14 (S.D. Ga. 2003); *Barbara K. Enter.*, No. 08-11474, 2008 WL 2439649 at *13 (Bankr. S.D.N.Y. Jun. 16, 2008); *see also* 3 Collier on Bankruptcy ¶ 364.05 (Alan N. Resnick & Henry J. Sommer eds. 16th ed.).

9. Here, Riverstone has not consented to the priming of their first priority liens and the Debtors believe it intends to object to the requested relief. Regardless, the Debtors submit that the grant of priming liens under Bankruptcy Code section 364(d)(1) is appropriate under the circumstances. Since the events of the hearing on July 1, 2019, the Debtors and their advisors have worked around the clock to identify potential financing solutions that would allow the Debtors to continue as a going concern and avoid converting these Chapter 11 Cases to chapter 7.

10. Specifically, the Debtors' attorneys, investment banker and financial advisors have engaged with both United Bank and Riverstone and have also engaged with numerous potential sources of third-party financing. United Bank and Riverstone are unwilling to provide any additional financing to the Debtors and potential third-party funding sources, including the proposed Third Party Lender, have stated that they are only interested in providing incremental

financing is on a superpriority, priming basis. Further, while Mr. Hoops was previously willing to provide the new money portion of his DIP financing on a junior basis, given the additional risk injected into the transaction by the actions of United Bank, he is now unwilling to do so. In other words, if the DIP financing now proposed by the Debtors is not approved with the requested priming liens, no other funding sources are available.

11. The proposed DIP financing, including the priming liens, is also necessary to preserve value in these Chapter 11 Cases. As should be clear following the hearing on July 1, the Debtors stand at the precipice of conversion to chapter 7. If these Debtors convert to chapter 7, the mines will be abandoned, equipment will be stolen or destroyed and the value of the Debtors' assets will be devastated. As should be clear following the events of the hearing on July 1, these Debtors are out of options. Without the DIP financing now proposed, these Debtors' cases will convert to chapter 7 cases and immense value will be lost.

12. The prepetition secured parties have an equity cushion far greater than the twenty percent (20%) that is required under applicable case law. *See In re James River Assoc.*, 148 B.R. 790, 796 (E.D. Va. 1992) ("Under the 'equity cushion' theory, if a debtor has equity in a property sufficient to shield the creditor from either the declining value of the collateral or an increase in the claim from accrual of interest or expenses, then the creditor is adequately protected"); *see also In re Kost*, 102 Bankr. 829, 831-32 (D. Wyo. 1989) ("Case law has almost uniformly held that an equity cushion of 20% or more constitutes adequate protection. . . . Case law has almost as uniformly held that an equity cushion under 11% is insufficient to constitute adequate protection. . . . Case law is divided on whether a cushion of 12% to 20% constitutes adequate protection. . . .") (quoting *In re McKillips*, 81 Bankr. 454, 458 (Bankr. N.D. Ill. 1987); *In re Lane*, 108 Bankr. 6, 7 (Bankr. D. Mass. 1989).

13. Given the circumstances and the fact that no other financing is available under the circumstances, the Debtors believe that the terms of the proposed financing are reasonable. Given the alternatives here, no other choice seems viable. Further, while Mr. Hoops is the Debtors' President and CEO, he is represented by independent counsel and the terms of his portion of the DIP financing have been negotiated at arms' length. The proposed new money lender is unrelated to these Chapter 11 Cases and entities and has its own proposed counsel and advisors.

14. Finally, as explained above, the Debtors do not believe that any existing secured parties will be harmed by the proposed DIP financing or the priming liens to be granted thereunder. These parties are adequately protected by virtue of the equity cushion available in their existing collateral. According to a valuation of certain of Riverstone's collateral prepared by Richie Brothers, just the equipment and other items subject to that report were valued at $74.4 million as recently as October 17, 2018. This is more than double the outstanding amounts owed to Riverstone alone, not even accounting for its other collateral, and well in advance of the 20% equity cushion courts typically look for in granting non-consensual priming liens.

## WAIVER OF BANKRUPTCY RULE 6004(a) AND (h)

15. The Debtors believe and efficient and expeditious approval and implementation of the DIP loans is in the best interests of the Debtors' estates, their creditors and other parties in interest. Accordingly, the Debtors seek waiver of the 14-day stay of orders authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## **NOTICE**

16. The Debtors, with the assistance of their proposed claims and noticing agent, will use their reasonable best efforts under the exigent circumstances of these Chapter 11 Cases to provide notice of this Supplemental Motion by email and/or fax to the following parties, or in lieu thereof, to their counsel, to: (i) the Office of the United States Trustee for the Southern District of West Virginia; (ii) the Debtors' prepetition secured lenders; (iii) the creditors appearing on the Debtors' consolidated list of top 30 unsecured creditors; (iv) the Office of the United States Attorney for the District of West Virginia; (v) the Internal Revenue Service; (vi) any local, state, or federal agencies that regulate the Debtors' businesses, and (vii) all parties requesting notices pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested in the Supplemental Motion.

DATED: July 2, 2019	**SUPPLE LAW OFFICE, PLLC**

By: */s/ Joe M. Supple*
Joe M. Supple, Bar. No. 8013
801 Viand St.
Point Pleasant, WV 25550 Telephone:
304.675.6249 Facsimile: 304.675.4372
joe.supple@supplelaw.net

- and -

Stephen Lerner (*pro hac vice* admission pending)
Nava Hazan (*pro hac vice* admission pending)
Travis McRoberts (*pro hac vice* admission pending)
SQUIRE PATTON BOGGS (US) LLP
201 E. Fourth Street, Suite 1900
Cincinnati, Ohio 45202
Telephone: 513.361.1200
Facsimile: 513.361.1201
stephen.lerner@squirepb.com

nava.hazan@squirepb.com
travis.mcroberts@squirepb.com

*Proposed Co-Counsel to the Debtors and Debtors-in-Possession*