# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Blackjewel L.L.C., *et al.*, | ) | Case No. 19-30289 |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |

## DEBTORS' EMERGENCY MOTION FOR AN ORDER AUTHORIZING DEBTORS TO OBTAIN INTERIM JUNIOR POSTPETITION FINANCING FROM NEW DIP LENDERS

Blackjewel, L.L.C. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases, hereby move the Court (the "DIP Motion") for entry of an order authorizing the Debtors to obtain an interim, junior secured debtor in possession financing in the total amount of $2.9 million to be provided by certain funds managed or advised by (i) Highbridge Capital Management, LLC and (ii) Whitebox Advisors LLC (the "DIP Lenders"), on the terms set forth in the term sheet attached hereto as Exhibit A (the "Term Sheet").

On July 3, 2019, the Debtors filed the *Emergency Motion For an Order Authorizing Debtors to Obtain Interim Postpetition Financing From Riverstone Credit Partners* [Docket No. 47] (the "Riverstone DIP Motion"), pursuant to which the Debtors requested authority to obtain $5 million of interim, senior secured debtor in possession financing from Riverstone Credit Partners – Direct, L.P. or any of its affiliates ("Riverstone") and United Bank on the terms set forth in the term sheet attached thereto as Exhibit A. The goal of the interim financing was to allow the Debtors to secure their assets, avoid the immediate conversion of these cases to cases under chapter

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtors' taxpayer identification number are as follows: Blackjewel, L.L.C. (0823); Blackjewel Holdings L.L.C. (4745); Revelation Energy Holdings, LLC (8795); Revelation Management Corporation (8908) and Revelation Energy, LLC (4605). The Debtors' headquarters are located at 1051 Main Street, Milton, West Virginia 25541-1215.

7, and permit the Debtors to continue working collaboratively with their lenders and key stakeholders to maximize value and obtain additional financing.  By order dated July 3, 2019, this Court approved the Riverstone DIP Motion [Docket No. 57] (the "Riverstone DIP Order") based on a budget filed with this Court on July 3, 2019 [Docket No. 53].  As of the date hereof, out of the $5 million in debtor in possession financing advanced by Riverstone, the Debtors used approximately $3 million.

By the DIP Motion, the Debtors request authority to obtain an interim debtor in possession financing to be provided by the DIP Lenders in the total amount of $2.9 million on the terms set forth in the Term Sheet attached hereto (the "DIP Loan") and pursuant to a proposed budget (the "Budget"), a copy of which is attached hereto as Exhibit B.  The DIP Loan is a junior loan and the liens to be granted to the DIP Lenders under the DIP Loan will be junior to the liens granted to Riverstone and United Bank under the Riverstone DIP Order, as well as the pre-petition liens securing such lenders' respective facilities.

The financing from the DIP Lenders is a short-term bridge financing, which will allow the Debtors more time to continue working collaboratively with their key stakeholders to maximize value in these cases. The Debtors are working with the DIP Lenders and several other potential investors to provide additional and long-term financing that, if obtained and approved by this Court, will allow the Debtors to maximize the value of their assets and estates through an orderly sale process.

WHEREFORE, the Debtors respectfully request entry of the order, substantially in the form attached hereto as <u>Exhibit C</u>, granting the relief requested herein and such other and further relief as is just.

DATED: July 19, 2019

**SUPPLE LAW OFFICE, PLLC**

By: */s/ Joe M. Supple*
Joe M. Supple, Bar. No. 8013
801 Viand St.
Point Pleasant, WV 25550
Telephone: 304.675.6249
Facsimile: 304.675.4372
joe.supple@supplelaw.net

- and -

**SQUIRE PATTON BOGGS (US) LLP**

Stephen Lerner (admitted *pro hac vice*)
Nava Hazan (admitted *pro hac vice*)
Travis McRoberts (admitted *pro hac vice*)
201 E. Fourth Street, Suite 1900
Cincinnati, Ohio 45202
Telephone: 513.361.1200
Facsimile: 513.361.1201
stephen.lerner@squirepb.com
nava.hazan@squirepb.com
travis.mcroberts@squirepb.com

