Frank W. Volk, Chief Judge
United States Bankruptcy Court
Southern District of West Virginia

**Dated: July 19th, 2019**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Blackjewel L.L.C., *et al.*, | ) | Case No. 19-30289 |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |

## INTERIM ORDER GRANTING EMERGENCY MOTION OF DEBTORS
## AND DEBTORS-IN-POSSESSION FOR INTERIM AND FINAL ORDERS
## (A) AUTHORIZING DEBTORS TO OBTAIN INTERIM JUNIOR POST-PETITION
## FINANCING AND (B) SCHEDULING
## FINAL HEARING PURSUANT TO RULES 4001(b), 4001(c) AND 9014

This matter came before the Court for emergency hearing on July 19, 2019 (the "Interim

Hearing") on the *Emergency Motion For an Order Authorizing Debtors to Obtain Interim Junior

Postpetition Financing From New DIP Lenders*, dated as of July 19, 2019 [Docket No. 250] (the

"Motion")[2] seeking interim and final approval of a post-petition junior financing (the "DIP Loan")

from the DIP Lenders, on the terms set forth in the Term Sheet attached hereto as Exhibit A and

subject to the budget attached hereto as Exhibit B (the "Budget"). Upon the record of the Debtors'

jointly administered chapter 11 cases (collectively, the "Cases") and this Court having held an

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtors' taxpayer identification number are as follows: Blackjewel, L.L.C. (0823); Blackjewel Holdings L.L.C. (4745); Revelation Energy Holdings, LLC (8795); Revelation Management Corporation (8908) and Revelation Energy, LLC (4605). The Debtors' headquarters are located at 1051 Main Street, Milton, West Virginia 25541-1215.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

interim hearing to consider the Motion (the "Interim Hearing"), and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by this Court, (except as specifically provided in this Interim Order); and it appearing that approval of the interim relief requested in the Motion is necessary to avoid and irreparable harm the Debtors and their estates, and having considered all the pleadings filed with this Court and the record of the Interim Hearing and after due deliberation and consideration, and good and sufficient cause appearing therefor, and it appearing to be in the best interests of the Debtors' estates and creditors:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW FOR PURPOSES OF ENTERING THIS INTERIM ORDER:**

1.     Consistent with the requirements of the Bankruptcy Code and the evidence presented at the Interim Hearing before this Court, including the testimony of Robert J. White of Jeffries LLC, the Court finds and determines that the Debtors were unable to find any financing on more favorable terms than the terms proposed in the DIP Loan.

2.     Based upon the record presented at the Interim Hearing, the DIP Loan has been negotiated in good faith and at arm's length between the Debtors and the DIP Lenders.  The DIP Loan shall be deemed to have been extended by the DIP Lenders in "good faith," as such term is used in Section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by Section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed, or modified, on appeal or otherwise.

**BASED UPON THE FOREGOING, AND UPON THE RECORD MADE BEFORE THIS COURT, IT IS HEREBY ORDERED THAT**:

3.        Pursuant to Section 364(c) of the Bankruptcy Code, the Debtors are authorized to borrow up to $2,900,000 on the terms set forth in the Term Sheet and the Budget (the "Junior DIP Facility").

4.        The Budget, a copy of which is attached hereto as Exhibit B, is hereby approved.

5.        As security for the Debtors' payment of the DIP Loan, the DIP Lenders are hereby granted liens and security interests (the "DIP Liens") on all of the Debtors' assets and property, including, without limitation, the Debtors' cash, accounts, inventory, equipment, fixtures, general intangibles, intercompany claims, intercompany transfers, documents, insurance, instruments, chattel paper, deposit accounts, letter-of-credit rights, commercial tort claims, investment property, intellectual property, contract rights, and books and records relating to any assets of such Debtors and all proceeds (including, without limitation, insurance proceeds) of the foregoing and the proceeds of all of the Debtors' claims and causes of actions pursuant to Sections 502(d), 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code (collectively, the "DIP Collateral").

6.        Pursuant to Section 364(c)(1) of the Bankruptcy Code, the obligations under the DIP Loan shall constitute an allowed super priority administrative claim against the Debtors, with priority over any and all administrative expenses, except those super priority administrative claims of Riverstone granted pursuant to the Riverstone DIP Order, of the kind specified in Section 503(b) or 507(b) of the Bankruptcy Code and arising under Section 506(c) of the Bankruptcy Code.

