## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

|  |  |  |
|---|---|---|
| IN RE: | ) | Chapter 11 |
|  | ) |  |
| Blackjewel, L.L.C., *et al.,* | ) | Case No. 19-30289 |
|  | ) |  |
| Debtors[1] | ) | (Joint Administration Pending) |
|  | ) |  |

## OBJECTION OF INDEMNITY NATIONAL INSURANCE COMPANY TO MOTION OF DEBTORS FOR ENTRY OF (I) AN ORDER (A) APPROVING BIDDING PROCEDURES, (B) SCHEDULING AN AUCTION, SALE HEARING AND OTHER DATES AND DEADLINES, (C) APPROVING CONTURA ENERGY, INC. AS A STALKING HORSE PURCHASER, (D) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES AND RELATED CURE PROCEDURES, (E) APPROVING THE PURCHASE DEPOSIT, (F) AUTHORIZING TERMINATION OF THE 401(K) PLAN AND (G) GRANTING RELATED RELIEF, AND (II) AN ORDER APPROVING THE SALE OF THE PURCHASED ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES

Indemnity National Insurance Company ("INIC"), by and through its undersigned counsel, hereby objects (the "Objection") to the Motion of Debtors for Entry of an Order (A) Approving Bidding Procedures, (B) Scheduling an Auction, Sale Hearing and Other Dates and Deadlines, (C) Approving Contura Energy, Inc. as a Stalking Horse Purchaser, (D) Approving the Assumption and Assignment of Contracts and Leases and Related Cure Procedures, (E) Approving the Purchase Deposit, (F) Authorizing Termination of the 401(K) Plan and (G) Granting Related Relief, and (II) an Order Approving the Sale of the Purchased Assets Free and Clear of Liens, Claims and Encumbrances (the "Bidding Procedures Motion") [Docket No. 312].  In support of its Objection, INIC respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Blackjewel, L.L.C. (0823); Blackjewel Holdings L.L.C. (4745); Revelation Energy Holdings, LLC (8795); Revelation Management Corporation (8908); and Revelation Energy, LLC (4605).

1.    INIC has issued more than $100 million in surety bonds, on behalf of the Debtors, in order to secure their environmental reclamation obligations under state and federal law.  In the event that the Debtors fail to comply with these statutory obligations, the applicable regulatory authorities will be entitled, in addition to certain other rights, to an administrative expense claim against the Debtors' estates for the costs of compliance, *see e.g. In re Appalachian Fuels, LLC*, 521 B.R. 779, 794-799 (Bankr. E.D. Ky. 2014), and INIC (and the Debtors' other sureties) will be subrogated to the regulators' claims to the extent that they are required to make payment on account of the applicable surety bonds.  As currently drafted, the sales process is not designed to adequately address the Debtors' reclamation obligations and, in fact, will likely result in the *de facto* abandonment of properties subject to environmental liabilities in violation of applicable law and Supreme Court precedent.  *See Appalachian Fuels*, 521 B.R. at 794-795 (citing *Midlantic Nat'l Bank v. N.J. Dept. of Envt'l Prot.*, 474 U.S. 494, 507 (1986)).

2.    INIC supports a bona-fide sale process for the Debtors' assets, and given the exigent circumstances even supports an extremely expedited and non-traditional sale process, but what has been proposed by the Debtors in the Bidding Procedures Motion is simply not feasible and fails to take into account the condition and economic reality of a large percentage of the Debtors' 'assets.'  Given the emergency nature of the relief sought (and the limited time to prepare a response), this Objection will focus exclusively on those aspects of the Bidding Procedures Motion that most directly impact the rights of INIC.  INIC reserves the right to raise other objections at the hearing on the Bidding Procedures Motion as it continues to review the Bidding Procedures.

3.    The Debtors' Bidding Procedures provide that every Bid for an asset, other than the Stalking Horse Assets, <u>must</u> provide for "the payment in cash in full of a pro-rata portion of"

UST fees, professional fees and expenses, "certain other allowed administrative expenses," and "certain costs necessary to wind-down the Debtors' estates." [Bidding Procedures, pg. 14]. The Bidding Procedures further provide that these funds are to be escrowed and, even in the case of a chapter 7 conversion, may only be utilized for the specific purposes identified above and do not become property of the Debtors' chapter 7 estates.

