Frank W. Volk, Chief Judge
United States Bankruptcy Court
Southern District of West Virginia

**Dated: July 26th, 2019**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Blackjewel, L.L.C., *et al.*, | ) | Case No. 19-bk-30289 |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |

**ORDER (A) APPROVING BIDDING PROCEDURES, (B) SCHEDULING AN AUCTION, SALE HEARING AND OTHER DATES AND DEADLINES, (C) APPROVING CONTURA ENERGY, INC. AS A STALKING HORSE PURCHASER, (D) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES AND RELATED CURE PROCEDURES, (E) AUTHORIZING TERMINATION OF THE 401(K) PLAN AND (F) GRANTING RELATED RELIEF**

Upon the motion (the "<u>Motion</u>") of the above-captioned Debtors,[2] pursuant to sections 105, 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9008 and 9014 and Local Rule 6004-1, for (a) entry of this Bidding Procedures Order establishing bidding procedures and otherwise formalizing and governing the sale process of substantially all of the Debtors' assets and (b) entry of the Sale Order following an Auction (if necessary) and Sale Hearing, that will approve the sale of the Purchased Assets (or any other Assets) by the Debtors to the highest and best bid free and clear of liens, claims and encumbrances, in a manner consistent with the dates,

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Blackjewel, L.L.C. (0823); Blackjewel Holdings L.L.C. (4745); Revelation Energy Holdings, LLC (8795); Revelation Management Corporation (8908); Revelation Energy, LLC (4605); Dominion Coal Corporation (2957); Harold Keene Coal Co. LLC (6749); Vansant Coal Corporation (2785); Lone Mountain Processing, LLC (0457); Powell Mountain Energy, LLC (1024); and Cumberland River Coal LLC (2213). The headquarters for each of the Debtors is located at 1051 Main Street, Milton, West Virginia 25541-1215.

[2] Capitalized terms used herein but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or Term Sheet, as applicable.

deadlines and other requirements provided for therein; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion in this District is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been given under the circumstances; and this Court having found that good and sufficient cause exists for the relief granted by this Order under the extraordinary circumstances surrounding this matter,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      <u>Bidding Procedures</u>.  The Bidding Procedures attached hereto as **<u>Schedule 1</u>** are approved in their entirety and shall govern all bids and bid proceedings related to the Assets under the terms thereof.  The Debtors and their advisors are hereby authorized, but not directed, to continue the existing sale process and to solicit final bids for the sale of substantially all of the Debtors' assets in accordance with the Bidding Procedures.  The Debtors and their advisors are hereby authorized, but not directed, to take all necessary or appropriate actions to implement the Bidding Procedures.

3.      <u>Term Sheet</u>.  The Term Sheet is hereby approved in its entirety and shall be used by Preliminary Interested Investors and all other Bidders in connection with the submission of Qualified Bids for the Assets.  Without limiting approval of any of the provisions of the Term Sheet, the provisions of the Term Sheet related to the Purchase Deposit and the use of the Purchase Deposit by the Debtors to pay expenses pursuant to the Budget[3] are approved in all respects, including, without limitation, deposits into an escrow account maintained for the exclusive benefit

---

[3] A copy of the Budget is attached hereto as **<u>Schedule 2</u>**.

of the professionals retained by the Debtors and the Committee of the funds necessary to pay allowed fees and expenses of those professional (the "Professional Escrow"); provided that the right of any party in interest to object to the repayment of the Purchase Deposit to Contura (but not to Contura's claim on account of the Purchase Deposit) is expressly preserved.[4]   For the avoidance of doubt, the Professional Escrow and the funds deposited therein shall not be subject to any lien or security interest and shall be maintained for the exclusive benefit of professionals retained by the Debtors and the Official Committee of Unsecured Creditors and shall not be used for any other purpose, nor will they be or be deemed to be part of any chapter 7 estate or estates in the event any of the Debtors' cases are converted to cases under chapter 7.   No trustee appointed in any subsequent chapter 7 case or cases shall have authority over such funds other than to make disbursements to professionals of allowed fees and expenses.

4.     Contract Procedures.   The following procedures regarding the assumption and assignment of executory contract and unexpired leases ("Executory Contracts") in connection with a Successful Bid (the "Contract Procedures") are hereby approved:

(a)     In connection with any Successful Bid Notice, the Debtors shall file with the Court and serve the same upon all applicable non-debtor counterparties (each, a "Counterparty") a schedule of proposed cure costs and adequate assurance obligations (the "Cure Schedule") for each executory contract and unexpired lease (each, an "Executory Contract") proposed to be assumed and assigned pursuant to each Successful Bid.   Inclusion of any document in the Cure Schedule does not constitute any admission or agreement that such document (i) is an

---

[4] For the avoidance of doubt, the funds escrowed pursuant to the *Interim Order Granting Emergency Motion of Debtors and Debtors in Possession for Interim and Final Orders (A) Authorizing Debtors to Obtain Secured Superpriority Post-Petition Financing Pursuant to 11 U.S.C. §§ 364(c)(1) and 364(d)(1) and (B) Scheduling Final Hearing Pursuant to Rules 4001(b), 4001(c) and 9014* [Docket No. 278] (the "Riverstone DIP Order") shall receive the same treatment and protections as provided for the Professional Escrow in this paragraph 3 and the Term Sheet.

executory contract or unexpired lease within the meaning of the Bankruptcy Code or (ii) will be assumed at any point by the Debtors or assumed and assigned pursuant to any Successful Bid. A Cure Schedule may be amended or supplemented (to add or remove Executory Contracts or to modify proposed cure amounts or adequate assurance) from time to time by the Debtors, in cooperation with the applicable Successful Bidder, at any time prior to or after the consummation of the transactions set forth in such Successful Bid. Only those Executory Contracts that are included on a final schedule of assumed and assigned contracts (including amendments or modifications to such schedules in accordance with such agreements), to be filed by the Debtors and the Successful Bidder, will be assumed and assigned to the Successful Bidder.

(b)     At any time before or after the consummation of the transactions contemplated by a Successful Bid, a Successful Bidder may file with the Court and serve upon a Counterparty notice of the assumption and assignment of an Executory Contract listed in the Cure Schedule and the applicable cure costs and adequate assurances associated therewith (an "Assumption/Assignment Notice"), subject to a ten-business day notice period and opportunity for objection by such Counterparty.

