## IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## SOUTHERN DISTRICT OF WEST VIRGINIA

---

| | |
|---|---|
| In re: | Chapter 11 |
| BLACKJEWEL L.L.C. *et al.*, | Case No. 19-30289 |
| Debtors.[1] | (Jointly Administered) |

---

### AMENDED RESPONSE TO THE UNITED STATES' OBJECTION TO THE ASSUMPTION AND ASSIGNMENT OF FEDERAL LEASES AND EXECUTORY CONTRACTS AND SALE OF ASSETS

(Relates to Dkt. No. 496)

Contura Energy, Inc. and certain affiliates ("Contura"), as creditors and parties in interest in these proceedings, by their counsel Jackson Kelly PLLC and Davis Polk & Wardwell LLP, respectfully submit this Response (this "Response") to the United States' Objection to the Assumption and Assignment of Federal Leases and Executory Contracts and Sale of Assets, and respectfully represents:

By way of background to the proposed Section 363 sale, on December 8, 2017, certain Contura affiliates sold to Blackjewel L.C.C. ("Blackjewel") the Eagle Butte and Belle Ayr mines (the "Western Assets") located in the Powder River Basin ("PRB"), Wyoming, along with related coal reserves, equipment, infrastructure and other real properties. Contura received no cash consideration for this sale, but instead transferred properties to Blackjewel in exchange for

---

[1] The debtors in the above-captioned chapter 11 cases (the "Chapter 11 Cases") and the last four digits of each debtor's taxpayer identification number are as follows: Blackjewel, L.L.C. (0823); Blackjewel Holdings L.L.C. (4745); Revelation Energy Holdings, LLC (8795); Revelation Management Corporation (8908); Revelation Energy, LLC (4605); Dominion Coal Corporation (2957); Harold Keene Coal Co. LLC (6749); Vansant Coal Corporation (2785); Lone Mountain Processing, LLC (0457); Powell Mountain Energy, LLC (1024); and Cumberland River Coal LLC (2213) (collectively, the "Debtors").

1

4827-9552-0415.v1

its agreement to assume the environmental and reclamation liabilities associated with the purchased PRB mines. As part of the sale, Contura agreed to maintain certain reclamation performance bonds and lease bonds under an agreed-upon timeline, which Blackjewel agreed to replace or assume pending regulatory approval. But that regulatory approval never came, Contura's bonds were never replaced, and Contura was therefore never relieved of its environmental and reclamation obligations.

Upon the filing of the Debtors' petitions, Contura immediately took action to stabilize the Debtors' financial situation to the extent feasible and has continued in these efforts, including by injecting significant sums of capital that permitted the Debtors to maintain operations—and pay their employees—while conducting an expedited sales process for the Debtors' assets.[2] By stepping up as stalking horse purchaser and providing the Debtors with critically needed financial support, Contura has provided the Debtors with a bid package that balances the economic incentives of Contura in acquiring these assets and realizing financial upside from resuming mining operations on the Western Assets with the interests of the various state and federal agencies (including the U.S. Government), employees and other constituents in these Chapter 11 cases by providing a path towards the resumption of mining operations at the Western Assets, the return of hundreds of the Debtors' furloughed employees to work and the

---

[2] For example, on July 19, 2019, the Debtors sought authorization to enter into a new $2.9 million DIP facility funded by White Box Advisors LLC and Highbridge Capital Management, LLC, which would act as a "short-term bridge" to provide the Debtors more time to continue working with the key stakeholders to maximize value for the estate. [*See* Dkt. No. 250.] Contura acted as the backstop guarantor of this DIP, and was instrumental in negotiating with the Debtors and the DIP lenders in order to ensure that this interim lifeline was extended to keep the Debtors afloat and to provide for the payment of employee wages and benefits. Contura further agreed to provide a cash deposit equal to $8.1 million to the Debtors to be applied to the purchase price of the sale of the Western Assets and Pax Assets, which provided the necessary financing for the Debtor's continued operations and survival through the auction and sale process.

creation of significant value for the Debtors' estates. Indeed, Contura's funding, support and willingness to step up as the stalking horse purchaser have brought the parties to where they are today—on the verge of a successful sale pursuant to Section 363 of the Bankruptcy Code of not only the Western Assets and the Pax Mine, but also much of the rest of the other Eastern Assets (as defined in the Bidding Procedures attached to the Bidding Procedures Order [Dkt. No. 356]), which Contura does not intend to purchase, but the sale of which may imminently occur as a direct result of Contura's efforts to bring stability to this chaotic situation.

During this period, Contura has also engaged in extensive and diligent discussions with numerous other parties in interest, as well as a fleet of governmental agencies and entities, at the federal, state, and local levels, to craft a deal intended to benefit the Debtors' many stakeholders. As a result of these discussions, Contura has agreed to materially increase its cash bid from that initially disclosed in the 363 Term Sheet attached to the Bidding Procedures Motion, to $25.65 million, which is on top of the initial $8.1 million that Contura has already provided to the estates. Contura has also made proposals to the various federal and state governmental agencies (including the U.S. Government) to resolve their objections to the sale and the assumption of the state and federal leases necessary to mine the Western Assets, which proposal would (1) pay and resolve, or otherwise preserve, such governmental agencies' rights with respect to certain taxes and royalties asserted directly against Contura, (2) pay ongoing royalties and taxes while Contura mines the coal in the Western Assets, (3) provide meaningful consideration in recognition of the amounts due to the governmental agencies by the Debtors and (4) fund a $5 million displacement trust with the sole purpose of assisting employees whose lives and jobs are being disrupted as a result of the fallout from the Blackjewel collapse.