*Proposed Co-Counsel to the Debtors and Debtors-in-Possession*

## **EXHIBIT A**

Term Sheet

(Attached)

# **DIP TERM SHEET**

This Summary of Proposed Material Terms and Conditions (this "***DIP Term Sheet***") sets forth the material terms of a proposed debtor-in-possession financing facility that the DIP Lenders (as defined below) are contemplating providing to Blackjewel L.L.C. and its affiliated debtors (the "***Debtors***") in connection with the cases pending before the United States Bankruptcy Court for the Southern District of West Virginia (the "***Bankruptcy Court***") under the caption *In re Blackjewel L.L.C.*, et al. (FWV) (the "***Chapter 11 Cases***").  This DIP Term Sheet does not constitute a commitment, a contract to provide a commitment, an offer to sell, any solicitation to enter into any transaction, or any agreement by the DIP Lenders to provide the financing described herein.

This DIP Term Sheet does not attempt to describe all of the terms, conditions, and requirements that would pertain to the financing described herein, but rather is intended to be a summary outline of certain basic items, which shall be set forth in final documentation, which documentation shall be acceptable in all respects to the DIP Lenders in their sole discretion.

| | |
|---|---|
| **DIP Facility:** | The facility is a debtor-in-possession credit facility (the "***DIP Facility***;" the loans thereunder, the "***DIP Loans***") in an aggregate principal amount of up to $2.9 million (the "***Total DIP Commitment***"). |
| | The Total DIP Commitment will be available in a single draw upon entry of the DIP Order and the satisfaction of the "Conditions Precedent to Funding" ("***Funding***") and shall terminate immediately and automatically upon drawing thereof. |
| **DIP Lenders:** | Certain funds managed or advised by (i) Highbridge Capital Management, LLC and (ii) Whitebox Advisors LLC set forth on Schedule I hereto (the "***DIP Lenders***"). |
| **DIP Agent:** | [TBD] |
| **Borrowers:** | Blackjewel L.L.C. and Blackjewel Holdings L.L.C. (together, the "***Borrowers***" and, collectively with all direct and indirect subsidiaries of Blackjewel Holdings L.L.C., the "***Company***"). |
| **Guarantors:** | Each Debtor subsidiary of Blackjewel Holdings, L.L.C. (other than Blackjewel L.L.C.) |
| **Term:** | 4-month term with a 2-month extension option at the election of the Borrowers, subject to payment by the Borrowers of an extension fee of 1.00%, payable in cash. |
| **OID:** | 4.00% |
| **Interest:** | LIBOR + 12.50% (LIBOR floor of 2.00%) |
| | Interest shall be paid in cash on a monthly basis in arrears. |

**Default Interest Rate:**   2.00% in excess of the interest rate, payable in cash upon demand

**Exit Fee:**   2.00% exit fee, which shall be fully earned on the closing of the DIP Facility and due and payable in cash on each prepayment or repayment date on the portion of DIP Loans so prepaid or repaid, including on the maturity date.

**Use of Proceeds:**   Subject to an agreed upon budget, the proceeds of the DIP Facility shall be available for the working capital needs of the Debtors' Powder River Basin operations in Wyoming (the "***Western Division***") and to fund the costs of the administration of the Debtors' bankruptcy cases, including the payment of professional fees and expenses.