7.        Pursuant to Section 364(c)(3) of the Bankruptcy Code and as set forth in the Term Sheet, the DIP Liens shall be junior to (a) all liens on property of the Debtors' estates securing the

DIP facility extended pursuant to the Riverstone DIP Order (the "Riverstone DIP Facility"),[3] (b) those liens granted in connection with the prepetition facilities extended by Riverstone and United Bank, to the extent such liens on the prepetition facilities were valid, perfected, enforceable and unavoidable as of the Petition Date, and (c) any valid, perfected, enforceable and unavoidable liens as of the Petition Date held or asserted by (1) Campbell County, Wyoming for unpaid ad valorem taxes, (2) Fifth Third Bank and (3) Caterpillar Financial Services Corporation.

8.      Pursuant to Section 364(d) of the Bankruptcy Code and as set forth in the Term Sheet, the DIP Liens shall be senior to all liens on property of the Debtors' estates, except (a) those liens granted in connection with the Riverstone DIP Facility, (b) those liens granted in connection with the prepetition facilities extended by Riverstone and United Bank, to the extent such liens on the prepetition facilities were valid, perfected, enforceable and unavoidable as of the Petition Date, and (c) any valid, perfected, enforceable and unavoidable liens as of the Petition Date held or asserted by (1) Campbell County, Wyoming for unpaid ad valorem taxes, (2) Fifth Third Bank and (3) Caterpillar Financial Services Corporation.

9.      In no event shall any DIP Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral, except with respect to the property of the Debtors securing the claims of the Dean-McAfee Lenders against Dean-McAfee Collateral (each as defined in the verified objection of the Dean-MacAfee Lenders on July 19, 2019 at Docket No. 256); and in no event shall any DIP Liens be subject to any pre-petition or post-petition lien or security interest that is avoided and preserved for the benefit of the Debtors' estates pursuant to Section 551 of the Bankruptcy Code.

---

[3] United Bank is a participant in the Riverstone DIP Facility.

10.     Any and all payments or proceeds remitted at any time to any DIP Lender shall be received free and clear of any lien, claim, charge, assessment or other liability, including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, Section 506(c) or the "equities of the case" exception of Section 552(b) of the Bankruptcy Code.

11.     Each DIP Lender shall be entitled to all of the rights and benefits of Section 552 of the Bankruptcy Code, and the "equities of the case" exception under Section 552 of the Bankruptcy Code shall not apply to the DIP Lenders with respect to any DIP Collateral.

12.     No costs or expenses of administrative shall be imposed upon any DIP Lender or DIP Collateral pursuant to Section 506(c) of the Bankruptcy Code or otherwise without the prior written consent of such affected DIP Lender, and no such consent shall be implied from any action, inaction, or acquiescence by any such DIP Lender.

13.     The DIP Liens shall be deemed to be valid, binding, enforceable, and duly perfected upon entry of this Interim Order.  No DIP Lender shall be required to file any UCC-1 financing statements, assignments, pledges, notices of lien, or any similar document or instrument or take any other action (including taking possession of any DIP Collateral) in order to effect or validate the perfection of any liens securing the Junior DIP Facility, but all of such filings and other actions are hereby authorized by the Court.  If any DIP Lender shall, in its discretion, choose to file or record any such assignments, pledges, notices of lien, or UCC-1 financing statements, or take any other action to effect or evidence the perfection of the DIP Liens, all such documents and instruments shall be deemed to have been filed or recorded at the time and on the date of entry of this Interim Order.

14.     Upon the occurrence of an Event of Default and during the continuance thereof, (i) the DIP Lenders shall be fully authorized, in their sole discretion, to terminate further advances

under the DIP Loan, accelerate the maturity and demand payment of any or all of the DIP Loan

and (ii) the automatic stay imposed by Section 362(a) of the Bankruptcy Code shall be deemed

modified to permit the DIP Lenders to exercise any remedies available under applicable law.