4.     First, as the Debtors should be aware given the manner in which they acquired the majority of their assets, a large number of the Debtors' mine sites and associated permits have extensive reclamation obligations (entitled to administrative expense priority treatment and not subject to abandonment) and prospective purchasers <u>must</u> be entitled to bid for those 'assets' (or to bundle those sites with certain of the Debtors' other assets) without making a cash bid.  The Bidding Procedures must permit bids that utilize the assumption of liabilities as the only, or primary, form of consideration.  Absent this modification, the sales process will necessarily leave the Debtors' estates with massive unfunded reclamation liabilities in violation of applicable law.

5.     Second, the Debtors do not identify the amount of this proposed minimum bid Carve-Out or how they intend to calculate the "pro-rata portion" of the Carve-Out attributable to any particular asset or assets.  Bids are purportedly due in three business days and there is nothing in the Bidding Procedures from which a prospective bidder can determine the minimum amount that it will be required to bid.

6.      Third, and perhaps most importantly, this proposed Carve-Out essentially creates a class of unidentified (other than professionals who are clearly and expressly identified as a beneficiary) super-priority administrative expense claimants that will necessarily be paid to the detriment of all other administrative expense claimants in these cases.  That result is impermissible under *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973 (2017) and cannot be

sanctioned by this Court, particularly where the proposed sale process clearly contemplates conversion of these cases in less than a month.  As noted above, the Debtors' reclamation liabilities are entitled to administrative expense priority treatment.   Barring something unforeseen, the sale process will necessarily result in the proposed abandonment of certain mine sites with extensive and costly reclamation obligations.  If that outcome is permitted to occur, which INIC will necessarily contest, the Debtors cannot be allowed to pay their professionals and other cherry-picked administrative claimants rather than state and federal regulatory authorities, or any other claimants entitled to the same priority as the chosen claimants.[2]

7.      INIC, and the other sureties, are in the best position to assist the Debtors in facilitating a sale of their valuable assets, while ensuring that the Debtors' more problematic mine-sites are included in those transactions or otherwise addressed in a manner that eliminates administrative liabilities of the estates.  Further, INIC, and the other sureties, have significant potential liability (and corresponding administrative expense claims against the estates) in the event that the sales are not conducted in a manner that gives adequate consideration to the Debtors' statutory environmental obligations.  To that end, the Bidding Procedures must provide that INIC (and any other surety who makes a similar request) is added as a Consultation Party. This is standard treatment in most coal company chapter 11 cases and is particularly critical under the circumstances facing these Debtors.

8.      There are a variety of other issues with the Debtors' proposed sale structure, but, unlike those issues referenced above, INIC can likely work with the Debtors and prospective purchasers to address those issued during any sale process (assuming INIC is made a Consultation Party) and/or will assert such objections at a final sale hearing, rather than at the bid

---

[2] It is unclear from the Bidding Procedures whether this carve-out concept is also intended to apply in the sale of the Western/Pax assets.

procedures stage.  INIC simply references the existence of these issues so that the Court and the

parties are not under the mistaken impression that, if the objections raised in this Objection are

addressed, that INIC will support the results of the proposed sale process.  That being said, INIC

is prepared to work diligently and cooperatively with the Debtors and their advisors, and with

prospective purchasers, to reach an outcome that maximizes the value to the estates while

ensuring the Debtors' compliance with its critical environmental obligations (and the reduction

of administrative claims associated therewith).

Respectfully submitted,


*/s/ Stephen L. Thompson*
Stephen L. Thompson (WV 3751)
BARTH & THOMPSON
P.O. Box 129
Charleston, West Virginia 25321
Telephone:  (304) 342-7111
Facsimile:  (304) 342-6215
E-mail:  sthompson@barth-thompson.com

and


Daniel I. Waxman (KY 92736)
(*admitted pro hac vice*)
WYATT, TARRANT & COMBS, LLP
250 West Main Street, Suite 1600
Lexington, Kentucky 40507
Telephone:  (859) 233-2012
Facsimile:  (859) 259-0649
E-mail:  dwaxman@wyattfirm.com

*Counsel for Indemnity National Insurance
Company*

5

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of the foregoing has been served electronically via the Court's CM/ECF system upon all parties designated to receive electronic service on July 25, 2018.

*/s/ Stephen L. Thompson*
Stephen L. Thompson

61859859.1