(c)     If an objection is timely filed by a Counterparty with respect to an Assumption/Assignment Notice, such objection shall be resolved by the Court; provided that the Successful Bidder may determine (prior to or after the resolution of such objection) that such Executory Contract should be rejected and not assigned, in which case the Successful Bidder shall not be responsible for any cure costs with respect thereto.

(d)     If no objection is timely filed by a Counterparty with respect to an Assumption/Assignment Notice (i) the cure amounts and adequate protection (if any) set forth in the Assumption/Assignment Notice shall be controlling, notwithstanding anything to the contrary

4

in the Executory Contract subject to such Assumption/Assignment Notice or any other document and (ii) the Counterparty shall be deemed to have consented to the assumption and assignment of such Executory Contract and the cure costs and adequate protection (if any) set forth in the Assumption/Assignment Notice, and shall be forever barred from objecting to the assumption and assignment of such Executory Contract and rights thereunder, including the cure amounts and adequate assurance (if any) and from asserting other claims related to such Executory Contract against the Debtor or the Successful Bidder.

(e)    Notwithstanding anything to the contrary herein, except as otherwise provided pursuant to the Sale Order, until an Executory Contract is assumed and assigned pursuant to an Assumption/Assignment Notice or order of the Court, each Counterparty to an Executory Contract shall retain all of its respective rights with respect to the assumption and assignment of its Executory Contract and any applicable cure amount required in connection therewith.

5.    <u>Stalking Horse Purchaser Designation</u>.  Contura is hereby approved as the Stalking Horse Purchaser for the Western/Pax Assets.  The Debtors are further authorized, but not directed, to designate any other interested party as a stalking horse purchaser to buy any of the Debtors' other Assets.

6.    <u>Contura Purchase Deposit</u>.  Subject to the terms of this Order, the Purchase Deposit provided by Contura, including the Superpriority Purchase Deposit Claim and the Purchase Deposit Liens, is hereby approved on the terms set forth in the Term Sheet.

(a)    If the Western/Pax Sale is consummated, the Purchase Deposit shall be applied to the purchase price thereof in accordance with the Term Sheet; <u>provided</u> that, subject in all respect to the right of any party in interest to object to the repayment of the Purchase Deposit to Contura (but not to Contura's claim on account of the Purchase Deposit), upon the earliest of

any of the following events, unless another Bidder has reimbursed Contura for the Purchase Deposit (plus interest) in full, the Debtors shall immediately remit to Contura all unused amounts of the Purchase Deposit and Contura shall have, and hereby is granted, a Superpriority Purchase Deposit Claim (as defined below), including accrued interest on the Purchase Deposit and Superiority Purchase Deposit Claim:  (i) a breach of any term of the Term Sheet by the Debtors, (ii) the use of the Purchase Price Deposit in a manner inconsistent with the Budget; (iii) the approval by the Bankruptcy Court of a Successful Bid for any of the Western Assets or the Pax Assets (unless Contura shall have waived the requirement for such Successful Bid to have reimbursed the Purchase Price Deposit); and (iv) August 5, 2019, unless the Sale Order approving the sale of the Western/Pax Assets to Contura shall have been entered.[5]

(b)     The Purchase Deposit, and the proceeds thereof, shall be available for use by the Debtors, subject to the following conditions: (i) the Seller Parties must comply with the Budget; (ii) the Purchase Deposit and all proceeds thereof shall be held in Escrow, subject to release from Escrow for use by the Debtors solely in accordance with the Budget, including, without limitation, for deposits into the Professional Escrow; and (iii) any other Bid for the Western/Pax Assets that is a Qualified Bid must include, as a part of such bid, reimbursement to Contura of the Purchase Deposit (in cash in full), unless waived by Contura, but subject in all respects to the right of any party in interest to object to the repayment of the Purchase Deposit to Contura (but not to Contura's claim on account of the Purchase Deposit).

(c)     The "Superpriority Purchase Deposit Claim" shall be an allowed superiority administrative expense claim against the Debtors with priority over any and all administrative

---

[5] To the extent the Debtors are required to repay the Purchase Deposit as set forth in the Term Sheet, such amounts shall be paid by Debtor Blackjewel, L.L.C. and not Debtors Revelation Energy Holdings, LLC, Revelation Management Corporation, or Revelation Energy, LLC.

expenses, except that such claim shall be (i) junior to any allowed superpriority administrative claims granted in connection with the Riverstone DIP Facility and (ii) *pari passu* with the administrative claims granted in connection with the Highbridge/Whitebox DIP Facility, of the kind specified in Section 503(b) or 507(b) of the Bankruptcy Code and arising under Section 506(c) of the Bankruptcy Code;

(d)    As security for such Superpriority Purchase Deposit Claim, Contura is hereby granted liens on and security interests (the "Purchase Deposit Liens") in all present and after-acquired property (whether tangible, intangible, real, personal or mixed and wherever located) of the Debtors, including without limitation, subject to entry of the Sale Order, avoidance actions brought pursuant to chapter 5 of the Bankruptcy Code or applicable state law equivalents and the proceeds thereof (collectively, the "Purchase Deposit Collateral"), which Purchase Deposit Liens shall be junior to (i) the Riverstone DIP Liens and the HB/WB DIP Liens and (ii) all valid, perfected, enforceable and unavoidable liens as July 1, 2019 held or asserted by any person or entity, including, without limitation, Riverstone Credit Partners, United Bank, Inc., Campbell County, Wyoming for unpaid ad valorem taxes, Fifth Third Bank, or Caterpillar Financial Services Corporation.  For the avoidance of doubt, the rights of each of the Creditors' Committee and Contura to argue that the lien should or should not attach to avoidance actions and the proceeds thereof is expressly reserved.

(e)    In no event shall Contura be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Purchase Deposit Collateral; and in no event shall any Purchase Deposit Collateral be subject to any pre-petition or post-petition lien or security interest that is avoided and preserved for the benefit of the Debtors' estates pursuant to Section 551 of the Bankruptcy Code.

7

(f)    Any and all payments or proceeds remitted at any time to Contura in respect of the Superpriority Purchase Deposit Claim shall be received free and clear of any lien, claim, charge, assessment or other liability, including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, Section 506(c) or the "equities of the case" exception of Section 552(b) of the Bankruptcy Code.