Unsurprisingly, Contura's increased bid and proposals to the governmental agencies has

been received positively by the majority of parties in interest and governmental parties with whom Contura has been negotiating. Indeed, at this point, virtually all interested parties are in favor of the transaction: the Debtors; Riverstone Holdings, LLC and United Bank, the Debtors' senior secured lenders; the State of Wyoming; and Campbell County, Wyoming.

But absent the U.S. Government's consent to the terms of the proposed deal, Contura's bid is dead on arrival. As acknowledged by the U.S. Government in its objection, Contura's bid, as currently structured, contemplates the assumption of certain federal leases necessary to operate the Western Assets. The U.S. Government's objection further states that it "does not consent to any such assumption and/or or assignment absent a full cure or adequate assurance that it will promptly be cured . . . ." [Dkt. No. 496.]

Contura and the Debtors have worked continuously since the filing of these cases to reach agreement with the U.S. Government on acceptable terms for the proposed sale that, while not paying the U.S. Government in full for the Debtors' past unpaid government royalty and tax payments, would offer the U.S. Government meaningful consideration both on account of go-forward royalty, taxes and fees and on account of certain past due amounts owed by the Debtors. Indeed, as recently as Friday, August 3, 2019, Contura has offered up yet additional potential settlement structures to the U.S. Government, and remains hopeful that the U.S. Government will respond affirmatively to these proposals. Contura stands ready to continue discussions with the U.S. Government to resolve its outstanding concerns and avoid a potentially ruinous outcome for the Debtors' estates, creditors and employees.

However, to the extent that the U.S. Government ultimately takes the counter-intuitive and counter-productive position that all the amounts owed by the Debtors to the U.S. Government must be cured in full before Contura's bid can be approved, such a position would

not permit the Contura sale to proceed, in turn destroying not only the immediate employment prospects of hundreds of the Debtors' employees who remain on furlough during this Chapter 11 process, but also any chance for the U.S. Government to realize *any* value on account of its federal leases or its claims against the Debtors' estates. Pursuant to the Court's Bidding Procedures Order, an auction was held for the Debtors' assets on August 1. Contura was the only participant to bid on the Western Assets, and its bid therefore represents the sole opportunity for those employees who work at the Western Assets to get back to work and for those assets to provide any recovery to the estate and its creditors.

Put simply, as no other bidder has emerged for the Debtors' Western Assets and the Debtors are not in a financial position to mine the Western Assets, if Contura's purchase is not approved, there is no alternative scenario in which the mines are operated on a go-forward basis. Rather, those mines will revert to non-producing status, and reclamation will become the next step—thereby eliminating the significant benefits to the Debtors' stakeholders offered by Contura's bid, including those offered to the Debtors' employees and the various governmental entities that would be entitled to ongoing royalties, taxes and fees if mining operations are resumed. While Contura has engaged in discussions with the U.S. Government towards a mutually beneficial transaction that would result in the resumption of mining operations, the reality is that Contura is simply under *no* legal obligation to assume the federal leases and to satisfy the Debtors' outstanding obligations to the U.S. Government.

For these reasons, Contura is hopeful that the U.S. Government will engage in discussions and agree to a construct that will permit Contura's bid to proceed.

[*Remainder of this page intentionally left blank.*]

Dated: August 4, 2019

/s/ *Elizabeth A. Amandus*
Elizabeth A. Amandus  (WV No. 11062)
Ellen Cappellanti (WV No. 627)
**Jackson Kelly PLLC**
500 Lee Street East, Suite 1600
Charleston, West Virginia 25301
Telephone: (304) 340-1000
Facsimile: (304) 340-1080
Email: eamandus@jacksonkelly.com
Email: ecappellanti@jacksonkelly.com

-- AND --

Damian Schaible
Angela M. Libby
James H.R. Windels
M. Nick Sage
**Davis Polk & Wardwell LLP**
450 Lexington Avenue
New York, New York 10017
Telephone:  (212) 450-4000
Facsimile:  (212) 701-5800
Email: Damian.Schaible@DavisPolk.com
Email: Angela.Libby@DavisPolk.com
Email: James.Windels@DavisPolk.com
Email: M.Nick.Sage@DavisPolk.com

*Counsel to Contura Energy, Inc., and Certain Affiliates*

**Certificate of Service**

I, Elizabeth A. Amandus, hereby certify that the foregoing Response to the United States' Objection to the Assumption and Assignment of Federal Leases and Executory Contracts and Sale of Assets was filed and served via the Court's CM/ECF system on August 4, 2019.

By: */s/ Elizabeth A. Amandus*
Elizabeth A. Amandus

4827-9552-0415.v1