**DIP Collateral:**   The DIP Facility is granted:

(a) Liens on all present and after-acquired property (whether tangible, intangible, real, personal or mixed and wherever located) of the Debtors that were not subject to validly perfected liens as of the Petition Date, including without limitation proceeds of avoidance actions, which liens shall be junior to any liens (the "***Existing DIP Facility Liens***") securing the existing interim DIP financing provided by Riverstone Credit Partners – Direct, L.P. (the "***Existing DIP Facility***");

(b) Liens on all present and after-acquired encumbered property (whether tangible, intangible, real, personal or mixed and wherever located) of the Debtors that is subject to validly perfected liens as of the date of the filing of the Chapter 11 Cases, which liens shall be junior to the (i) Existing DIP Facility Liens, (ii) existing liens securing the Debtors' prepetition secured term loan facility provided by Riverstone Credit Partners and (iii) existing liens securing the Debtors' prepetition secured loan facility provided by United Bank, Inc. but senior to all other existing liens; and

(c) Superpriority administrative expense claims against all Debtors (the "***DIP Superpriority Claims***"), which claims shall be junior to any allowed superpriority administrative claims granted in connection with the Existing DIP Facility but shall be senior to all other administrative expenses or other claims.

All of the liens securing the DIP Facility described herein shall, to the fullest extent permitted by applicable law, be effective and perfected upon entry of the DIP Order and without the necessity of the execution of mortgages, security agreements, pledge agreements, financing statements or other agreements.

Notwithstanding the foregoing, the Company shall take all actions necessary, desirable and/or reasonably requested by the DIP Agent or

2

|  |  |
|---|---|
|  | DIP Lenders to create and perfect all liens in the collateral securing the DIP Facility including in any jurisdiction in which the DIP Order is not applicable. |
|  | In addition, with respect to the DIP Facility, the DIP Order shall provide for waivers of section 506(c), section 552(b)'s equities of the case exception, and any right to apply the equitable doctrine of marshaling, among other customary terms and provisions. |
| **Conditions Precedent to Funding:** | (a) Entry of the DIP Order by the Bankruptcy Court; |
|  | (b) Payment in cash, substantially contemporaneously with Funding, of the DIP Lenders' and the DIP Agent's outstanding professional fees and expenses; |
|  | (c) Receipt of each DIP Lender and the DIP Agent of all documentation and other information required by regulatory authorities under applicable "know your customer" and anti-money laundering rules and regulations; |
|  | (d) Approval by the DIP Agent and the DIP Lenders of the budget; and |
|  | (e) The absence of an event of default as set forth in this DIP Term Sheet. |
| **Covenants:** | The Company shall, upon the reasonable request of the DIP Agent or the DIP Lenders (which may be made at any time for any reason): |
|  | (a) Take any reasonably necessary steps to enter into long-form documentation, including, without limitation, a DIP credit agreement, an order of the Bankruptcy Court approving the DIP Facility on an interim basis and/or final basis (the "***DIP Order***"), and all the security and collateral agreements that are required by, and are in form and substance satisfactory to, the DIP Lenders (collectively, the "***DIP Loan Documents***"); |
|  | (b) Use commercially reasonably efforts to execute the DIP Loan Documents as soon as reasonably practicable; |
|  | (c) Deliver financial and other information and documentation of the Company; |
|  | (d) Provide unlimited access to the Debtors' properties, professionals, other advisors and employees; |
|  | (e) Take any reasonably necessary steps to maintain and stabilize the Western Division; and |
|  | (f) Consult the DIP Lenders with respect to any material operational or financial decisions relating to the Western Division. |
|  | The affirmative and negative covenants set forth in the Existing DIP |