"Event of Default" shall mean the occurrence of (i) a sale of all or substantially all of the Debtors'

assets without the prior written consent of the DIP Lenders, (ii) entry of an order by this Court

converting any of the Cases to cases under Chapter 7 of the Bankruptcy Code, (iii) entry of an

order by this Court appointing a trustee with expanded powers for the Debtors, (iv) entry of an

order by this Court dismissing any of the Cases of the currently filed Debtors (except to the extent

such Debtors are immaterial subsidiaries), (v) entry of an order by this Court confirming a plan of

reorganization or liquidation that does not provide for payment in full in cash of the DIP Loan,

(vi) any failure by the Debtors to comply with the Budget, (vii) any breach by the Debtors of the

provisions and/or obligations of this Interim Order, (viii) any breach by the Debtors of their

obligations or covenants set forth in the Term Sheet, (ix) if the DIP Order (as defined in the Term

Sheet) is amended, modified, vacated or reversed without the DIP Lenders prior written consent,

and/or (x) the failure of this Court to enter the DIP Order approving the Junior DIP Facility on a

final basis within thirty (30) days of the date hereof; provided, however, that prior to the DIP

Lenders exercising any remedies under this paragraph (and the "DIP Lender" (as defined in the

Riverstone DIP Order) exercising any remedies under the Riverstone DIP Order), the DIP Lenders

shall provide a notice of default to the Debtors and the Debtors shall have five (5) business days

to obtain an order or ruling from the Court solely with respect to whether an Event of Default has

actually occurred.

15.    Effective as of the entry of this Interim Order, the Debtors hereby forever,

unconditionally and irrevocably release, discharge, and acquit the DIP Lenders and each of their

respective successors, assigns, affiliates, management companies, subsidiaries, parents, and each

of their respective officers, shareholders, directors, employees, attorneys, consultants, advisors

(including coal industry advisors, but only in their capacity as such) and agents, past, present, and

future (together with their respective heirs, predecessors, successors, and assigns, collectively, the

"Releasees") of and from any and all claims, actions, damages, demands, liabilities, and causes of

action of any and every nature whatsoever, whether arising at law, in equity, tort or contract, and

whether known or unknown, or matured or unmatured, disputed or undisputed, secured or

unsecured, that arise out of or relate to the DIP Loan.  The Debtors further waive and release any

defense, right of counterclaim, right of set-off, or deduction with respect to the payment of the DIP

Loan that the Debtors now have or may claim to have against any Releasee, arising out of,

connected with, or relating to any and all acts, omissions, or events occurring prior to the date of

entry of this Interim Order.

16.    The provisions of this Interim Order and any actions taken pursuant hereto shall

survive any reversal or dismissal of this Interim Order or the entry of, and shall govern with respect

to any conflict with, any order that may be entered confirming any plan of reorganization or

liquidation in any of the Cases or any successor case.

17.    In no event shall any Debtor incur any debt for borrowed money that is senior or

*pari passu* to the DIP Liens or DIP Loans under this Interim Order without the consent of the DIP

Lenders.

18.    Notwithstanding anything to the contrary in this Interim Order, the Term Sheet, or

the DIP Loan Documents (as defined in the Term Sheet), nothing in this Interim Order, the Term

Sheet or the DIP Loan Documents shall: (i) impair, adversely affect, or expand any right under

applicable law of any governmental unit with respect to any financial assurance, letter of credit,

trust, surety bond, or insurance proceeds; (ii) waive, impair, adversely affect, or expand the United States' rights (if any), states' rights (if any), or the rights of an Indian tribe (if any), under applicable law, to refuse to provide its consent to the proposed assumption and/or assignment of any lease or executory contract to which it is a party; (iii) impair or, adversely affect or expand any valid right, claim, or defense of setoff or recoupment that the United States' rights (if any), states' rights (if any), or the rights of an Indian tribe (if any), under applicable law; or (iv) limit any governmental unit in the exercise of its police powers in accordance with 11 U.S.C. § 362(b)(4).

19.    The Court shall retain exclusive jurisdiction to interpret and enforce this Order and the DIP Loan.

20.    This Interim Order shall be effective upon entry on the docket by the Court, and the ten (10) day-stay imposed by Rule 6004(h), to the extent applicable, is hereby waived.

21.    Within three (3) business days after the entry of this Order, the Debtors shall serve a copy of the Motion and this Order in accordance with the Bankruptcy Rules.

22.    The objection of the Official Committee of Unsecured Creditors raised at the Interim Hearing as to the grant of a DIP Lien on the proceeds of all of the Debtors' claims and causes of actions pursuant to Sections 502(d), 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code is expressly reserved.