(g)    Contura shall be entitled to all of the rights and benefits of Section 552 of the Bankruptcy Code, and the "equities of the case" exception under Section 552 of the Bankruptcy Code shall not apply to Contura with respect to any Purchase Deposit Collateral.

(h)    No costs or expenses of administrative shall be imposed upon Contura or Purchase Deposit Collateral pursuant to Section 506(c) of the Bankruptcy Code or otherwise without the prior written consent of Contura, and no such consent shall be implied from any action, inaction, or acquiescence by Contura.

(i)    The Purchase Deposit Liens shall be deemed to be valid, binding, enforceable, and duly perfected upon entry of this Bidding Procedures Order.  Contura shall not be required to file any UCC-1 financing statements, assignments, pledges, notices of lien, or any similar document or instrument or take any other action (including taking possession of any Purchase Deposit Collateral) in order to effect or validate the perfection of any liens securing the Superpriority Purchase Deposit Claim, but all of such filings and other actions are hereby authorized by the Court.  If Contura shall, in its discretion, choose to file or record any such assignments, pledges, notices of lien, or UCC-1 financing statements, or take any other action to effect or evidence the perfection of the Purchase Deposit Liens, all such documents and instruments shall be deemed to have been filed or recorded at the time and on the date of entry of this Bidding Procedures Order.

8

(j)     For the avoidance of doubt, as detailed in the Term Sheet, Contura's Purchase Deposit will be used for paying the Debtors' postpetition operating and administrative expenses in accordance with the Term Sheet and the Budget.  Such Purchase Deposit from Contura shall not be considered a Good Faith Deposit (as defined below) under the Bidding Procedures and shall be treated as set forth in the Term Sheet and Bidding Procedures.

7.     Good Faith Deposits.  The good faith deposits ("Good Faith Deposits") required under the Bidding Procedures shall be in cash and held in an interest-bearing escrow account to be identified and established by the Debtors and shall not constitute property of the Debtors' bankruptcy estates.     Upon the filing of the Notice of Successful Bid with respect to the Western/Pax Assets or with respect to any other Asset or Assets, the Debtors shall return the Good Faith Deposit of each Bidder that is not designated as the Successful Bidder or the Backup Bidder of the Western/Pax Assets or such other Asset or Assets.  Upon the entry of a Sale Order approving the sale of the Western/Pax Assets or such other Asset or Assets, (a) if the Successful Bidder is not Contura, such the Good Faith Deposit of such Successful Bidder shall be remitted directly (in an amount not to exceed the amount of the Purchase Deposit) to Contura to reimburse it for the Purchase Deposit, but subject in all respects to the right of any party in interest to object to the repayment of the Purchase Deposit to Contura (but not to Contura's claim on account of the Purchase Deposit), and (b) if the Successful Bidder is Contura, the Good Faith Deposit of the Backup Bidder (if any) shall be returned to such Backup Bidder.

8.     Governmental Permits and Licenses. The Debtors and their advisors are hereby authorized, but not directed, to coordinate the transfer and/or assignment of necessary governmental permits and licenses directly with the governmental authority responsible for the issuance and/or transfer of the same to Contura or any other successful bidder(s).

010-8805-5194/4/AMERICAS

9.      Credit Bidding.  Any Qualified Bidder shall have the right to credit bid all or a portion of its secured claims to the extent provided under section 363(k) of the Bankruptcy Code; provided that any person or entity shall have the right to contest such Qualified Bidder's right to credit bid.

10.      Reservation of Rights.  Notwithstanding anything to the contrary herein, including, without limitation, authorization and approval of the Bidding Procedures, the Term Sheet, Contura as the Stalking Horse Bidder for the Western/Pax Assets, this Order and the relief granted hereunder is without prejudice to the rights of any party in interest to object to any Sale, any terms and provisions applicable to the sale of any Assets, or any other document or instrument contemplated by any of the foregoing, and all such rights are reserved in all respects; provided that, except as otherwise set forth in this Order, the treatment afforded to the Purchase Deposit and Professional Escrow pursuant to the Term Sheet and this Order shall be final and not subject to any further objection or attack.  Nothing in this Order, the Bidding Procedures or otherwise shall be deemed a waiver of any rights, remedies or defenses that any party has or may have under applicable bankruptcy and non-bankruptcy law.

11.      Amendments and Modifications.  The Debtors may amend or modify the Bidding Procedures only after receiving the prior written approval of Contura after consulting with the Consultation Parties.

12.      Notice of Bidding Procedures.  The form of the Sale Notice and the form and manner of providing notice of the sale process, the related dates and deadlines, the Auction and the Sale Hearing is hereby approved.  As soon as reasonably practicable following entry of this Bidding Procedures Order, the Debtors shall serve the Sale Notice upon: (a) the Office of the United States Trustee for the District of West Virginia; (b) the Debtors' prepetition secured

010-8805-5194/4/AMERICAS

lenders; (c) the creditors appearing on the Debtors' consolidated list of top 30 unsecured creditors; (d) counsel to Riverstone Credit Partners – Direct, L.P., Bailey & Glasser LLP; (e) counsel to United Bank, Inc., Steptoe & Johnson PLLC; (f) counsel to Highbridge Capital Management, LLC and Whitebox Advisors LLC, Paul, Weiss, Rifkind, Wharton & Garrison LLP; (g) counsel to Contura Energy, Inc., Davis Polk & Wardwell, LLP; (h) proposed counsel to the Official Committee of Unsecured Creditors, Whiteford Taylor & Preston, LLP; (i) all parties who have requested service pursuant to Bankruptcy Rule 2002; (j) the Office of the United States Attorney for the District of West Virginia; (k) the Internal Revenue Service; (l) the Securities and Exchange Commission; (m) all other local, state, or federal agencies that regulate the Debtors' businesses; (n) all other applicable government agencies to the extent required by the Bankruptcy Rules or the Local Rules; (o) all state attorneys' general in states where the Assets are located; (p) all municipalities in which the Assets are located and (q) all parties who have asserted a lien or security interest against any of the Assets (collectively, the "Notice Parties")

13.    Notice of Successful Bids.  Following the designation of one or more Successful Bids, the Debtor shall file with the Court a notice of such Successful Bid(s), along with the terms thereof.  A Notice of a Successful Bid or Successful Bids shall be filed at or prior to the Sale Hearing.