|  |  |
|---|---|
| | Facility are also incorporated herein by reference. |
| **Events of Default:** | (a) Non-payment of principal and interest under the DIP Facility when due; |
| | (b) Failure by any Debtor to comply with any of the covenants set forth in this DIP Term Sheet and the DIP Order; |
| | (c) The DIP Order is overturned, vacated, subsequently reversed, materially modified in a manner that adversely affects the DIP Lenders or otherwise is no longer in full force and effect; |
| | (d) Failure of the Debtors to execute the DIP Loan Documents in form and substance satisfactory to the DIP Lenders on or before August 2, 2019; and |
| | (e) Failure of the Bankruptcy Court to enter the DIP Order approving the DIP Facility on a final basis on or before August 16, 2019. |
| | The events of default set forth in the Existing DIP Facility are also incorporated herein by reference. |
| **Assignments:** | Each DIP Lender shall have the ability to freely assign all or any portion of its DIP Loans with or without the consent or approval of the Borrowers, the Bankruptcy Court or any other party. |
| **Other Terms:** | The DIP Loan Documents shall contain covenants, conditions precedent, events of default, milestones, representations and warranties, adequate protection and other terms that are customary for facilities of this type or are otherwise acceptable in form and substance to the DIP Lenders. |
| **Expenses and Indemnification:** | All reasonable and documented out-of-pocket accrued and unpaid fees, costs, disbursements and expenses of the DIP Agent and the DIP Lenders (including, without limitation, the reasonable and documented fees, costs and expenses of Paul, Weiss, Rifkind, Wharton & Garrison LLP as lead counsel, local Wyoming counsel, local West Virginia counsel and coal industry advisors (and other advisors, as necessary)) shall be paid monthly. |
| | In addition, the Company shall indemnify the DIP Agent and the DIP Lenders and each of their respective assignees, management companies and affiliates and their affiliates' respective officers, directors, employees, agents, advisors, attorneys and representatives. |
| **Governing Law:** | State of New York (and, to the extent applicable, the Bankruptcy Code). |

5

| | |
|---|---|
| **Counsel to the DIP Lenders:** | Paul, Weiss, Rifkind, Wharton & Garrison LLP and each local counsel retained by the DIP Lenders. |

[Signature pages follow]

IN WITNESS WHEREOF, each of the undersigned parties have caused this DIP Term Sheet to be duly executed and delivered by their respective proper and duly authorized officers as of July 19, 2019.

**BLACKJEWEL L.L.C.**,
as Borrower

By: _____
   Name:
   Title:

**BLACKJEWEL HOLDINGS L.L.C.**,
as Borrower

By: _____
   Name:
   Title:

                **HIGHBRIDGE SCF LOAN SPV, L.P.**,
                as DIP Lender

                By: **Highbridge Capital Management, LLC**,
                as Trading Manager

                By: _____
                    Name:
                    Title:

         **WHITEBOX MULTI-STRATEGY PARTNERS FUND, L.P.**,
         as DIP Lender


         By: _____
            Name:
            Title:

## **SCHEDULE I**

### **DIP Lenders**

| **DIP Lender** | **Commitment** |
|---|:---:|
| Highbridge SCF Loan SPV, L.P. | $1,450,000.00 |
| Whitebox Multi-Strategy Partners Fund, L.P. | $1,450,000.00 |
| **TOTAL:** | $2,900,000.00 |

## **EXHIBIT B**

Budget

(Attached)

Case 3:19-bk-30289 Doc 250 Filed 07/19/19 Entered 07/19/19 10:10:50 Desc Main
Document Page 14 of 16

**Blackjewel L.L.C.**
**Cash Flow Forecast**
**Prepared as of 07/18/2019**
($ 000's)

|  | Through 7/22/19 |
|---|---:|
| **West Region** | |
| Cash Receipts | $ - |
| Payroll | - |
| Operating Costs | - |
| **Total West Region Cash Flow** | **-** |
| **East Region** | |
| Payroll | - |
| Operating Costs | - |
| **Total East Region Cash Flow** | **-** |
| **Corporate** | |
| Insurance | (2,070) |
| Professional Fees | - |
| **Total Corporate Cash Flow** | **(2,070)** |
| **Total Net Operating Cash Flow** | **(2,070)** |
| *Cumulative Net Operating Cash Flow* | |
| DIP Draw | 2,000 |
| **Total Financing Flows** | **2,000** |
| **Unidentified Expenses** | - |
| **Total Net Cash Flow** | **$ (70)** |
| **Beginning Cash** | **$ 1,176** |
| Total Net Cash Flow | (70) |
| **Ending Cash** | **$ 1,106** |
| Accrued Payroll [1] | (658) |
| **Ending Adjusted Liquidity** | **$ 448** |

[1] Accrued payroll represents post-petition amounts accrued for employees who have returned to work.

## **EXHIBIT C**

Proposed Order

(Attached)