23.    Any objection to approval of the DIP Loan from the DIP Lenders on a final basis shall be (a) filed in accordance with the Court's CM/ECF procedures or in writing with the Clerk of the Court, by 4:00 p.m. E.S.T. on the date that is 7 days prior to the date of the Final Hearing (as defined below) (the "Objection Deadline"), and (b) served so as to be actually received by the following parties by the Objection Deadline: (i) the office of the United States Trustee; (ii) counsel

to the DIP Lenders; (iii) counsel to the Debtors; (iv) counsel to the Debtors' other secured lenders,

and (v) counsel to the Official Unsecured Creditors' Committee. The final hearing on the Motion

(the "<u>Final Hearing</u>") shall be on August 14, 2019 at 10:00 a.m. E.S.T. in Charleston, WV.

This Order shall remain in effect until the Final Hearing.

Submitted By:

**SUPPLE LAW OFFICE, PLLC**

By: */s/ Joe M. Supple*
Joe M. Supple, Bar. No. 8013_____
801 Viand St.
Point Pleasant, WV 25550
Telephone: 304.675.6249
Facsimile: 304.675.4372
joe.supple@supplelaw.net

- and -

**SQUIRE PATTON BOGGS (US) LLP**

Stephen Lerner (admitted *pro hac vice*)
Nava Hazan (admitted *pro hac vice*)
Travis McRoberts (admitted *pro hac vice*)
201 E. Fourth Street, Suite 1900
Cincinnati, Ohio 45202
Telephone: 513.361.1200
Facsimile: 513.361.1201
stephen.lerner@squirepb.com
nava.hazan@squirepb.com
travis.mcroberts@squirepb.com

*Proposed Co-Counsel to the Debtors and Debtors-in-Possession*

## **EXHIBIT A**

Term Sheet

(Attached)

## DIP TERM SHEET

This Summary of Proposed Material Terms and Conditions (this "***DIP Term Sheet***") sets forth the material terms of a proposed debtor-in-possession financing facility that the DIP Lenders (as defined below) are contemplating providing to Blackjewel L.L.C. and its affiliated debtors (the "***Debtors***") in connection with the cases pending before the United States Bankruptcy Court for the Southern District of West Virginia (the "***Bankruptcy Court***") under the caption *In re Blackjewel L.L.C.*, et al. (FWV) (the "***Chapter 11 Cases***"). This DIP Term Sheet does not constitute a commitment, a contract to provide a commitment, an offer to sell, any solicitation to enter into any transaction, or any agreement by the DIP Lenders to provide the financing described herein.

This DIP Term Sheet does not attempt to describe all of the terms, conditions, and requirements that would pertain to the financing described herein, but rather is intended to be a summary outline of certain basic items, which shall be set forth in final documentation, which documentation shall be acceptable in all respects to the DIP Lenders in their sole discretion.

| | |
|---|---|
| **DIP Facility:** | The facility is a debtor-in-possession credit facility (the "***DIP Facility***;" the loans thereunder, the "***DIP Loans***") in an aggregate principal amount of up to $2.9 million (the "***Total DIP Commitment***"). |
| | The Total DIP Commitment will be available in a single draw upon entry of the DIP Order and the satisfaction of the "Conditions Precedent to Funding" ("***Funding***") and shall terminate immediately and automatically upon drawing thereof. |
| **DIP Lenders:** | Certain funds managed or advised by (i) Highbridge Capital Management, LLC and (ii) Whitebox Advisors LLC set forth on Schedule I hereto (the "***DIP Lenders***"). |
| **DIP Agent:** | [TBD] |
| **Borrowers:** | Blackjewel L.L.C. and Blackjewel Holdings L.L.C. (together, the "***Borrowers***" and, collectively with all direct and indirect subsidiaries of Blackjewel Holdings L.L.C., the "***Company***"). |
| **Guarantors:** | Each Debtor subsidiary of Blackjewel Holdings, L.L.C. (other than Blackjewel L.L.C.) |
| **Term:** | 4-month term with a 2-month extension option at the election of the Borrowers, subject to payment by the Borrowers of an extension fee of 1.00%, payable in cash. |
| **OID:** | 4.00% |
| **Interest:** | LIBOR + 12.50% (LIBOR floor of 2.00%) |
| | Interest shall be paid in cash on a monthly basis in arrears. |

| | |
|---|---|
| **Default Interest Rate:** | 2.00% in excess of the interest rate, payable in cash upon demand |
| **Exit Fee:** | 2.00% exit fee, which shall be fully earned on the closing of the DIP Facility and due and payable in cash on each prepayment or repayment date on the portion of DIP Loans so prepaid or repaid, including on the maturity date. |
| **Use of Proceeds:** | Subject to an agreed upon budget, the proceeds of the DIP Facility shall be available for the working capital needs of the Debtors' and to fund the costs of the administration of the Debtors' bankruptcy cases, including the payment of professional fees and expenses. |
| **DIP Collateral:** | The DIP Facility is granted: |