14.    Sale Objection Deadlines.  All objections to the approval of any sale of the Assets pursuant to the Bidding Procedures including the sale of the Debtors' assets free and clear of liens, claims, encumbrances and interests pursuant to section 363(f) of the Bankruptcy Code, shall be filed with the Court and served on the following parties (the "Objection Notice Parties") so as to be actually received **on or before the Sale Hearing**: (i) Blackjewel, L.L.C., 1051 Main Street, Milton, West Virginia 25541, Attn: David J. Beckman; (ii) proposed counsel to the Debtors, Squire

Patton Boggs (US) LLP, 201 E. Fourth Street, Suite 1900, Cincinnati, Ohio 45202, Attn: Stephen D. Lerner (stephen.lerner@squirepb.com); (iii) proposed co-counsel to the Debtors, Supple Law Office PLLC, 801 Viand Street, Point Pleasant, West Virginia 25550, Attn: Joe Supple (supplelawoffice@yahoo.com); (iv) counsel to Riverstone Credit Partners – Direct, L.P., Bailey & Glasser LLP, 209 Capitol Street, Charleston, West Virginia 25301, Attn: Kevin W. Barrett (kbarrett@baileyglasser.com); (v) counsel to United Bank, Inc., Steptoe & Johnson PLLC, P.O. Box 1588, Charleston, West Virginia 25326-1588, Attn: Joseph G. Bunn (joseph.bunn@steptoe-johnson.com); (vi) counsel to Highbridge Capital Management, LLC and Whitebox Advisors LLC, Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019-6064, Attn: Jacob Adlerstein (jadlerstein@paulweiss.com); (vii) counsel to Contura, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017, Attn: Angela M. Libby (angela.libby@davispolk.com), Damian S. Schaible (damian.schaible@davispolk.com); (viii) proposed counsel to the Creditors' Committee, Whiteford Taylor & Preston, LLP, 10 S. Jefferson Street, Suite 1110, Roanoke, Virginia 24011, Attn: Brandy M. Rapp (brapp@wtplaw.com); and (ix) the Office of the U.S. Trustee for the Southern District of West Virginia, 2025 United States Courthouse, 300 Virginia Street, East, Charleston, West Virginia 25301, Attn: David L. Bissett (David.L.Bissett@usdoj.gov).

15.     Except as otherwise expressly provided by the Contract Procedures, a party that fails to file an objection to any potential or proposed sale at or prior to the Sale Hearing shall be (a) forever barred from asserting any objection to entry of the Sale Order or consummation of the applicable transactions authorized therein and (b) deemed to have consented to entry of the Sale Order and consummation of the transactions authorized therein, without limitation, for purposes of section 363(f) of the Bankruptcy Code.

16.     <u>Bid Deadline</u>.  As set forth in the Bidding Procedures, the Bid Deadline for the submission of Qualified Bids shall be by **5:00 p.m., prevailing Eastern Time, on July 31, 2019**. All Preliminary Interested Investors and other Bidders must comply with all aspects of the Bidding Procedures in connection with the submission of any Bid.

17.     <u>Auction Date</u>.  The Auction (if more than one Qualified Bid is received for a particular Lot) will be held on **August 1, 2019 at 9:00 a.m. prevailing Eastern Time** at the offices of Squire Patton Boggs (US) LLP, 201 E. Fourth Street, Suite 1900, Cincinnati, Ohio 45202, subject to cancellation, rescheduling and/or adjournment as provided in the Bidding Procedures.

18.     <u>Sale Hearing Date</u>.  The Sale Hearing will be conducted by this Court on **August  3 , 2019 at** 12:30 p**.m. prevailing Eastern Time** at the Robert C. Byrd U.S. Courthouse, 300 Virginia Street East, Charleston, West Virginia 25301.  At the Sale Hearing, the Debtors will request that the Court enter the Sale Order (a) approving (i) the Successful Bid(s), (ii) the transactions contemplated by the Successful Bid(s) and (iii) the Contract Procedures, and (b) authorizing the Debtors to consummate the proposed sale transaction(s) contemplated by the Successful Bid(s).  At or after the filing of an Assumption/Assignment Notice, the Court shall also determine: (a) any cure required under 11 U.S.C. §365(b) if the affected Counterparty timely files an objection to the Assumption/Assignment Notice, in accordance with this Bidding Procedures Order and (b) if applicable, whether the Debtors have demonstrated adequate assurance of future performance under 11 U.S.C. § 365.

19.     <u>401(k) Plan</u>.  The Debtors are authorized to terminate the 401(k) Plan as set forth in the Motion.  Notwithstanding any such termination or otherwise, Contura is not, and shall not be deemed to be, assuming the 401(k) Plan or any liabilities or obligations associated therewith or with the termination thereof.

20.     Notwithstanding anything to the contrary in the Motion, this Order, the Term Sheet, the Bidding Procedures, any debtor-in-possession financing documents contemplated by this Order or the Term Sheet, or in any Assumption/Assignment Notice or Cure Schedule contemplated by the foregoing documents, nothing shall: (i) impair, adversely affect, or expand any right under applicable law of any governmental unit with respect to any financial assurance, letter of credit trust, surety bond, or insurance proceeds; (ii) waive, impair, limit or adversely affect or expand the United States' rights (if any), states' rights (if any), or the rights of an Indian tribe (if any), under applicable law, to (a) refuse to provide its consent to the proposed assumption, assignment and/or transfer of any lease or executory contract to which it is a party to the Stalking Horse Purchaser or to any other Successful Bidder, assignee or transferee, as applicable, (b) object to the sale, transfer, assumption and/or assignment of any leases or executory contracts to the Stalking Horse Purchaser or to any other Successful Bidder on any grounds, (c) object to any cure amount to be proposed in any Cure Schedule; (iii) impair or, adversely affect, or expand, any valid right, claim, or defense of setoff or recoupment that the United States, state or Indian tribe may have (if any), under applicable law; or (iv) limit any governmental unit in the exercise of its police and regulatory powers in accordance with 11 U.S.C. § 362(b)(4).  Any otherwise valid objections of the United States or any State to the sale, transfer or assumption and/or assignment of any assets of the Debtors, and all police and regulatory powers, enforcement, and otherwise valid other rights of the United States or any State relating to the Debtors, to the assets of the Debtors and any purchasers of the assets of the Debtors are hereby preserved solely to the extent of applicable law.

21.     Except as required herein, no other or further notice of the Motion, this Bidding Procedures Order, the sale of the Assets, the Auction, the Successful Bidders, the assumption and assignment of Executory Contracts or the Sale Hearing shall be required.