(a) Liens on all present and after-acquired property (whether tangible, intangible, real, personal or mixed and wherever located) of the Debtors that were not subject to validly perfected liens as of the Petition Date, including without limitation proceeds of avoidance actions, which liens shall be junior to any liens (the "***Existing DIP Facility Liens***") securing the existing interim DIP financing provided by Riverstone Credit Partners – Direct, L.P. (the "***Existing DIP Facility***");

(b) Liens on all present and after-acquired encumbered property (whether tangible, intangible, real, personal or mixed and wherever located) of the Debtors that is subject to validly perfected liens as of the date of the filing of the Chapter 11 Cases, which liens shall be junior to the (i) Existing DIP Facility Liens, (ii) existing liens securing the Debtors' prepetition secured term loan facility provided by Riverstone Credit Partners and (iii) existing liens securing the Debtors' prepetition secured loan facility provided by United Bank, Inc. but senior to all other existing liens; and

(c) Superpriority administrative expense claims against all Debtors (the "***DIP Superpriority Claims***"), which claims shall be junior to any allowed superpriority administrative claims granted in connection with the Existing DIP Facility but shall be senior to all other administrative expenses or other claims.

All of the liens securing the DIP Facility described herein shall, to the fullest extent permitted by applicable law, be effective and perfected upon entry of the DIP Order and without the necessity of the execution of mortgages, security agreements, pledge agreements, financing statements or other agreements.

Notwithstanding the foregoing, the Company shall take all actions necessary, desirable and/or reasonably requested by the DIP Agent or DIP Lenders to create and perfect all liens in the collateral securing

2

the DIP Facility including in any jurisdiction in which the DIP Order is not applicable.

In addition, with respect to the DIP Facility, the DIP Order shall provide for waivers of section 506(c), section 552(b)'s equities of the case exception, and any right to apply the equitable doctrine of marshaling, among other customary terms and provisions.

| | |
|---|---|
| **Conditions Precedent to Funding:** | (a) Entry of the DIP Order by the Bankruptcy Court; |

(b) Payment in cash, substantially contemporaneously with Funding, of the DIP Lenders' and the DIP Agent's outstanding professional fees and expenses;

(c) Receipt of each DIP Lender and the DIP Agent of all documentation and other information required by regulatory authorities under applicable "know your customer" and anti-money laundering rules and regulations;

(d) Approval by the DIP Agent and the DIP Lenders of the budget; and

(e) The absence of an event of default as set forth in this DIP Term Sheet.

| | |
|---|---|
| **Covenants:** | The Company shall, upon the reasonable request of the DIP Agent or the DIP Lenders (which may be made at any time for any reason): |

(a) Take any reasonably necessary steps to enter into long-form documentation, including, without limitation, a DIP credit agreement, an order of the Bankruptcy Court approving the DIP Facility on an interim basis and/or final basis (the "***DIP Order***"), and all the security and collateral agreements that are required by, and are in form and substance satisfactory to, the DIP Lenders (collectively, the "***DIP Loan Documents***");

(b) Use commercially reasonably efforts to execute the DIP Loan Documents as soon as reasonably practicable;

(c) Deliver financial and other information and documentation of the Company;

(d) Provide unlimited access to the Debtors' properties, professionals, other advisors and employees;

(e) Take any reasonably necessary steps to maintain and stabilize the Powder River Basin operations in Wyoming (the "***Western Division***"); and

(f) Consult the DIP Lenders with respect to any material operational or financial decisions relating to the Western Division.

The affirmative and negative covenants set forth in the Existing DIP

Facility are also incorporated herein by reference.