010-8805-5194/4/AMERICAS

22.     All parties (whether or not Qualified Bidders) that participate in the Bidding Process (including any Auction) shall be deemed to have knowingly and voluntarily (a) consented to the entry of a final order by this Court in connection with the Motion or this Bidding Procedures Order (including any disputes relating to the Bidding Process, the Auction and/or the sale(s) of the Assets) to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution and (b) waived any right to jury trial in connection with any disputes relating to the any of the foregoing matters.

23.     Notwithstanding the relief granted in this Bidding Procedures Order and any actions taken pursuant to such relief, nothing in this Bidding Procedures Order shall be deemed: (a) an admission regarding the validity or amount of any claim against the Debtors; (b) a waiver of the Debtors' rights to subsequently dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (e) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law.

24.     Nothing in this Order, or the Bidding Procedures, or the Term Sheet, or any other ancillary document associated with the proposed sale shall be deemed to waive or release any claim(s) and/or cause(s) of action that the Debtors or the Debtors' Estates have or may have against any party, all of which are expressly preserved pending the entry of the Sale Order.

25.     Nothing in this Bidding Procedures Order, the Bidding Procedures, the Term Sheet or the participation of any party, including Contura and the Highbridge/Whitebox DIP Lenders, in the bidding process shall be deemed a waiver of (a) any lien, claim, encumbrance or other interest in or against the Debtors, their estates or any other person or entity or (b) any right of such party

15

to dispute the validity or priority of any lien, claim, encumbrance or other interest in or against the Debtors, their estates or any other person or entity.

26.     Nothing in this Bidding Procedures Order or the Bidding Procedures is intended or shall be construed to alter or relieve the Debtors or any proposed assignee of any Executory Contract of any rights or obligations under section 365 of the Bankruptcy Code.  Likewise, nothing in this Bidding Procedures Order or the Bidding Procedures shall be deemed a waiver of any rights or remedies of any Counterparty or the Debtors pursuant to section 365 of the Bankruptcy Code.

27.     The notice of the relief requested in the Motion satisfies Bankruptcy Rule 6004(a) and, pursuant to Bankruptcy Rule 6004(h), the terms and provisions of this Bidding Procedures Order shall be immediately effective and enforceable upon its entry.

28.     The Debtors are authorized to take all steps necessary or appropriate to carry out the terms of this Bidding Procedures Order.

29.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Bidding Procedures Order.

010-8805-5194/4/AMERICAS

Presented By:

**SUPPLE LAW OFFICE, PLLC**

/s/ *Joe M. Supple*
Joe M. Supple, No. 8013
801 Viand St.
Point Pleasant, WV 25550
Telephone: 304.675.6249
Facsimile: 304.675.4372
joe.supple@supplelaw.net

– and –

**SQUIRE PATTON BOGGS (US) LLP**

Stephen D. Lerner (admitted *pro hac vice*)
Nava Hazan (admitted *pro hac vice*)
Travis A. McRoberts (admitted *pro hac vice*)
201 E. Fourth Street, Suite 1900
Cincinnati, Ohio 45202
Telephone: 513.361.1200
Facsimile: 513.361.1201
stephen.lerner@squirepb.com
nava.hazan@squirepb.com
travis.mcroberts@squirepb.com

*Proposed Co-Counsel to the Debtors and
Debtors-in-Possession*

010-8805-5194/4/AMERICAS

## Schedule 1

**Bidding Procedures**

010-8805-5194/4/AMERICAS

**Blackjewel Bidding Procedures**

| | |
|---|---|
| **Assets** | The assets subject to the Bidding Procedures are all or substantially all of the Debtors' assets, excluding cash, accounts receivable and deposits (collectively, the "Assets").  A party may participate in the bidding process by submitting a Bid for all or any combination of the Assets, including without limitation: |
| | (a) The Debtors' operations in the Powder River Basin in Wyoming (collectively, the "Western Assets"), consisting of: |
| |     (i) the open-pit surface mines and facilities commonly known as the Belle Ayr mine (the "Belle Ayr Mine") and |
| |     (ii) the open-pit surface mines and facilities commonly known as the Eagle Butte mine (the "Eagle Butte Mine" and, together with the Belle Ayr Mine, the "Western Mines"); |
| | (b) The Debtors' operations in the Central Appalachian Basin in Virginia, Kentucky and West Virginia (collectively, the "Eastern Assets"), consisting of: |
| |     (i) the surface mine and facilities commonly known as the Pax mine (the "Pax Mine"); |
| |     (ii) Black Mountain assets; |
| |     (iii) Lone Mountain assets; |
| |     (iv) Virginia subdivision assets and |
| |     (v) BHL subdivision assets;  and |
| | (c) the other assets of the Debtors, including equipment relating to any of the foregoing (the "Miscellaneous Assets"). |
| **Stalking Horse Purchaser** | The Debtors have entered into an agreement with Contura Energy, Inc. ("Contura" or the "Stalking Horse Purchaser"), as set forth on the 363 Process Term Sheet, dated as of July 24, 2019 (the "363 Process Term Sheet"), which sets forth the terms and conditions for the sale to Contura of the Western/Pax Assets (as defined in the 363 Process Term Sheet).<br><br>The 363 Process Term Sheet and the Transactions (as defined therein) contemplated therein have been approved by the Bankruptcy Court. |
| **Key Dates** | The key dates for the sale process are as follows: |
| | (a) Deadline for Qualified Bids ("Bid Deadline"):  5:00 p.m. (prevailing Eastern Time) on July 31, 2019 |
| | (b) Auction Date (if more than one Qualified Bid is received for a particular Asset or group of Assets):  9:00 a.m. (prevailing Eastern Time) on August 1, 2019 |
| | (c) Sale Hearing:  no later than August 3, 2019 |
| | (d) Closing Date:  no later than August 5, 2019 |
| **Consultation Parties** | Unless otherwise approved by the Bankruptcy Court, no amendment or other modification to these Bidding Procedures (including extension of any of the deadlines set forth herein) shall be made by the Debtors without the prior written |