**Events of Default:**

    (a) Non-payment of principal and interest under the DIP Facility when due;

    (b) Failure by any Debtor to comply with any of the covenants set forth in this DIP Term Sheet and the DIP Order;

    (c) The DIP Order is overturned, vacated, subsequently reversed, materially modified in a manner that adversely affects the DIP Lenders or otherwise is no longer in full force and effect;

    (d) Failure of the Debtors to execute the DIP Loan Documents in form and substance satisfactory to the DIP Lenders on or before August 2, 2019; and

    (e) Failure of the Bankruptcy Court to enter the DIP Order approving the DIP Facility on a final basis on or before August 16, 2019.

The events of default set forth in the Existing DIP Facility are also incorporated herein by reference.

**Assignments:** Each DIP Lender shall have the ability to freely assign all or any portion of its DIP Loans with or without the consent or approval of the Borrowers, the Bankruptcy Court or any other party.

**Other Terms:** The DIP Loan Documents shall contain covenants, conditions precedent, events of default, milestones, representations and warranties, adequate protection and other terms that are customary for facilities of this type or are otherwise acceptable in form and substance to the DIP Lenders.

**Expenses and Indemnification:** All reasonable and documented out-of-pocket accrued and unpaid fees, costs, disbursements and expenses of the DIP Agent and the DIP Lenders (including, without limitation, the reasonable and documented fees, costs and expenses of Paul, Weiss, Rifkind, Wharton & Garrison LLP as lead counsel, local Wyoming counsel, local West Virginia counsel and coal industry advisors (and other advisors, as necessary)) shall be paid monthly.

In addition, the Company shall indemnify the DIP Agent and the DIP Lenders and each of their respective assignees, management companies and affiliates and their affiliates' respective officers, directors, employees, agents, advisors, attorneys and representatives.

**Governing Law:** State of New York (and, to the extent applicable, the Bankruptcy Code).

**Counsel to the DIP
Lenders:**

Paul, Weiss, Rifkind, Wharton & Garrison LLP and each local counsel retained by the DIP Lenders.

[Signature pages follow]

IN WITNESS WHEREOF, each of the undersigned parties have caused this DIP Term Sheet to be duly executed and delivered by their respective proper and duly authorized officers as of July 19, 2019.

**BLACKJEWEL L.L.C.**,
as Borrower

By: _____
   Name:
   Title:

**BLACKJEWEL HOLDINGS L.L.C.**,
as Borrower

By: _____
   Name:
   Title:

**HIGHBRIDGE SCF LOAN SPV, L.P.**,
as DIP Lender


By: **Highbridge Capital Management, LLC**,
as Trading Manager


By: _____
     Name:
     Title:

**WHITEBOX MULTI-STRATEGY
PARTNERS FUND, L.P.,**
as DIP Lender


By: _____
    Name:
    Title:

## SCHEDULE I

### DIP Lenders

| DIP Lender | Commitment |
|---|---|
| Highbridge SCF Loan SPV, L.P. | $1,450,000.00 |
| Whitebox Multi-Strategy Partners Fund, L.P. | $1,450,000.00 |
| **TOTAL:** | $2,900,000.00 |

## **EXHIBIT B**

<u>Budget</u>

(Attached)

**Blackjewel L.L.C.**
**Cash Flow Forecast**
**Prepared as of 07/18/2019**
($ 000's)

|  | Through 7/22/19 |
|---|---|
| **West Region** | |
| Cash Receipts | $    - |
| Payroll | - |
| Operating Costs | - |
| **Total West Region Cash Flow** | - |
| **East Region** | |
| Payroll | - |
| Operating Costs | - |
| **Total East Region Cash Flow** | - |
| **Corporate** | |
| Insurance | (2,070) |
| Professional Fees | - |
| **Total Corporate Cash Flow** | (2,070) |
| **Total Net Operating Cash Flow** | (2,070) |
| *Cumulative Net Operating Cash Flow* | |
| DIP Draw | 2,000 |
| **Total Financing Flows** | 2,000 |
| **Unidentified Expenses** | - |
| **Total Net Cash Flow** | $    (70) |
| | |
| **Beginning Cash** | $  1,176 |
| Total Net Cash Flow | (70) |
| **Ending Cash** | $  1,106 |
| | |
| Accrued Payroll [1] | (658) |
| **Ending Adjusted Liquidity** | $    448 |

[1] Accrued payroll represents post-petition amounts accrued for employees who have returned to work.