| | |
|---|---|
| | approval of Contura, and after consultation with Riverstone Credit Partners – Direct, L.P. ("Riverstone"), United Bank, Inc. ("United Bank") and the Official Committee of Unsecured Creditors (the "UCC" and, together with Riverstone, United Bank and Contura, the "Consultation Parties"). |
| **Preliminary Interested Investors** | To participate in the bidding process and to receive due diligence materials, a party must submit the following to the Debtors (such a party, a "Preliminary Interested Investor"): <br><br> (a) Unless the party is already subject to an existing confidentiality agreement or obligation protecting the Debtors, an executed confidentiality agreement agreed upon with the Debtors; and <br><br> (b) Reasonable evidence demonstrating the party's financial and other ability to consummate a sale transaction and perform the Reclamation Commitments, if any are proposed to be assumed, for the Assets for which it intends to submit a Bid, as determined by the Debtors in consultation with the Consultation Parties. |
| **Due Diligence** | The Debtors will afford any Preliminary Interested Investor the time and opportunity to conduct due diligence; provided that the Debtors shall not be obligated to furnish any due diligence information after the Bid Deadline to any party that has not submitted a Qualified Bid and may limit the amount of further due diligence available to Qualified Bidders after the Bid Deadline. <br><br> The Debtors reserve the right to withhold any Diligence Materials that the Debtors determine are business-sensitive or otherwise not appropriate for disclosure to a Preliminary Interested Investor who is a competitor of the Debtors or is affiliated with any competitor of the Debtors. Neither the Debtors nor their representatives shall be obligated to furnish information of any kind whatsoever to any person that is not determined to be a Preliminary Interested Investor. <br><br> All due diligence requests must be directed to Jefferies LLC, Attn: Robert White and Jerrod Freund. |
| **Qualified Bids** | To be eligible to participate in the Auction, each offer, solicitation or proposal (each, a "Bid"; each such eligible Bid, a "Qualified Bid") and each party submitting a Bid (other than the Stalking Horse Purchaser) (each, a "Bidder"; each such eligible Bidder, a "Qualified Bidder") must be reasonably determined by the Debtors, in consultation with the Consultation Parties, to satisfy each of the following conditions: <br><br> (a) Good Faith Deposit: Subject to the second proviso in the definition of Successful Bidder, each Bid shall be required to be accompanied by a cash deposit of 10% of the purchase price thereof (excluding assumed liabilities) (a "Good Faith Deposit"), which will, subject to approval by the Bankruptcy Court in the Sale Order, be used (on a pro rata basis with the other Good Faith Deposits of Bidders approved as Successful Bidders) to reimburse the Stalking Horse Purchaser's Purchase Deposit (as defined in the 363 Process Term Sheet) plus interest accrued and owing thereon, if such Bidder is confirmed as the Successful Bidder as approved by the Bankruptcy Court; provided that the rights of all parties (other than the Debtors) to object to such reimbursement of the Purchase Deposit shall be reserved. The Good Faith Deposit submitted with the Successful Bid will |

be applied, together with such additional amount as is required, to the purchase price.

(b) <u>Same or Better Terms</u>:  With respect to Bids for the Western/Pax Assets, each Bid must have terms that are the same or better than the 363 Process Term Sheet (including representations, warranties and termination rights), as determined by the Debtors in consultation with the Consultation Parties.

(c) <u>Binding Agreement</u>:   Each Bid must include a binding, executed commitment letter (each, a "<u>Commitment Letter</u>") to close the transactions contemplated in such Bid.  Each Commitment Letter must (i) confirm the Bidder has reviewed, understands and accepts the Bidding Procedures and consents to the core jurisdiction of the Bankruptcy Court and (ii) be irrevocable until five (5) business days after the Sale Hearing; provided that if such Bid is accepted as the Successful Bid or the Backup Bid (as defined herein) for any one or more of the Assets, such Bid shall continue to remain irrevocable until the closing of the sale of such Assets.

(d) <u>Scope of Bid</u>:   A Bid must be for specifically identified Assets, or combination of Assets.   A Bid may, but shall not be required to, (i) expressly assume all Reclamation Obligations (as defined in the 363 Process Term Sheet) associated with each Asset included in such Bid, (ii) provide for the transfer to and assumption by the Bidder of all material permits, licenses, consents, authorizations, permit applications or other approvals and lease agreements related to each Asset included in such Bid (the "<u>Permit Transfer</u>") and (iii) commit the Bidder to obtain replacement surety bonds as required by the applicable governmental authorities to support the Reclamation Obligations or other liabilities, as applicable, which replacement surety bonds (including any collateral posted in respect thereof), in the case of the Western Mines, must be satisfactory to Contura (collectively items (i), (ii) and (iii), the "<u>Reclamation Commitments</u>"); provided that the Debtors and the Consultation Parties may consider whether and to what extent Reclamation Commitments are included in a Bid in determining whether it is a Qualified Bid and whether it is a higher or otherwise better bid than any other Bid.  For the avoidance of doubt, Contura shall have consent rights over the transfer of any permits held in its name.

(e) <u>Minimum Bid</u>: Any Bid for the Western/Pax Assets must have a purchase price, including any assumption of liabilities, that has a value greater than the consideration provided in the 363 Process Term Sheet with respect to such Western/Pax Assets.  In addition, any Bid must at a minimum provide for the payment in cash in full of a pro rata portion of (A) fees owing to the United States Trustee incurred in connection with the Debtors' chapter 11 cases and any fees payable to the Clerk of Court, (B) professional fees, expenses, and disbursements incurred by professional persons employed by the Debtors or the UCC (including any out-of-pocket expenses of the members of the Creditors' Committee) ("<u>Professional Fees and Expenses</u>") incurred on and after the Petition Date, (C) certain other allowed administrative expenses of the Debtors' estates as identified by the Debtors and (D) certain costs necessary to wind-down the Debtors' estates as identified by the Debtors (collectively,

the "Carve-Out").  For the avoidance of doubt, the portion of any Bid representing the amount of the Carve-Out is to be held by the Debtors in a segregated escrow account, not subject to the lien or security interest of any party including, without limitation, parties providing secured debtor in possession financing and shall be used solely and exclusively to satisfy the fees, expenses and costs included in the Carve-Out.  In the event of a conversion of these chapter 11 cases to cases under chapter 7, the chapter 7 trustee or trustees shall have no right to the segregated account for the Carve-Out and the segregated account shall not be part of the chapter 7 estate or estates.

Any Bid for a combination of Assets must (x) allocate the purchase consideration among such Assets, (y) state whether the Bid is conditioned upon the Bidder being the Successful Bidder (as defined below) on more than one Asset and, if so, which are the Assets that the Bid is conditioned upon, and (z) state whether the Bidder is willing to purchase any of the Assets included in the Bid individually, and if so, the Bid must state the price the Bidder would pay for each such Asset.

Any Qualified Bidder shall have the right to credit bid all or a portion of its secured claims to the extent provided under section 363(k) of the Bankruptcy Code; provided that any person or entity shall have the right to contest such Qualified Bidder's right to credit bid.

(f)  Designation of Assigned Contracts and Leases:  A Bid must identify the executory contracts and unexpired leases with respect to which the Bidder seeks assignment from the Debtors.  If the Bid contemplates the assumption and assignment of any executory contracts or unexpired leases, such Bid must include evidence of the Bidder's ability to comply with section 365 of the Bankruptcy Code (to the extent applicable), including providing adequate assurances of such Bidder's ability to perform in the future the executory contracts and unexpired leases proposed in its Bid to be assumed by the Debtors and assigned to the Bidder and to cure any defaults in such executory contracts and unexpired leases, in a form that will permit the Debtors to disseminate immediately such evidence to the non-Debtor counterparties to such executory contracts and unexpired leases.  To the extent that a Bid seeks the assumption by and assignment from the Debtors of the Leases (as defined in the 363 Process Term Sheet) and such Bid does not cure prepetition defaults under the applicable Lease, the State of Wyoming ("Wyoming") and the U.S. Department of Justice (the "DOJ") shall retain their rights to consent to the transfer of the Leases notwithstanding that the Unpaid Royalties and Taxes (as defined in the 363 Process Term Sheet).

(g)  Designation of Assumed Liabilities:  A Bid must identify all liabilities that the Bidder proposes to assume.

(h)  Bidder and Purchaser Information:  A Bid must provide (i) the identity of and contact information for the Bidder and disclosure of its affiliates, (ii) the identity of the purchaser (including the equity holders thereof in the case of a new entity formed for the purpose of consummating the proposed transaction) and other participating entities (including the terms of any participation or similar arrangement), (iii) any connections or agreements of the foregoing parties with the Debtors, the Stalking Horse Purchaser

and/or other Bidders, (iv) satisfactory evidence of corporate or similar authorization to close the proposed transactions, (v) satisfactory evidence of financial and other requisite ability to close the transactions and perform the Reclamation Commitments, if any, proposed in such Bid and (vi) such other additional information and due diligence as the Debtors may reasonably request, in consultation with the Consultation Parties.

(i) <u>Regulatory and Third-Party Approvals</u>:  A Bid must set forth (i) the regulatory and third-party approvals required to consummate the proposed transactions, (ii) the expected time period for obtaining such approvals and (iii) satisfactory evidence of the Bidder's ability to obtain such approvals.

A Bid may not be conditioned on the receipt of any third-party approvals or consents (other than required Bankruptcy Court approval and required governmental, licensing or regulatory approval or consent, if any) other than (y) third-party approvals or consents that are contemplated by the 363 Process Term Sheet or (z) other approvals or consents not materially more burdensome, less favorable or more conditional than the terms of the 363 Process Term Sheet, as determined by the Debtors in consultation with the Consultation Parties.  The Bidder must be reasonably likely to satisfy all necessary regulatory approvals for the sale of an identified Asset (including any Permit Transfer) and to be able to perform the Reclamation Commitments, if any, as determined by the Debtors and the Consultation Parties.

(j) <u>Contingencies</u>:  A Bid may not be conditioned on obtaining financing, any internal, external or credit committee approvals or the outcome of due diligence.

(k) <u>No Fees</u>:  A Bid may not entitle the Bidder to, and each Bidder must agree not to seek, any break-up or termination fees or expense reimbursement or similar type of payment.  In addition, each Bidder must expressly waive any claim or right that may be asserted for any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code in connection with participating in the bidding process. For the avoidance of doubt, nothing in the foregoing will affect the rights of any party under existing reimbursement agreements.

(l) <u>Closing</u>:  The Bid must provide a commitment to close the proposed transactions no later than the Closing Date.

(m) <u>Bid Deadline and Submission</u>:  The following parties must receive a Bid in writing (both in PDF and Word formats) on or before the Bid Deadline by email and express overnight delivery: (i) the Debtors, 1001 17th Street, Suite 1100, Denver, CO 80202, Attention: David Beckman, interim CEO (dave.beckman@fticonsulting.com); (ii) counsel to the Debtors, Squire Patton Boggs (US) LLP, 201 E. Fourth Street, Suite 1900, Cincinnati, OH 45202, Attention: Stephen D. Lerner (stephen.lerner@squirepb.com); (iii) investment banker to the Debtors, Jefferies LLC, 520 Madison Avenue, New York, NY 10022, Attention: Robert White (rwhite@jefferies.com) and Jerrod Freund (jfreund@jefferies.com); (iv) counsel to the UCC, Whiteford Taylor Preston LLP, 200 First Avenue, Floor 3, Pittsburgh, PA 15222, Attention: Michael Roeschenthaler

| | |
|---|---|
| | (mroeschenthaler@wtplaw.com) and (v) counsel to Riverstone Credit Partners – Direct, L.P., Bailey & Glasser LLP, 209 Capitol Street, Charleston, West Virginia 25301, Attn: Kevin W. Barrett (kbarrett@baileyglasser.com).<br><br>Notwithstanding the foregoing, the proposed transaction set forth in 363 Process Term Sheet shall be deemed to be a Qualified Bid, and the Stalking Horse Purchaser shall each be deemed to be a Qualified Bidder. |
| **Auction** | If two or more Qualified Bids (including the 363 Process Term Sheet) for any Asset or group of Assets are submitted by the Bid Deadline, the Debtors will conduct an auction (the "Auction") on the Auction Date at a place to be determined by the Debtors.<br><br>Only the Stalking Horse Purchaser and any other Qualified Bidders will be entitled to make Bids at the Auction; provided that any surety provider or lessor of the Debtors will be entitled to attend the Auction. Each Qualified Bidder participating in the Auction must confirm that it (a) has not engaged in any collusion with respect to the bidding or sale of any of the assets described herein, (b) has reviewed, understands and accepts the Bidding Procedures and (c) has consented to the core jurisdiction of the Bankruptcy Court.<br><br>The procedures for the Auction shall be determined by the Debtors, in consultation with the Consultation Parties, and shall include the following:<br><br>(a) Auction Baseline Bid:  One day prior to the Auction, the Debtors will notify each Qualified Bidder as to which Qualified Bid is the highest or otherwise best Qualified Bid with respect to any Asset or group of Assets, as determined by the Debtor in consultation with the Consultation Parties (the "Auction Baseline Bid").<br><br>(b) Overbids: Each Bid for any Asset or combination of Assets must be made in increments valued at not less than $100,000 above the Auction Baseline Bid for such Assets; provided that the Stalking Horse Purchaser shall be entitled to match any Auction Baseline Bid or any other Bid submitted at the Auction, and if the Stalking Horse Purchaser matches any Bid submitted for the Western/Pax Assets, such Bid shall be deemed the highest or otherwise best as compared with such matched Bid.<br><br>(c) Qualified Bid Requirements:  Each Bid submitted at the Auction must comply with the requirements for a Qualified Bid.<br><br>(d) Successful Bids:  The Auction shall continue in additional rounds of bidding until the Debtors, in consultation with the Consultation Parties, select the highest or otherwise best Qualified Bid submitted at the Auction for each Asset or combination of Assets (each, a "Successful Bid"; the Qualified Bidder thereof, a "Successful Bidder"); provided that if only one Qualified Bid is submitted with respect to any Assets, and therefore no Auction is held, such Qualified Bid shall be deemed the Successful Bid; provided, further, that if Contura is not a Successful Bidder, the Successful Bids, in the aggregate, must provide for Good Faith Deposits in an aggregate amount sufficient to reimburse in cash in full the Purchase Deposit of the Stalking Horse Purchaser, subject in all respects to the reservation of rights of all parties (other than the Debtors) to object to any reimbursement of the Purchase Deposit to Contura. |

| | |
|---|---|
| | (e) <u>Backup Bids</u>:  The Debtors, in consultation with the Consultation Parties, shall select the second highest or otherwise best Qualified Bid submitted at the Auction for each Asset or combination of Assets (each, a "<u>Backup Bid</u>"; the Qualified Bidder thereof, a "<u>Backup Bidder</u>"), which will remain open and irrevocable until the closing of the transactions contemplated by the applicable Successful Bid.  If the transactions contemplated by a Successful Bid are not consummated, the Debtors may, after consultation with the Consultation Parties, deem the Backup Bid to be the Successful Bid.  Notwithstanding the foregoing, any Backup Bid shall terminate on August 15, 2019, unless otherwise agreed by the Backup Bidder thereof. |
| | For the avoidance of doubt, the Qualified Bid of the Stalking Horse Purchaser, as set forth in the 363 Process Term Sheet, is conditioned upon a sale of all of the Western/Pax Assets (as defined in the 363 Process Term Sheet) to the Stalking Horse Purchaser and shall not be bifurcated or amended in any way without the consent of the Stalking Horse Purchase |
| **Sale Free and Clear; As Is / Where Is** | All of the Debtors' right, title and interest in and to the Assets will be sold free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options and interests therein (collectively, the "<u>Liens</u>"), other than the Assumed Liabilities (each as defined in the applicable Qualified Bid and/or 363 Process Term Sheet, as applicable), with all Liens attaching to the proceeds of the sale in the order of priority of such Liens.<br><br>The Assets sold pursuant to the Bidding Procedures shall be conveyed in their then-present condition, **AS IS, WITH ALL FAULTS, AND WITHOUT ANY WARRANTY WHATSOEVER, EXPRESS OR IMPLIED**. |

## <u>Schedule 2</u>

**Budget**

**Blackjewel L.L.C.**
Weekly DIP Budget
Prepared as of 07/23/2019
($ 000's)

| Week Number:<br>Week Ending:<br>Actuals / Forecast: | 1<br>7/21<br>ACT | 2<br>7/28<br>FCST | 3<br>8/4<br>FCST | Total<br>3 Week<br>ACT/FCST |
|---|---|---|---|---|
| **East Region** | | | | |
| Cash Receipts | $        149 | $         - | $         - | $        149 |
| Payroll | - | (462) | - | (462) |
| Operating Costs | (98) | (200) | (300) | (598) |
| **Total East Region Cash Flow** | **50** | **(662)** | **(300)** | **(912)** |
| **West Region** | | | | |
| Cash Receipts | 465 | - | - | 465 |
| Payroll | - | (194) | - | (194) |
| Operating Costs | - | (50) | (100) | (150) |
| **Total West Region Cash Flow** | **465** | **(244)** | **(100)** | **121** |
| **Corporate** | | | | |
| Insurance | (1,842) | (1,074) | (832) | (3,747) |
| Taxes | (0) | - | (48) | (49) |
| **Total Corporate Cash Flow** | **(1,842)** | **(1,074)** | **(880)** | **(3,796)** |
| **Total Recurring Cash Flow** | **(1,327)** | **(1,980)** | **(1,280)** | **(4,587)** |
| *Cumulative Recurring Cash Flow* | *(1,327)* | *(3,307)* | *(4,587)* | |
| **One-Time / True-Up Costs** | | | | |
| Prepetition Benefits Withholding Amounts | - | (1,528) | - | (1,528) |
| Prepetition Withholding Taxes | - | (2,945) | - | (2,945) |
| Professional Fees | (125) | (1,200) | (600) | (1,925) |
| Utility Deposit | - | - | (246) | (246) |
| **Total One-Time / True-Up Costs** | **(125)** | **(5,672)** | **(846)** | **(6,643)** |
| DIP Draw | 2,784 | - | - | 2,784 |
| Cash Interest | - | - | (42) | (42) |
| Other Financing Fees | (1) | - | (100) | (101) |
| **Total Financing Flows** | **2,783** | **-** | **(142)** | **2,641** |
| **Unidentified Expenses** | **-** | **(250)** | **(250)** | **(500)** |
| **Total Net Cash Flow** | **$     1,331** | **$   (7,903)** | **$   (2,518)** | **$   (9,089)** |
| *Cumulative Net Cash Flow* | *1,331* | *(6,571)* | *(9,089)* | |
| **Beginning Cash** | **$     1,027** | **$     2,359** | **$   (5,544)** | **$     1,027** |
| Total Net Cash Flow | 1,331 | (7,903) | (2,518) | (9,089) |
| **Ending Cash** | **$     2,359** | **$   (5,544)** | **$   (8,062)** | **$   (8,062)** |