Frank W. Volk, Chief Judge
United States Bankruptcy Court
Southern District of West Virginia

**Dated: October 11th, 2019**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Blackjewel, L.L.C., *et al.*, | ) | Case No. 19-30289 |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |

### ORDER (I) APPROVING THE SALE OF CERTAIN ASSETS TO DEAN-MCAFEE LENDERS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, AND GRANTING RELATED RELIEF

This matter comes before the Court on the *Motion of Debtors for Entry of (I) An Order (A) Approving Bidding Procedures, (B) Scheduling an Auction, Sale Hearing and Other Dates and Deadlines, (C) Approving Contura Energy, Inc. as a Stalking Horse Purchaser, (D) Approving the Assumption and Assignment of Contracts and Leases and Related Cure Procedures, (E) Approving the Purchase Deposit, (F) Authorizing Termination of the 401(k) Plan, and (G) Granting Related Relief, and (II) An Order Approving the Sale of the Purchased Assets Free and Clear of Liens, Claims and Encumbrances* [Docket No. 312] (the "Sale Motion")[2] and on the supporting documents filed by the Debtors [Docket Nos. 540, 541 and 545]; and the Court having (i) reviewed the Sale Motion and all supporting documents, (ii) previously entered the *Order (A) Approving Bidding Procedures, (B) Scheduling an*

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Blackjewel, L.L.C. (0823); Blackjewel Holdings L.L.C. (4745); Revelation Energy Holdings, LLC (8795); Revelation Management Corporation (8908); Revelation Energy, LLC (4605); Dominion Coal Corporation (2957); Harold Keene Coal Co. LLC (6749); Vansant Coal Corporation (2785); Lone Mountain Processing, LLC (0457); Powell Mountain Energy, LLC (1024); and Cumberland River Coal LLC (2213). The headquarters for each of the Debtors is located at 1051 Main Street, Milton, West Virginia 25541-1215.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed in the Sale Motion or Bidding Procedures Order (as applicable).

*Auction, Sale Hearing and Other Dates and Deadlines, (C) Approving Contura Energy, Inc. as*

*a Stalking Horse Purchaser, (D) Approving the Assumption and Assignment of Contracts and*

*Leases and Related Cure Procedures, (E) Approving the Purchase Deposit, (F) Authorizing*

*Termination of the 401(k) Plan, and (G) Granting Related Relief* [Docket No. 356] (the

"Bidding Procedures Order"), which, among other things, approved bid procedures (the

"Bidding Procedures") and related procedures for soliciting bids, conducting an auction, and

assuming and assigning contracts and leases in connection with the Debtors' sale process (the

"Sale Process"); (iii)  conducted a hearing on August 5 and August 6, 2019 (the "Sale Hearing")

to consider granting the relief requested in the Sale Motion, and (iv) being otherwise fully

advised of the premises; and all timely objections to the Sale Motion having been withdrawn,

resolved, or overruled; the Debtors having conducted the Sale Process in an appropriate and

efficient manner in accordance with the Bid Procedures and having determined in their business

judgment, in consultation with the Consultation Parties (as defined in the Bidding Procedures),

that the bid (the "Successful Bid") received from the Dean-McAfee Lenders[3] (the "Buyer") as

set forth in the General Assignment and Assumption Agreement and Bill of Sale attached

hereto as **Exhibit A** (collectively, with all related agreements, documents or instruments and all

exhibits, schedules and addenda, the "Sale Agreement") is the highest and best offer for the

Assets that are the subject of the Sale Agreement (collectively, the "Purchased Assets") and will

maximize value; and adequate notice of the Sale Motion, the Sale Process, and the Sale Hearing

having been given under the circumstances; and it appearing that the relief requested in the Sale

Motion is in the best interests of the Debtors, their estates and creditors, and all other parties-in-

---

[3] The Dean-McAfee Lenders are defined as Julia L. McAfee and Carl E. McAfee; Dean McAfee Holdings, LLC;
Jeffery Paul Dean, Trustee of the Trust for Jeffery Paul Dean (GS Exempt), under Agreement dated August 29,
2008; Donna Mae Kolb, Trustee for the Trust for Donna Mae Kolb (GS Exempt), under Agreement dated August
29, 2008; Aubra Brian Dean, Trustee for the Trust for Aubra Brian Dean (GS Exempt), under Agreement dated
August 29, 2008, as successors in interest to the Estate of Aubra Paul Dean).

interest in these chapter 11 cases; and it further appearing that the legal and factual bases set forth in the Sale Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation thereon,

**IT IS HEREBY FOUND AND DETERMINED THAT**:

     A.    <u>Jurisdiction and Venue</u>.  This Court has jurisdiction to consider the Sale Motion and the sale of the Debtors' Assets, including the transaction contemplated by the Sale Agreement, pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).  Venue of these cases and the Sale Motion in this District and before this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

     B.    <u>Statutory Predicates</u>.  The statutory and other legal predicates for the relief sought in the Sale Motion are sections 105, 363, 365, 503, 507 and 541 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 7052, 9007, 9008 and 9014, and Local Rule 6004-1.  The consummation of the transaction contemplated by the Sale Motion, Sale Agreement and this Order is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, and all of the applicable requirements of such sections and rules have been complied within respect of such transaction.

     C.    <u>Final Order</u>.  This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

     D.    <u>Notice</u>.  Good and sufficient notice of the Sale Process, the Sale Motion, the Bidding Procedures Order, the Auction, the potential assumption and assignment of contracts and leases, and the transaction contemplated by the Sale Agreement (the "<u>Sale Transaction</u>") was

provided under the exigent circumstances to all parties entitled to receive notice and any other interested parties, including those whose identities are unknown to the Debtors, and no other or further notice is necessary or appropriate.

   E. <u>Opportunity to Object</u>. A reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein has been afforded to all parties in interest.

   F. <u>Reasonable Postpetition Marketing Efforts by the Debtors</u>. The Sale Transaction represents the highest and best bid for the Purchased Assets and is the product of reasonable efforts by the Debtors and their advisors to market and maximize the value of the Debtors' Assets and to identify all available reasonable alternatives. The Sale Process has been led by the Debtors' investment banker, Jefferies LLC ("<u>Jefferies</u>"). In particular, the Debtors and Jefferies contacted at least forty parties to solicit interest and bids, consisting of both strategic purchasers and financial investors. The Debtors provided non-disclosure agreements to interested parties and received twenty-two executed agreements. The Debtors also provided the parties that signed a non-disclosure agreement access to the Debtors' data room. Thereafter, numerous parties conducted site visits. Ultimately, the Debtors received eighteen bids (including the bid from the Stalking Horse Purchaser) for certain subsets of their Assets, including certain bids for the Purchased Assets.

   G. <u>The Auction</u>. The Debtors conducted an auction (the "<u>Auction</u>") on August 1-3, 2019 in accordance with the Bidding Procedures, all previously entered orders of this Court, and written auction procedures provided to bidders prior to the commencement of the Auction and read into the record at the Auction (a copy of which was filed with the Court as Exhibit A to the *Notice of Revised Auction Results and Selection of Successful Bids and Backup*

4

*Bids* [Docket No. 529] (the "Auction Procedures") that were fair, reasonable, equitable, and designed to maximize value through competitive bidding.  A full and complete transcript of the Auction will be filed with the Court as soon as it becomes available.  Each party that submitted a bid prior to the deadline for doing so was permitted to attend the auction and participate.  Counsel and other advisors to the Official Committee of Unsecured Creditors were present as well.  The Debtors conducted four successive Auctions as follows: (i) an Auction relating to Lot 1 comprised of the Debtors' Lone Mountain and Black Mountain Assets, (ii) an Auction relating to Lot 2 comprised of the Debtors' Virginia Subdivision Assets, (iii) an Auction relating to Lot 3 comprised of the combined Assets in Lot 1 and Lot 2, and (iv) an Auction between the Successful Bidders of Lots 1 and 2 and the Successful Bidder of Lot 3.  The Debtors also conducted various Auctions for sales of discrete Assets that were not included within the bids for the Assets sold pursuant to the four Auctions noted above.  Certain of these sales involved a credit bid of secured claims, to the extent the liens securing any such claim are valid, perfected and enforceable on the terms specifically described in the Auction Procedures as read into the record of the Auction.  There were multiple rounds of bidding with respect to the Auctions on Lot 1 and Lot 3 and in connection with the Auction between the Successful Bidders of Lots 1 and 2 and the Successful Bidder of Lot 3.  The Auction concluded on Saturday, August 3, 2019 at approximately 8:45 p.m. (prevailing Eastern Time).

   H. The Successful Bids.  The following is the Debtors' summary of the Successful Bid submitted by the Purchaser for the Purchased Assets:[4]

> a. The Buyer presented a credit bid in the amount of $4,250,000 for certain real property located in Harlan County, Kentucky and related fixtures, equipment and other collateral, including the coal

---

[4] The following is only a summary and is provided for illustrative purposes only.  All bids described are subject to the specific terms and conditions set forth in the respective Sale Agreement.  In the event of any inconsistency between the following summaries of the bids and their respective Sale Agreement, the Sale Agreement shall govern.

loadout facility and coal preparation facility located near Coldiron in Harlan County, Kentucky.

I.  <u>Sales are Appropriate</u>.  The Sale Transaction pursuant to the Sale Agreement meets the standards for sales outside the ordinary course of business under section 363(b)(1) of the Bankruptcy Code.  The Sale Transaction represents the sound business judgment of the Debtors and is appropriate in light of the facts and circumstances surrounding the Sale Transaction and these chapter 11 cases because (1) the Sale Transaction was selected as the highest and best offer for the Purchased Assets after reasonable marketing and competitive bidding at the Auction and will therefore maximize value, and (2) the terms of the sale are fair and reasonable and were negotiated in good faith and at arm's length with the Buyer.

J.  <u>Corporate Authority</u>.  Subject to the entry of this Order, the Debtors have full corporate power and authority to execute the Sale Agreement and all other documents contemplated thereby, and to consummate the transaction contemplated in connection therewith.

K.  <u>Business Justification</u>.  The Debtors have (1) articulated and demonstrated good, sufficient and sound business reasons for consummating the Sale Agreement, the sale of the Purchased Assets and the Sale Transaction; (2) appropriately exercised their business judgment, in consultation with the Consultation Parties, by entering into the Sale Transaction; and (3) demonstrated compelling circumstances for entry into the Sale Transaction pursuant to section 363(b)(1) of the Bankruptcy Code, in that, among other things, the immediate approval by the Court of the Sale Transaction with the Buyer is necessary and appropriate to maximize the value of the Debtors' estates.

L.  <u>Best Interests</u>.  Approval of the Sale Agreement and the consummation of the Sale Transaction is in the best interests of the Debtors, their estates, their creditors and other parties in interest.

M.  <u>Highest or Otherwise Best</u>.  As demonstrated by (1) the testimony and/or other evidence proffered or adduced at the Sale Hearing; and (2) the representations of counsel made on the record at the Sale Hearing, the Buyer's offer for the purchase of the Purchased Assets as set forth in the Sale Agreement is fair and reasonable and constitutes the highest or otherwise best offer possible for the Purchased Assets and provides for consideration which exceeds the total consideration that the Debtors could have received by any other party for the Purchased Assets.  The consideration for the Purchased Assets is fair and reasonable and constitutes reasonably equivalent value under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.  The Sale Transaction will provide a greater recovery for the Debtors' creditors with respect to the Purchased Assets than would be provided by any other practically available alternative.  Taking into consideration all relevant factors and circumstances, no other entity has offered to purchase the Purchased Assets for greater total economic value to the Debtors or their estates.

N.  <u>Arm's Length Transaction and Buyer's Good Faith</u>.  The Sale Agreement was negotiated, proposed and entered into by the Debtors and the Buyer from arm's-length bargaining positions, without collusion, in good faith within the meaning of section 363(m) of the Bankruptcy Code.  The Buyer is not an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.  The Sale Agreement was not entered into, and neither the Debtors nor the Buyer has entered into the Sale Agreement, or proposes to consummate the Sale Transaction, for the purpose of hindering, delaying or defrauding creditors of the Debtors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia.  Neither the Debtors nor the Buyer have entered into the

7

Sale Agreement or is consummating the Sale Transaction with any fraudulent or improper purpose.

O.      No *Sub Rosa* Plan.  The consummation of the Sale Transaction outside of a chapter 11 plan pursuant to the Sale Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a plan of reorganization or liquidation for the Debtors.  The Sale Transaction does not constitute a *sub rosa* plan.

P.      No Liability Under Section 363(n).  Neither the Debtors nor the Buyer has engaged in any conduct that would cause or permit the Sale Agreement to be avoided under section 363(n) of the Bankruptcy Code.  Specifically, the Buyer has not acted in a collusive manner with any person and the purchase price was not controlled by any agreement with unrelated third parties.

Q.      Free and Clear Findings Required by the Buyer.  The Purchased Assets constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.  The Buyer would not have entered into the Sale Agreement and would not consummate the Sale Transaction if the Purchased Assets were not being sold pursuant to section 363(f) of the Bankruptcy Code, free and clear of all liens, claims, encumbrances and interests to the fullest extent permitted by section 363(f) of the Bankruptcy Code and any other applicable law, including, without limitation, (i) all liens (statutory or otherwise), claims, mortgages, deeds of trust, pledges, charges, security interests, charges, rights of first refusal, hypothecations, encumbrances, royalties, easements, leases or subleases, rights-of-way, encroachments, restrictive covenants, restrictions on transferability or other similar restrictions, rights of offset or recoupment, subleases, leases or conditional sale arrangements (collectively, the "Liens"), (ii) all claims as defined in section 101(5) of the

8

Bankruptcy Code, including all rights or causes of action (whether in law or in equity), proceedings, warranties, guarantees, indemnities, rights of recovery, setoff, recoupment, indemnity or contribution, obligations, demands, restrictions, indemnification claims or liabilities relating to any act or omission of the Debtors or any other person prior to the closing, consent rights, options, contract rights, covenants and interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued or contingent and regardless of whether currently exercisable), whether arising prior to or subsequent to the commencement of these chapter 11 cases, and whether imposed by agreement, understanding, law, equity or otherwise (collectively the "Claims"), and (iii) all debts, liabilities, obligations, covenants running with the land, including, with respect to executory leases, royalty agreements or other encumbrances the existence of which would be deemed to be a default under the applicable lease or otherwise in violation of applicable law, contractual rights and claims and labor, employment and pension claims, in each case, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or un-matured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of these chapter 11 cases, and whether imposed by agreement, understanding, law, equity or otherwise (collectively the "Interests").  The Sale Transaction shall be free and clear of, and no Buyer shall be responsible for, any Liens, Claims or Interests, including, without limitation, in respect of the following: (i) any rights or Claims based on any successor or transferee liability, (ii) any Liens, Claims or Interests that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Debtors' or the Buyer's interest in the Purchased Assets, or any similar rights; (iii) any labor or

employment agreements; (iv) mortgages, deeds of trust and security interests; (v) intercompany loans and receivables between the Debtors or non-Debtor affiliates; (vi) any pension, multiemployer plan (as such term is defined in Section 3(37) or Section 4001(a)(3) of ERISA), health or welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plans of the Debtors or any multiemployer plan to which the Debtors have at any time contributed to or had any liability or potential liability; (vii) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employment Act of 1967 and Age Discrimination in Employment Act, as amended, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Code and of any similar state law (collectively, "COBRA"), (i) state discrimination laws, (j) state unemployment compensation laws or any other similar state laws, or (k) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors; (viii) the Federal Mine Safety and Health Act of 1977 or its associated regulations; (ix) penalties of any kind whatsoever assessed against the Debtors by the United States Department of Labor's Mine Safety and Health Administration; (x) any bulk sales or similar law; (xi) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, and any taxes arising under or out of, in connection with, or in any way relating to the operation of

10

the Purchased Assets prior to the closing; (xii) any executory contract or unexpired lease; and

(xiii) any other liabilities. The Buyer shall have no liability or obligation for any Liens, Claims

and/or Interests against or in any of the Debtors and/or their respective estates and the Buyer as a

result of any application of successor liability theories or otherwise and is not expressly or

impliedly agreeing under the terms and conditions of the Purchase Agreement to assume any of

the debts or obligations of the Debtors.  A sale of the Purchased Assets other than one free and

clear of all Liens, Claims, and Interests would yield substantially less value for the Debtors'

estates, with less certainty, than the Sale Transaction as contemplated.  Therefore, the Sale

Transaction contemplated by the Sale Agreement free and clear of all Liens, Claims and

Interests, is in the best interests of the Debtors, their estates and creditors, and all other parties in

interest.

        R.      <u>Satisfaction of 363(f) Standards</u>.  The Debtors may sell the Purchased

Assets free and clear of all Liens, Claims and Interests of any kind or nature whatsoever,

because, in each case, one or more of the standards set forth in sections 363(f)(1)-(5) of the

Bankruptcy Code have been satisfied.  Those holders of Liens, Claims and Interests who did not

object (or who withdrew their objections) to the Sale Motion or the Sale Transaction are deemed

to have consented to the Sale Motion and the Sale Transaction pursuant to section 363(f)(2) of

the Bankruptcy Code.  Except as specifically provided in the Sale Agreement or this Order, all

persons and entities asserting or holding any Liens, Claims and Interests in or with respect to the

Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured,

contingent or non-contingent, senior or subordinated), however arising, shall be forever barred,

estopped, and permanently enjoined from asserting, prosecuting or otherwise pursuing such

Liens, Claims, or Interests against the Buyer or the Purchased Assets.

S.      Legal and Factual Bases.  The legal and factual bases set forth in the Sale

Motion and at the Sale Hearing establish just cause for the relief granted herein.

T.      Validity of Transfer.  The Purchased Assets constitute property of the

Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section

541(a) of the Bankruptcy Code.  The Debtors have all title, interest, and/or rights in the

Purchased Assets required to transfer and to convey the Purchased Assets to the Buyer, as

required by the Sale Agreement. As of the closing, the transfer of the Purchased Assets to the

Buyer will be a legal, valid and effective transfer of the Purchased Assets, and will vest the

Buyer with all right, title and interest of the Debtors in and to the Purchased Assets, free and

clear of all Liens, Claims and Interests, as provided in the Sale Agreement and this Order.

U.      Incorporation of Sale Hearing.  All findings of fact and conclusions of law

made or announced by the Court at the Sale Hearing are expressly adopted by, and incorporated

in, this Order as if they had been fully set forth herein.

**NOW, THEREFORE, IT IS ORDERED THAT:**

1.      Sale Motion Granted.  The Sale Motion is hereby GRANTED as set forth

herein.

2.      Findings of Fact and Conclusions of Law.  The findings of fact set forth

above and conclusions of law stated herein shall constitute this Court's findings of fact and

conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding

pursuant to Bankruptcy Rule 9014.  To the extent any finding of fact later shall be determined to

be a conclusion of law, it shall be so deemed and deemed so ordered, and to the extent any

conclusion of law shall be determined to be a finding of fact, it shall be so deemed and deemed

so ordered.

3.      <u>Objections</u>.   All objections and responses, if any, to the sale of the Purchased Assets to the Buyer or related relief requested in Sale Motion that have not been withdrawn, waived or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court or pursuant to the terms of this Order, and all reservations of rights included therein, are hereby overruled on the merits, with prejudice.   All persons and entities given notice of the Sale Motion that failed to timely object thereto are deemed to consent to the relief sought therein.

4.      <u>Approval of the Sale Agreement</u>.   The Sale Transaction and specific terms of the Sale Agreement are hereby authorized and approved pursuant to, inter alia, sections 105(a), 363(b) and 365(a) of the Bankruptcy Code.   Pursuant to section 363(b) of the Bankruptcy Code, the Debtors are authorized to consummate the Sale Transaction pursuant to and in accordance with the terms and conditions set forth in the Sale Agreement and this Order.   The Debtors, and their affiliates, officers, employees and agents, are authorized to execute, deliver and perform under, and otherwise consummate and implement, the Sale Agreement together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Sale Agreement, and to take all further actions as may be (a) reasonably requested by the Buyer for the purpose of assigning, transferring, granting, conveying and conferring to the Buyer, or reducing to possession, the Purchased Assets, or (b) necessary or appropriate to the performance of the obligations contemplated by the Sale Agreement, including, without limitation, executing any necessary or appropriate document or instrument, all without further order of the Court.

5.      <u>Good Faith</u>.   The Sale Transaction has been undertaken by the Buyer in good faith.   The Buyer satisfies the good faith requirement of section 363(m) of the Bankruptcy

13

Code and, accordingly, the Buyer and the Sale Transaction is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.  Pursuant to section 363(m) of the Bankruptcy Code, if any or all of the provisions of this Order are hereafter reversed, modified, or vacated by a subsequent order of this Court or any other court, such reversal, modification, or vacatur shall not affect the validity and enforceability of any sale, transfer or assignment under the Sale Agreement or obligation or right granted pursuant to the terms of this Order, and notwithstanding any reversal, modification or vacatur shall be governed in all respects by the original provisions of this Order or the Sale Agreement, as the case may be.  The Sale Transaction approved by this Order is not subject to avoidance and no damages may be awarded pursuant to section 363(n) of the Bankruptcy Code.

6.     Transfer of Assets Free and Clear.

A.     Pursuant to sections 105(a), 363(b), 363(f) and 365 of the Bankruptcy Code, the Debtors are authorized and directed to transfer the Purchased Assets in accordance with the terms of the Sale Agreement free and clear of all prepetition and post-petition Liens, Claims, and Interests to the fullest extent permitted by section 363(f) of the Bankruptcy Code and any other applicable law.  The Purchased Assets constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.  The Debtors have all title, interest, and/or rights in the Purchased Assets required to transfer and to convey the Purchased Assets to the Buyer, as required by the Sale Agreement. The Purchased Assets shall be transferred to the Buyer, and upon consummation of the Sale Agreement, such transfer shall (1) be valid, legal, binding and effective; (2) vest the Buyer with all right, title and interest of the Debtors in the Purchased Assets; and (3) be free and clear of all Liens, Claims and Interests.  All Liens, Claims and Interests shall attach to the net

14

proceeds of the Sale Transaction, in the order of their priority and with the same validity, force and effect that they now have against the Purchased Assets, subject to any rights, claims and defenses the Debtors or their estates, as applicable, may possess with respect thereto.  Nothing herein is intended or shall be deemed to be an adjudication of the extent, validity, enforceability and/or priority of any conflicting or competing Liens, Claims or Interests with respect to the Purchased Assets, and all rights are reserved with respect to the same.  Upon the occurrence of the closing, this Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Purchased Assets acquired by the Buyer under the Sale Agreement transferring good, marketable and indefeasible title and interest in the Purchased Assets to the Buyer free and clear of all Liens, Claims and Interests.  Each and every federal, state, and local governmental agency, quasi-agency, or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the Sale Transaction.  All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Purchased Assets to the Buyer in accordance with the Sale Agreement and this Order.

B.      Except as otherwise provided in the Sale Agreement, all Governmental Units (as defined in sections 101(27) and 101(41) of the Bankruptcy Code) and all persons and entities (and their respective successors and assigns), including, without limitation, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, current and former employees, pension plans, multiemployer pension plans, labor unions, trade creditors and any other creditors holding Liens, Claims or Interests (whether legal or equitable, secured or unsecured, known or unknown, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinated) arising under or out of, in connection with, or

in any way relating to, the Debtors, the Purchased Assets, or the transfer of the Purchased Assets

to the Buyer, are hereby forever barred, estopped and permanently enjoined from asserting or

pursuing any Liens, Claims or Interests against the Buyer, its affiliates, successors or assigns, its

property or the Purchased Assets, including, without limitation, taking any of the following

actions with respect to a Claim: (1) commencing or continuing, in any manner, any action or

other proceeding against the Buyer, its affiliates, successors or assigns, assets (including the

Purchased Assets) or properties; (2) enforcing, attaching, collecting or recovering, in any

manner, any judgment, award, decree, or order against the Buyer, its affiliates, successors or

assigns, assets, or properties; (3) creating, perfecting, or enforcing any liens, claims,

encumbrances or other interests against the Debtors as against the Buyer, or its affiliates,

successors, assigns, assets (including the Purchased Assets) or properties; (4) asserting any

setoff, right of subrogation or recoupment of any kind for any obligation of any of the Debtors as

against any obligation due to the Buyer, or its affiliates, successors or assigns or their respective

assets, including the Purchased Assets; (5) commencing or continuing any action, in any manner

or place, that does not comply, or is inconsistent with, the provisions of this Order or the

agreements or actions contemplated or taken in respect thereof; or (6) denying, refusing,

delaying or otherwise frustrating the transfer or assignment of any permits, licenses, or other

approvals previously held by the Debtors that were necessary for the Purchased Assets.

       C.    Provided, however, and for the avoidance of doubt, the Purchased Assets

that Buyer is acquiring pursuant to the Sale Agreement and this Order do not include that certain

real property sold and transferred to Dannie Saylor by Revelation Energy LLC by virtue of that

Special Warranty Deed, dated January 10, 2017 (the "Saylor Property"), of record in Deed Book

467, Page 386, on January 18, 2017, in the office of the Harlan County Clerk; provided, further,

16

that certain Real Estate Mortgage, dated April 22, 2015, of record in Mortgage Book 433, Page 450, on April 23, 2015, in the office of the Harlan County Clerk and the liens provided therein shall remain in full force and effect against the Saylor Property in favor of the Buyers as assigned to the Buyers by Assignment of Real Estate Mortgage, dated April 22, 2015, of record in Mortgage Book 433, page 463, on April 23, 2015, in the office of the Harlan County Clerk.

D.      This Order: (1) shall be effective as a determination that, as of the closing, all Liens, Claims and Interests have been unconditionally released, discharged and terminated as to each Buyer and the Purchased Assets, and that the conveyances and transfers described herein have been effected; and (2) is and shall be binding upon and govern the acts of all persons and entities, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transaction contemplated by the Sale Agreement.

E.      Upon the closing, each of the Debtors' creditors and any other holder of a Lien, Claim or Interest is authorized and directed to execute such documents and take all other actions as may be necessary to release its Lien, Claim or Interest in the Purchased Assets, if any, as such Lien, Claim or Interest may have been recorded or may otherwise exist.  If any person or entity that has filed financing statements, mortgages, deeds of trust, mechanic's liens, *lis pendens* or other documents or agreements evidencing Liens, Claims or Interests against the Debtors or

17

the Purchased Assets has not delivered to the Debtors prior to the closing of the Sale Transaction, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all interests which the person or entity has with respect to the Debtors or the Purchased Assets or otherwise, then with regard to the Purchased Assets that are purchased by the Buyer pursuant to the Sale Agreement and this Order: (1) the Debtors are hereby authorized, and the Buyer is hereby authorized, to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Purchased Assets; and (2) the Buyer is hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Liens, Claims and Interests against the Purchased Assets.  Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transaction contemplated by the Sale Agreement, including, without limitation, recordation of this Order.  This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state or local government agency, department or office.  This Order shall be binding upon and shall govern the acts of all persons including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of such assets or other property interests.  Notwithstanding and without limiting the foregoing, the provisions of this

Order authorizing the sale and assignment of the Purchased Assets free and clear of Liens, Claims and Interests, shall be self-executing, and neither the Debtors nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Order.

F.     Following the closing of the Sale Transaction, no holder of any Claim shall interfere with the Buyer's title to or use and enjoyment of the Purchased Assets based on or related to any such Claim or based on any actions the Debtors may take in their chapter 11 cases.

7.     <u>Surrender of Possession</u>.  All entities that are currently, or on the closing may be, in possession of some or all of the Purchased Assets are hereby directed to surrender possession of the Purchased Assets to the Buyer on the closing under its Sale Agreement, unless the Buyer otherwise agrees.

8.     <u>United Bank</u>.  For the avoidance of doubt, the Purchased Assets that Buyer is acquiring pursuant to the Sale Agreement do not include any assets upon which United Bank asserts a Lien, Claim or Interest (the "<u>United Collateral</u>").  The Buyer shall permit United Bank (subject to the requirements of the Bankruptcy Code) or the Debtors reasonable ingress, egress and regress to its real properties necessary to retrieve the United Collateral, but only at reasonable times and with 48 hours advance notice to the Buyer.  United Bank shall: (1) prior to entering Buyer's real properties, provide Buyer with proof of sufficient insurance, as reasonably determined by Buyer, to cover any loss to Buyer's interest in the Purchased Assets or any person, property or thing that may rise from United Bank, its agents, or employees ingress, egress and regress in, on or to Buyer's real properties and its, or their, removal of any of the United Collateral from the Buyer's real properties; (2) prior to entering Buyer's real properties, agree in writing to indemnify and hold harmless the Buyer, its employees, officers, and agents for any

loss, claim, or damage incurred by the Buyer as a result of United Bank, its agents, or employees ingress, egress and regress in, on or to Buyer's real properties and United Bank's removal of any of its collateral from the Buyer's real properties; and (3) agree that its authorization to ingress, egress and regress to Buyer's Purchased Assets shall terminate within 120 days of the date of entry of this Order.

9.      <u>Caterpillar</u>.  For the avoidance of doubt, the Purchased Assets that Buyer is acquiring pursuant to the Sale Agreement do not include any assets upon which Caterpillar Financial Services Corporation ("<u>Caterpillar</u>") asserts a Lien, Claim or Interest (the "<u>Caterpillar Collateral</u>").  The Buyer shall permit Caterpillar (subject to the requirements of the Bankruptcy Code) or the Debtors reasonable ingress, egress and regress to its real properties necessary to retrieve the Caterpillar Collateral.

10.      <u>Environmental Matters</u>.  Nothing in this Order or the Sale Agreement releases, discharges, nullifies, precludes, or enjoins the enforcement of any environmental liability to a Governmental Unit or any police or regulatory authority (including but not limited to reclamation and mitigation and any associated long term protection requirements) to a Governmental Unit that any entity would be subject to as the owner or operator of the Purchased Assets after the closing.  Nothing in this Order or the Sale Agreement authorizes the transfer or assignment to the Buyer of any governmental (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements under non-bankruptcy law governing such transfers or assignments.  Notwithstanding the foregoing sentence, nothing in this Order shall: (i) be interpreted to deem the Buyer as the successor to the Debtors under any successor liability doctrine with respect to any liabilities under environmental statutes or regulations for penalties

for days of violation prior to the closing or for liabilities relating to off-site disposal of waste by

the Debtors prior to the closing; (ii) create for any Governmental Unit any substantive right that

does not already exist under law; or (iii) be deemed or construed to be an admission of liability

by the Debtors.

           11.   <u>Permanent Injunction</u>.  All persons and entities are prohibited and

enjoined from taking any action to adversely affect or interfere with the ability of the Debtors to

transfer the Purchased Assets to the Buyer in accordance with the Sale Agreement and this

Order.  Following the closing,  all persons (including, but not limited to, (i) the Debtors and/or

their respective successors (including any trustee), (ii) creditors, (iii) investors, (iv) current and

former employees and shareholders, (v) administrative agencies, (vi) Governmental Units,

(vii) secretaries of state, (viii) federal, state, and local officials, including those maintaining any

authority relating to any environmental, health and safety laws, and (ix) the successors and

assigns of each of the foregoing) holding Liens, Claims or Interests in the Purchased Assets or

against the Debtors with respect to the Purchased Assets of any kind or nature whatsoever shall

be, and hereby are, forever barred, estopped, and permanently enjoined from asserting,

prosecuting, or otherwise pursuing any Liens, Claims or Interests of any kind or nature

whatsoever against the Buyer or any affiliate of the Buyer or any of its respective property,

successors and assigns, or the Purchased Assets, as an alleged successor or on any other

grounds; provided that, for the avoidance of doubt, the rights and protections granted to United

Bank and Caterpillar in paragraphs 8 and 9 of are expressly preserved.  No person shall assert,

and the Buyer and the Purchased Assets shall not be subject to, any defaults, breaches,

counterclaims, offsets, defenses (whether contractual or otherwise, including, without

limitation, any right of recoupment), liabilities, claims and interests, or basis of any kind or nature whatsoever to delay, defer, or impair any right of the Buyer or the Debtors, or any obligation of any other party, under or with respect to, any Purchased Assets, with respect to any act or omission that occurred prior to the closing or with respect to any other agreement or any obligation of the Debtors.

12.    <u>Exculpation and Release</u>.    Neither the Buyer nor any of its affiliates, successors, agents, employees, managers, members, officers, directors, attorneys, and/or assigns, shall have, or incur any liability to, or be subject to any action by, the Debtors or any of their predecessors, successors, or assigns, arising out of the negotiation, investigation, preparation, execution, or delivery of the Sale Agreement and the entry into and consummation of the Sale Transaction, except as expressly provided in the Sale Agreement and this Order.

13.    <u>No Interference</u>.    Following the closing, no holder of any Lien, Claim or Interest in the Purchased Assets shall interfere with the Buyer's title to, or use and enjoyment of, the Purchased Assets based on, or related to, any such Lien, Claim or Interest, or based on any actions the Debtors may take in these cases.

14.    <u>Post-Closing Actions and Transactions</u>.    The Debtors and the Buyer, and each of their respective officers, employees, and agents, will be authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Debtors or the Buyer deems necessary or appropriate to implement and effectuate the terms of the Sale Agreement and this Order.    Further, effective as of the closing, the Buyer and its respective successors and assigns shall be designated and appointed the Debtors' true and lawful attorney and attorneys, with full power of substitution, in the Debtors' name and stead,

22

its successors and assigns, to demand and receive any and all of the Purchased Assets, and from time to time institute and prosecute in the name of the Buyer, for the benefit of such Buyer, its successors and assigns, any and all proceedings at law, in equity , or otherwise, that such Buyer, its successors or assigns, may deem proper for the collection or reduction to possession of any of the Purchased Assets, and to do all acts and things with respect to the Purchased Assets that the Buyer, its successors and assigns, shall deem desirable.  All of the foregoing powers granted to the Buyer are coupled with an interest and are irrevocable by the Debtors.

15.    Operation by Buyer.  To the maximum extent available under applicable law: (a) each Buyer shall be authorized, as of the closing, to operate under any license, permit, registration, and any other governmental authorization or approval of the Debtors with respect to the Purchased Assets; (b) all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Buyer as of the closing; and (c) to the extent provided by section 525 of the Bankruptcy Code, no Governmental Unit may deny, revoke, suspend or refuse to renew any permit, license, or similar grant relating to the operation of the Purchased Assets sold, transferred or conveyed to the Buyer on account of the filing or pendency of these chapter 11 cases or the consummation of the Sale Transaction contemplated by the Sale Agreement.  Notwithstanding the foregoing, nothing herein is intended or shall be deemed to relieve the Buyer from having to comply with any requirements or approval process under applicable non-bankruptcy law with respect to the transfer of any governmental license or permit.

16.    Enforcement.  The terms and provisions of the Sale Agreement and this Order, and the transaction contemplated thereby and hereby, shall, as applicable, be specifically enforceable against and be binding in all respects upon, or shall inure to the benefit of, the

010-8808-6600/7/AMERICAS

Debtors, their estates, their creditors (known and unknown), counterparties to Executory

Contracts, any Governmental Unit which regulates the Debtors' business, the Buyer, and their

respective affiliates, successors and assigns, and any affected third parties, including all entities

asserting any Liens, Claims or Interests, notwithstanding any subsequent appointment of any

trustee, examiner or receiver of the Debtors under any chapter of the Bankruptcy Code or any

other law, and all such terms and provisions likewise shall be binding on and specifically

enforceable against such trustee, examiner or receiver, and shall not be subject to rejection or

avoidance by the Debtors, their estates, their creditors, any other representatives of their estates,

or any trustee, examiner or receiver.

17.    <u>No Successor Liability</u>.

A.    Neither the Buyer, nor any of its respective successors, assigns, agents,

employees, managers, members, officers, directors, attorneys, or affiliates shall have any liability

for any Lien, Claim or Interest that (i) arose or occurred prior to the closing, (ii) could have

otherwise been asserted against the Debtors prior to the closing, or (iii) is related to the

Purchased Assets prior to the closing.  The Buyer is not and shall not be deemed a "successor" to

the Debtors or their estates, have, *de facto* or otherwise, merged with or into the Debtors or be a

mere continuation or substantial continuation of the Debtors or the enterprise of the Debtors

under any theory of law or equity as a result of any action taken in connection with the Sale

Agreement or the transaction or documents ancillary thereto or contemplated thereby or in

connection with the acquisition of the Purchased Assets.

B.    Without limiting the foregoing, and except  as otherwise set forth in the

Sale Agreement or this Order, the Buyer shall not have any successor, transferee, derivative, or

vicarious liabilities of any kind or character for any Liens, Claims or Interests, including under

010-8808-6600/7/AMERICAS

any theory of successor or transferee liability, *de facto* merger or continuity, whether known or unknown as of the closing, now existing or hereafter arising, whether fixed or contingent, asserted or unasserted, liquidated or unliquidated, with respect to of any of the following: (i) any foreign, federal, state, or local revenue, pension, ERISA, tax, labor,  employment, antitrust, environmental, or other law, rule, or regulation (including without limitation filing requirements under any such laws, rules or regulations); (ii)  any products liability law, rule, regulation, or doctrine with respect to the Debtors' liability under such law, rule or regulation, or doctrine, or under any product warranty liability law or doctrine; (iii) any employment or labor agreements, consulting agreements, severance arrangements, change-in-control agreements, or other similar agreement to which the Debtors are a party; (iv) any pension, welfare, compensation, or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plan of the Debtors; (v) the cessation of the Debtors' operations, dismissal of employees, or termination of employment or labor agreements or pension, welfare, compensation, or other employee benefit plans, agreements, practices and programs, or obligations that might otherwise arise from or pursuant to any statute or regulation including but not limited to the (a) Employee Retirement Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employment Act of 1967, (g) the Americans with Disabilities Act of 1990, (h) the Worker Adjustment and Retaining Act of 1988 or (i) COBRA; (vi) environmental liabilities, debts, Claims, or obligations arising from conditions first existing on or prior to the closing (including, without limitation, the presence of hazardous, toxic, polluting, or contamination substances or wastes), which may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response,

Compensation and Liability Act, 42 U.S.C. § 9601 *et seq*.; (vii) any liabilities, debts, or obligations of or required to be paid by the Debtors for any taxes of any kind for any period; (viii) any liabilities, debts, commitments, or obligations for any taxes relating to the operation of the Purchased Assets prior to the closing; (ix) any bulk sale law; and (x) any litigation.

18.   <u>Fair Consideration</u>.   The consideration provided by the Buyer for the Purchased Assets under the Sale Agreement shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and the laws of the United States, any state, territory, possession, or the District of Columbia.   The Sale Transaction may not be avoided under section 363(n) of the Bankruptcy Code.   The Sale Agreement was not entered into, and the Sale Transaction is not being consummated, for the purpose of hindering, delaying, or defrauding creditors of the Debtors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable law.   Neither the Debtors nor the Buyer have entered into the Sale Agreement or any agreement contemplated thereby or is consummating the Sale Transaction with any fraudulent or otherwise improper purpose, including, without limitation, to evade any pension liabilities.   No other person or entity or group of persons or entities has offered to purchase the Purchased Assets for an amount or on terms that would provide greater value to the Debtors and their estates than the value provided by the Buyer.   The Court's approval of the Sale Motion and the Sale Agreement is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

19.   <u>Retention of Jurisdiction</u>.   This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Order, all amendments thereto, and any waivers and

26

consents thereunder, including, but not limited to, retaining jurisdiction to (i) compel delivery of the Purchased Assets to the Buyer; (ii) interpret, implement, and enforce the provisions of this Order; (iii) protect the Buyer, any of the Buyer's affiliates, or any agent of the foregoing, against any Liens, Claims or Interests against the Debtors or the Purchased Assets of any kind or nature whatsoever, and (iv) enter any order under sections 363 and 365 of the Bankruptcy Code.

20.    _Credit Bidding_.    To the extent the consideration to be paid for the Purchased Assets pursuant to the Sale Agreement is comprised of a credit bid under section 363(k) of the Bankruptcy Code, if it is later determined, pursuant to court order or as agreed by the parties, that the secured claims that were credit bid are not the subject of valid, binding and enforceable liens, then the Buyer shall immediately pay cash to the Debtors' estates in the amount of its Successful Bid; provided, however, that if only a portion of the Buyer's liens are later found invalid or unenforceable, any such cash payment to be made by Buyer shall be limited to the value of the lien(s) actually disallowed or avoided.   The Debtors' estates and the Buyer shall work in good faith to allocate the amount of the credit bid attributable to the value of any invalid liens and the corresponding amount of cash due to the Debtors' estates.   If the Debtors' estates and the Buyer cannot reach an agreement, the appropriate allocation shall be determined by the Court.

21.    _Subsequent Plan Provisions_.   Nothing contained in any chapter 11 plan confirmed in any Debtor's bankruptcy case or any order confirming any such plan or in any other order in these chapter 11 cases shall alter, conflict with, or derogate from, the provisions of the Sale Agreement or this Order.

010-8808-6600/7/AMERICAS

22.     <u>No Bulk Sales</u>.  No bulk sales law or similar law of any state or other jurisdiction shall apply in any way to the transaction contemplated by the Sale Agreement, the Sale Motion and this Order.

23.     <u>Modification</u>.    The Sale Agreement may be modified, amended or supplemented by the Buyer and the Debtors in a writing signed by both parties without further order of the Court; <u>provided that</u> any such modification, amendment or supplement does not materially change the terms of the Sale Agreement or modify the express terms of this Order.

24.     <u>Survival</u>.  Nothing contained in any subsequent order of this Court or any court of competent jurisdiction in these chapter 11 cases (or any order entered after any conversion of a chapter 11 case of the Debtors to a case under chapter 7 of the Bankruptcy Code) or any chapter 11 plan confirmed in any Debtors' bankruptcy cases or any order confirming any such plan, or any order dismissing any cases of the Debtors shall nullify, alter, conflict with, or in any manner derogate from the provisions of this Order, and the provisions of this Order shall survive and remain in full force and effect.  For the avoidance of doubt, if the Debtors' chapter 11 cases are converted to cases under chapter 7 of the Bankruptcy Code, the Order shall be binding on the chapter 7 trustee in such chapter 7 cases.

25.     <u>Failure to Specify</u>.    The failure to specifically include any particular provision of the Sale Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Debtors and the Buyer that the Sale Agreement be authorized and approved in its entirety with such amendments thereto (subject to paragraph 23) as may be made by the parties in accordance with the Sale Transaction and the terms of the Sale Agreement.

28

26.    <u>Automatic Stay</u>.    The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted with respect to the Debtors to the extent necessary, without further order of this Court, to allow: (a) Buyer to give the Debtors any notice provided for in the Sale Agreement, and (b) Buyer to take any and all actions provided under or contemplated by the Sale Agreement in accordance with the terms and conditions thereof, including taking immediate possession of the Purchased Assets upon entry by the Court of this Order.

27.    <u>Appointment of Trustee</u>.    The provisions of the Sale Agreement and this Order may be specifically enforced in accordance with the Sale Agreement notwithstanding the appointment of any chapter 7 or chapter 11 trustee after the closing of the Sale Agreement.

28.    <u>Sureties Reservation of Rights</u>.    Certain commercial surety companies (collectively, the "<u>Sureties</u>" and each, individually, a "<u>Surety</u>") – including, Indemnity National Insurance Company, First Surety Corporation, Lexon Insurance Company – have issued commercial surety bonds on behalf of the Sellers and their affiliates and certain non-Debtors (collectively, the "<u>Existing Surety Bonds</u>" and, each individually, an "<u>Existing Surety Bond</u>"). These Existing Surety Bonds were issued pursuant to certain existing indemnity agreements and/or related agreements by and between the Sureties, on the one hand, and the Sellers and their affiliates and certain non-Debtors (as applicable) on the other hand (collectively, the "<u>Existing Indemnity Agreements</u>" and, each, an "<u>Existing Indemnity Agreement</u>").

29.    If the closing of the Sale Agreement occurs prior to (i) the Buyer's procurement of new operating permits, either replaced or transferred (the "<u>Replacement Permits</u>") with respect to the Purchased Assets, (ii) the execution of new indemnity agreements by and between the Sureties, on the one hand, and the Buyer, on the other hand (the "<u>Replacement Indemnity Agreements</u>"), and (iii) the replacement of all Existing Surety Bonds

29

with new surety bonds (collectively, the "Replacement Surety Bonds"), the Sellers will consult with the relevant Sureties with respect to entering into an agreement (an "Interim Agreement"), subject to regulatory authority approval, that would, among other provisions acceptable to the Sureties in their sole and absolute discretion, allow the Buyer to operate the Purchased Assets under the Sellers' existing mining permits (collectively, the "Existing Permits"), Existing Indemnity Agreements and Existing Surety Bonds until the Buyer obtains Replacement Permits, Replacement Indemnity Agreements and Replacement Bonds.  An Interim Agreement may require, among other provisions acceptable to the Sureties in their sole and absolute discretion, that the Buyer (a) assumes all obligations under the Existing Permits, Existing Indemnity Agreements and the Existing Surety Bonds for the mining and other activities the Buyer conducts during the term of the Interim Agreement and (b) indemnifies the Sellers and the Sureties from and against any and all claims, liability, loss or default that occur during the term of the Interim Agreement.

30.     With respect to each Surety, upon the (a) issuance of the Replacement Permits, (b) execution of the Replacement Indemnity Agreements and (c) termination and/or release of all Existing Surety Bonds, (d) satisfaction of all payment and performance obligations under the Existing Indemnity Agreements in accordance with paragraph 28, the Debtors shall have no further obligations to the Sureties under the Existing Indemnity Agreements on account of the Purchased Assets or any obligations related thereto; provided, however, that nothing in this paragraph or this Order shall be deemed to alter, limit or affect any rights or claims of the Sureties or any applicable state or regulatory authority, in respect of any asset, permit or other obligation not transferred or assumed by the Buyer.

31.     Nothing in this Order, the Sale Agreement or any documents related to any of the foregoing shall be construed to authorize or permit the Debtors' assumption and assignment of any Existing Surety Bond or Existing Indemnity Agreement or to obligate any Surety to replace any Existing Surety Bond in connection with the Sale Agreement.

32.     Nothing herein or in the Sale Agreement shall be deemed to provide a Surety's consent to the involuntary substitution of any principal under any Existing Surety Bond or Existing Indemnity Agreement.

33.     Except as set forth in an Interim Agreement referenced in paragraph 29 above, the Buyer shall not be (a) liable for any Existing Surety Bonds and/or obligations arising under the Existing Indemnity Agreements to the extent they relate to any assets that are not transferred to the Buyer or (b) deemed a substitute principal under any Existing Surety Bond or an indemnitor under any Existing Indemnity Agreement.

34.     For the avoidance of doubt, nothing in this Order, the Sale Agreement, or otherwise shall be deemed to:  (a) alter, limit, expand, modify, release, waive or prejudice any rights, remedies and/or defenses of any Surety under any Existing Surety Bond relating to any assets, obligations or liabilities to be transferred to Buyer, including, without limitation, mining permits, surface and coal leases and mine-related facilities and other contractual obligations; (b) authorize or permit the assignment or assumption of any Existing Surety Bonds, any Existing Indemnity Agreements, including without limitation, any coal bond reclamation agreement, collateral agreement or other agreements of the Debtors or any non-Debtor with such Surety or Sureties, (collectively, the "Surety Agreements"); (c) alter, limit, expand, modify, prejudice, release or waive any rights of such Sureties under the Surety Agreements; (d) alter, limit, expand, modify, prejudice, waive or release any rights of such sureties in any and all collateral of

31

such Surety or Sureties that secures any and all obligations of the Debtors or any non-Debtor under any Existing Surety Bonds or Existing Indemnity Agreements; or (e) alter, limit, expand, modify, prejudice, waive or release any rights of the Sureties in connection with any of the Debtors' chapter 11 cases or any case under Title 11 of the United States Code.

35.    Nothing in the Order, the Sale Agreement, or any other document or agreement executed in connection with or contemplated under the Sale Agreement, including, without limitation, any releases included therein, shall be deemed to alter, limit, modify or release any right, claim or interest of XL Insurance Company and XL Reinsurance Company (collectively, "XL") under any of XL's bonds, its indemnity agreements or in its collateral, including, without limitation, any rights, claims or interests against any non-Debtors, and all such rights and claims are expressly reserved and preserved in all respects.

36.    <u>United States of America</u>.  Notwithstanding any provisions in the Sale Motion, this Order, the Sale Agreement or any other documents approved in connection with this Order (collectively, the "<u>Sale Documents</u>") to the contrary, nothing in this Order authorizes the sale (free and clear or otherwise), transfer, assumption and/or assignment of the Debtors' interests in executory contracts, unexpired leases, rights-of-use and easements, and rights-of-way or other interests or agreements with the federal government (collectively, the "<u>Federal Leases</u>"), and no transfer and/or assignment of Federal Leases shall occur absent entry of a specific order entered pursuant to section 365 and subject to the consent of the United States as provided for in 11 U.S.C. § 365(c) and applicable non-bankruptcy laws.  Any and all of the United States' objections to the assumption, assignment and/or transfer of the Federal Leases pursuant to 11 U.S.C. § 365 are expressly preserved including, without limitation, with respect to any proposed cure of any defaults under the Federal Leases, the United States' consent rights to any

32

assignment or transfer of the Federal Leases and adequate assurance of future performance. Notwithstanding any provisions in the Sale Documents to the contrary, nothing in the Sale Documents shall affect the United States' police and regulatory powers, and the United States' (including any and all of its agencies) rights to offset or recoup any amounts due under, or relating to, claims or debts that the United States (including any and all of its agencies) may have or assert are expressly preserved. Notwithstanding anything to the contrary in the Sale Documents, this paragraph shall expressly supersede and control to the extent that any other provision in the Sale Documents conflicts with the terms of this paragraph.

37.     Notwithstanding any other provision of this Order or any other Order of this Court, no sale, transfer or assignment of any rights and interests of the Debtor in any federal license or authorization issued by the Federal Communications Commission ("FCC") shall take place prior to the issuance of FCC regulatory approval for such sale, transfer or assignment pursuant to the Communications Act of 1934, as amended, and the rules and regulations promulgated thereunder. The FCC's rights and powers to take any action pursuant to its regulatory authority, including, but not limited to, imposing any regulatory conditions on such sales, transfers and assignments and setting any regulatory fines or forfeitures, are fully preserved, and nothing herein shall proscribe or constrain the FCC's exercise of such power or authority to the extent provided by law.

38.     Nothing in this Order or the Sale Agreement releases, discharges, nullifies, precludes, or enjoins the enforcement of any environmental liability to a Governmental Unit or any police or regulatory liability (including but not limited to reclamation and mitigation and any associated long term protection requirements) to a Governmental Unit that any entity would be subject to as the owner or operator of the Purchased Assets after the closing. Nothing in this

Order or the Sale Agreement authorizes the transfer or assignment to the Buyer of any governmental (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements under non-bankruptcy law governing such transfers or assignments. Notwithstanding the foregoing sentence, nothing in this Order shall: (i) be interpreted to deem the Buyer as the successor to the Debtors under any successor liability doctrine with respect to any liabilities under environmental statutes or regulations for penalties for days of violation prior to the closing or for liabilities relating to off-site disposal of waste by the Debtors prior to the closing; (ii) create for any Governmental Unit any substantive right that does not already exist under law; or (iii) be deemed or construed to be an admission of liability by the Debtors.

39.    _Order Immediately Enforceable_. Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d) or any provisions of the Local Rules, this Order shall not be stayed for fourteen (14) days after its entry, and shall be effective immediately upon entry, and the Debtors and the Buyer are authorized to close the Sale Transaction immediately upon entry of this Order.  Time is of the essence in closing the Sale Transaction referenced herein, and the Debtors and the Buyer intend to close the transaction as soon as practicable.  This Order is a final order and the period in which an appeal must be filed shall commence upon the entry of this Order.

40.    _Conflicts_. In the event of a direct conflict between the terms of this Order and the terms of (a) the Sale Agreement, or (b) any other order of this Court, the terms of this Order shall govern and control.

41.    _No Waiver_. Except as otherwise expressly set forth herein, nothing in this Order shall modify or waive any closing conditions or termination rights in the Sale Agreement,

010-8808-6600/7/AMERICAS

and all such conditions and rights shall remain in full force and effect in accordance with their terms.

42.    <u>Time Periods</u>.  All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

43.    <u>Nonseverability</u>.  The provisions of this Order are nonseverable and mutually dependent.

Presented By:

**SUPPLE LAW OFFICE, PLLC**

Joe M. Supple, No. 8013
801 Viand St.
Point Pleasant, WV 25550
Telephone: 304.675.6249
Facsimile: 304.675.4372
joe.supple@supplelaw.net

– and –

**SQUIRE PATTON BOGGS (US) LLP**

*/s/Stephen D. Lerner*
Stephen D. Lerner (admitted *pro hac vice*)
Nava Hazan (admitted *pro hac vice*)
Travis A. McRoberts (admitted *pro hac vice*)
201 E. Fourth Street, Suite 1900
Cincinnati, Ohio 45202
Telephone: 513.361.1200
Facsimile: 513.361.1201
stephen.lerner@squirepb.com
nava.hazan@squirepb.com
travis.mcroberts@squirepb.com

*Co-Counsel to the Debtors and
Debtors-in-Possession*

## EXHIBIT A

**General Assignment and Assumption Agreement and Bill of Sale**

EXECUTION VERSION

**GENERAL ASSIGNMENT AND ASSUMPTION AGREEMENT AND BILL OF SALE**

This **GENERAL ASSIGNMENT AND ASSUMPTION AGREEMENT AND BILL OF SALE** (this "**Agreement**"), dated as of _____ __, 2019 (the "**Effective Date**"), is made and entered into by and among Blackjewel L.L.C., a Delaware limited liability company ("**Blackjewel**"), Blackjewel Holdings L.L.C., a Delaware limited liability company ("**Holdings**", and together with Blackjewel, Revelation Energy Holdings, LLC, a Delaware limited liability company, Revelation Management Corp., a Delaware corporation, Revelation Energy, LLC, a Kentucky limited liability company, Dominion Coal Corporation, a Virginia corporation, Harold Keene Coal Co. LLC, a Virginia limited liability company, Vansant Coal Corporation, a Virginia corporation, Lone Mountain Processing LLC, a Delaware limited liability company, Powell Mountain Energy, LLC, a Delaware limited liability company and Cumberland River Coal LLC, a Delaware limited liability company, each a "**Seller**" and collectively, "**Sellers**") and Julia L. McAfee and Carl E. McAfee (the "**McAfees**"), Dean-McAfee Holdings, LLC, a Virginia limited liability company ("**McAfee Holdings**"), Jeffrey Paul Dean, Trustee of the Trust for Jeffery Paul Dean (GS Exempt), under Agreement dated August 29, 2008, Donna Mae Kolb, Trustee for the Trust for Donna Mae Kolb (GS Exempt), under Agreement dated August 29, 2009, and Aubra Brian Dean, Trustee for the Trust for Aubra Brian Dean (GS Exempt), under Agreement dated August 29, 2008 (collectively the "**Deans**"; the McAfees, McAfee Holdings and the Deans are collectively, "**Buyer**").

In consideration of the mutual representations, warranties, covenants and agreements contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.    Each Seller does hereby grant, sell, transfer, assign, convey and deliver to Buyer (as set forth below), as of the Effective Date, all of the right, title and interest of such Seller in, to and under the Purchased Assets as defined and described on <u>Exhibit A</u> and incorporated herein by reference, free and clear of all liens, pledges, claims, interests, charges, encumbrances or limitations of every kind, to the fullest extent permitted by the Bankruptcy Code and by the order of the Bankruptcy Court authorizing and approving the transactions described in this Agreement ("**Liens**") (other than those Liens created by Buyer), and Buyer (as set forth below) hereby accepts the grant, sale, transfer, assignment, conveyance and delivery of such Seller's right, title and interest in all such Purchased Assets, except those transferred pursuant to any other instrument as may be described herein.  Each Seller and Buyer acknowledge and agree that all of the Purchased Assets constituting real property (the "**Purchased Real Property**") shall be conveyed and transferred to Buyer pursuant to a special warranty deed in substantially the form attached hereto as <u>Exhibit B</u> and incorporated herein by reference.  This Agreement does not sell, transfer, assign, convey or deliver to Buyer any right, title or interest in, to or under any other assets other than the Purchased Assets.

2.    Notwithstanding anything to the contrary contained herein, the parties hereto acknowledge and agree that the Purchased Assets are being acquired by Buyer in the following manner:

| Buyer Party | Percentage Acquired |
|---|---|
| McAfees | 42.70% |
| McAfee Holdings | 14.60% |
| Deans | 42.70% |
| **Total** | **100.00%** |

3.    To the extent the transfer of the Purchased Real Property should be subject to real estate transfer tax pursuant to KRS 142.050, as additional consideration for the purchase of the Purchased Real Property, Buyer agrees that it will pay, on behalf of Sellers, any real estate transfer taxes due on the transfer of the Purchased Real Property.

4.    The parties acknowledge and agree that Buyer is not assuming any liabilities or obligations relating to the Purchased Assets.

5.    Subject to the terms and conditions of this Agreement, Sellers and Buyer will use commercially reasonable efforts, and will cause their respective subsidiaries to use commercially reasonable efforts, to take, or cause to be taken, all actions and to do, or cause to be done, all things necessary, proper or advisable under applicable law to consummate the transactions contemplated by this Agreement, including, without limitation, the execution and delivery of any other documents or instruments Buyer deems necessary or appropriate to effectuate the transfer of the Purchased Assets.

6.    In the event that, within twelve (12) months following the Effective Date, it is discovered and demonstrated to the satisfaction of the Buyer that certain assets, properties or rights, including fractional real property interests, owned, leased or subleased were conveyed to Buyer by Sellers but do not constitute part of the Purchased Assets, then Buyer shall use its commercially reasonable efforts to assign, convey, lease or sublease, as applicable, such assets, properties, or rights to Seller (or its designee), in each case upon the reasonable request of Seller (or its designee), at no additional cost or expense to Seller (or its designee). Additionally, in the event that, within twelve (12) months following the Effective Date, it is discovered that certain assets, properties or rights, including fractional real property interests, owned, leased or subleased by Sellers which constitute part of the Purchased Assets but were not conveyed to Buyer, then Seller shall use its commercially reasonable efforts to assign, convey, lease or sublease, as applicable, such assets, properties, or rights to Buyer (or its designee), in each case upon the reasonable request of Buyer (or its designee), at no additional cost or expense to Buyer (or its designee).

7.    In consideration for the purchase of the Purchased Assets, Buyer shall immediately credit Sellers an amount equal to $4,250,000, which amount shall be offset against amounts due to Buyer and its affiliates in accordance with 11 U.S.C. § 363(k). If it is later determined, pursuant to court order or as agreed by the parties, that the secured claims that were credit

- 2 -

bid are not the subject of valid, binding and enforceable liens, then the Buyer shall immediately pay cash to the Sellers' estates in the amount of its Successful Bid; provided, however, that if only a portion of the Buyer's liens are later found invalid or unenforceable, any such cash payment to be made by Buyer shall be limited to the value of the lien(s) actually disallowed or avoided. The Sellers' estates and the Buyer shall work in good faith to allocate the amount of the credit bid attributable to the value of any invalid liens and the corresponding amount of cash due to the Sellers' estates.  If the Sellers' estates and the Buyer cannot reach an agreement, the appropriate allocation shall be determined by the Bankruptcy Court.

8.     Each Seller is an entity duly organized, validly existing and in good standing under the laws of its jurisdiction of formation and, subject to any limitations that may be imposed on such Sellers resulting from or relating to the Bankruptcy Case (as defined herein), has the requisite power and authority to own, lease and operate its properties and to carry on its business as now conducted.

9.     Sellers own the Purchased Assets free and clear of all Liens (other than those Liens created by Buyer) and, as of the Effective Date, Buyer will be vested with good, marketable, and valid title to the Purchased Assets, free and clear of all Liens (other than those Liens created by Buyer), to the fullest extent permissible under law, including Sections 105, 363, and 365 of the Bankruptcy Code and Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure.

10.    The Bankruptcy Court will retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes, which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transaction contemplated under this Agreement. Any and all proceedings related to the foregoing will be filed and maintained only in the Bankruptcy Court, and the parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court for such purposes; provided, however, that if the bankruptcy case captioned *in re Blackjewel, L.L.C., et. al* (the "**Bankruptcy Case**") has been closed pursuant to Section 350 of the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, the parties agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the State Courts located in Fayette County, Kentucky (or in the event (but only in the event) that such court does not have subject matter jurisdiction over such proceeding, in the United States District Court for the Eastern District of Kentucky) and any appellate court from any thereof, for the resolution of any such claim or dispute.  The parties hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute.  Each of the parties agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

11.    Each party to this Agreement waives any right to trial by jury in any action, matter or proceeding regarding this Agreement or any provision hereof.

- 3 -

12. This Agreement represents the entire understanding and agreement between the parties with respect to the subject matter hereof and supersedes all prior discussions and agreements between the parties with respect to the subject matter hereof.  This Agreement can be amended, supplemented or changed, and any provision hereof can be waived, only by written instrument making specific reference to this Agreement signed by the party against whom enforcement of any such amendment, supplement, modification or waiver is sought.

13. This Agreement will be governed by and construed in accordance with federal bankruptcy law, to the extent applicable, and, where state law is implicated, the laws of the Commonwealth of Kentucky applicable to contracts made and performed in such State.

14. This Agreement may be executed in counterparts, each of which will be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to constitute one and the same agreement.

15. Each party hereto agrees, upon the reasonable request of any other party hereto (and at such other party's expense), to make, execute and deliver any and all documents or instruments of any kind or character, and to perform all such other actions, that may be reasonably necessary or proper to effectuate, confirm, perform or carry out the terms or provisions of this Agreement.

16. This Agreement may not be changed, modified, discharged or terminated orally or in any manner other than by an agreement in writing signed by the parties hereto. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, successors and permitted assigns.

17. WITH RESPECT TO ALL MATTERS SOLD, ASSIGNED, TRANSFERRED AND CONVEYED PURSUANT HERETO, SUCH MATTERS ARE HEREBY SOLD, ASSIGNED, TRANSFERRED AND CONVEYED TO BUYER ON AN "AS IS", "WHERE IS", "WITH ALL FAULTS" BASIS, WITHOUT ANY REPRESENTATION, WARRANTY, GUARANTY, PROMISE, PROJECTION OR PREDICTION WHATSOEVER WITH RESPECT TO SUCH MATTERS, EXCEPT AS SET FORTH IN SECTIONS 8 AND 9 HEREOF, WHETHER ORAL OR WRITTEN, EXPRESS OR IMPLIED, OR ARISING BY OPERATION OF LAW OR UNDER THE UNIFORM COMMERCIAL CODE, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

[*Signature Page Follows*]

010-8808-2252/9/AMERICAS

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be duly executed as of the day and year first above written.

<u>**SELLERS:**</u>

**Blackjewel L.L.C.**

By: _____
Name: David S. Beckman
Title: Chief Restructuring Officer

**Blackjewel Holdings L.L.C.**

By: _____
Name: David S. Beckman
Title: Chief Restructuring Officer

**Revelation Energy Holdings, LLC**

By: _____
Name: David S. Beckman
Title: Cheif Restructuring officer

**Revelation Management Corp.**

By: _____
Name: David S. Beckman
Title: Chief Restructuring Officer

**Revelation Energy, LLC**

By: _____
Name: David S. Beckman

*Signature Page to General Assignment and Assumption Agreement and Bill of Sale*

Title: Chief Restructuring Officer

**Dominion Coal Corporation**

By: _____
Name: David S. Beckman
Title: Chief Restructuring Officer

**Harold Keene Coal Co. LLC**

By: _____
Name: David S. Beckman
Title: Chief Restructuring Officer

**Vansant Coal Corporation**

By: _____
Name: David S. Beckman
Title: Chief Restructuring Officer

**Lone Mountain Processing LLC**

By: _____
Name: David S. Beckman
Title: Chief Restructuring Officer

**Powell Mountain Energy, LLC**

By: _____
Name: David S. Beckman
Title: Chief Restructuring Officer

*Signature Page to General Assignment and Assumption Agreement and Bill of Sale*

**Cumberland River Coal LLC**

By: _____
Name: David S. Beckman
Title: Chief Restructuring officer

**BUYER:**

_____
**Julia L. McAfee**


_____
**Carl E. McAfee**


**Dean-McAfee Holdings, LLC**

By: _____
Name: _____
Title: _____


**Trust for Jeffery Paul Dean (GS Exempt),
under Agreement dated August 29, 2008**

By: _____
        Jeffery Paul Dean, Trustee


**Trust for Donna Mae Kolb (GS Exempt),
under Agreement dated August 29, 2008**

By: _____
        Donna Mae Kolb, Trustee


**Trust for Aubra Brian Dean (GS Exempt),
under Agreement dated August 29, 2008**

By: _____
        Aubra Brian Dean, Trustee


*Signature Page to General Assignment and Assumption Agreement and Bill of Sale*

**Cumberland River Coal LLC**

By: _____
Name: _____
Title: _____

**BUYER**:

_____
Julia L. McAfee

_____
Carl E. McAfee *His attorney in fact*

By: Julia McAfee

**Dean-McAfee Holdings, LLC**

By: _____
Name: Julia McAfee
Title: Member / Manager

**Trust for Jeffery Paul Dean (GS Exempt),
under Agreement dated August 29, 2008**

By: _____
Jeffery Paul Dean, Trustee

**Trust for Donna Mae Kolb (GS Exempt),
under Agreement dated August 29, 2008**

By: _____
Donna Mae Kolb, Trustee

**Trust for Aubra Brian Dean (GS Exempt),
under Agreement dated August 29, 2008**

By: _____
Aubra Brian Dean, Trustee

*Signature Page to General Assignment and Assumption Agreement and Bill of Sale*

**Cumberland River Coal LLC**

By: _____
Name: _____
Title: _____

<u>**BUYER:**</u>

_____
**Julia L. McAfee**

_____
**Carl E. McAfee**

**Dean-McAfee Holdings, LLC**

By: _____
Name: _____
Title: _____

**Trust for Jeffery Paul Dean (GS Exempt), under Agreement dated August 29, 2008**

By: _____
        Jeffery Paul Dean, Trustee

**Trust for Donna Mae Kolb (GS Exempt), under Agreement dated August 29, 2008**

By: _____
        Donna Mae Kolb, Trustee

**Trust for Aubra Brian Dean (GS Exempt), under Agreement dated August 29, 2008**

By: _____
        Aubra Brian Dean, Trustee

*Signature Page to General Assignment and Assumption Agreement and Bill of Sale*

010-8808-2252/9/AMERICAS

**Cumberland River Coal LLC**

By: _____
Name: _____
Title: _____

**BUYER:**

_____
**Julia L. McAfee**

_____
**Carl E. McAfee**

**Dean-McAfee Holdings, LLC**

By: _____
Name: _____
Title: _____

**Trust for Jeffery Paul Dean (GS Exempt),
under Agreement dated August 29, 2008**

By: _____
    Jeffery Paul Dean, Trustee

**Trust for Donna Mae Kolb (GS Exempt),
under Agreement dated August 29, 2008**

By: _____
    Donna Mae Kolb, Trustee

**Trust for Aubra Brian Dean (GS Exempt),
under Agreement dated August 29, 2008**

By: _____
    Aubra Brian Dean, Trustee

*Signature Page to General Assignment and Assumption Agreement and Bill of Sale*

010-8808-2252/9/AMERICAS

**Cumberland River Coal LLC**

By: _____
Name: _____
Title: _____

**BUYER:**

_____

**Julia L. McAfee**

_____

**Carl E. McAfee**

**Dean-McAfee Holdings, LLC**

By: _____
Name: _____
Title: _____

**Trust for Jeffery Paul Dean (GS Exempt),
under Agreement dated August 29, 2008**

By: _____
        Jeffery Paul Dean, Trustee

**Trust for Donna Mae Kolb (GS Exempt),
under Agreement dated August 29, 2008**

By: _____
        Donna Mae Kolb, Trustee

**Trust for Aubra Brian Dean (GS Exempt),
under Agreement dated August 29, 2008**

By: _____ Trustee
        Aubra Brian Dean, Trustee

*Signature Page to General Assignment and Assumption Agreement and Bill of Sale*

# EXHIBIT A

## Purchased Assets

1. The coal loadout facility and the coal preparation facility located near Coldiron, in Harlan County, Kentucky (collectively, the "Coldiron Facilities"), which locations are set forth below, including, without limitation, those claims, causes of action and rights set forth on Schedule 1 attached hereto and incorporated herein by reference, and all credits, improvements, furniture, fixtures, equipment, machinery, tools, and other tangible personal property constituting part of the Coldiron Facilities, and any and all substitutions and replacements of any of the foregoing, wherever located, together with all attachments, components, parts, equipment and accessories installed thereon or affixed thereto as of the date hereof and any substitutions and replacements thereto.



For the avoidance of doubt, the Purchased Assets that Buyer is acquiring pursuant to this Agreement do not include any assets upon which United Bank asserts a Lien, Claim or Interest (the "United Collateral"), and United Bank's Liens, Interests, and Claims against the Sellers or such assets shall remain undisturbed by this Order.  The Buyer shall permit United Bank (subject to the requirements of the Bankruptcy Code) or the Sellers reasonable ingress, egress and regress to its real properties necessary to retrieve the United Collateral, but only at a reasonable time and with 48 hours advance notice to the Buyer. United Bank shall: (1) prior to entering Buyer's real properties, provide Buyer with proof of sufficient insurance, as reasonably determined by Buyer, to cover any loss to Buyer's interest in the Purchased Assets or any person, property or thing that may rise from United Bank, its agents, or employees ingress, egress and regress in, on or to

*Exhibit A to General Assignment and Assumption Agreement and Bill of Sale*

Buyer's real properties and its, or their, removal of any of the United Collateral from the Buyer's real properties; (2) prior to entering Buyer's real properties, agree in writing to indemnify and hold harmless the Buyer, its employees, officers, and agents for any loss, claim, or damage incurred by the Buyer as a result of United Bank, its agents, or employees ingress, egress and regress in, on or to Buyer's real properties and United Bank's removal of any of its collateral from the Buyer's real properties; and (3) agree that its authorization to ingress, egress and regress to Buyer's Purchased Assets shall terminate within 120 days of the date of entry of this Order.

For the avoidance of doubt, the Purchased Assets that Buyer is acquiring pursuant to this Agreement do not include any assets upon which Caterpillar Financial Services Corporation ("Caterpillar") asserts a Lien, Claim or Interest (the "Caterpillar Collateral"). The Buyer shall permit Caterpillar (subject to the requirements of the Bankruptcy Code) or the Debtors reasonable ingress, egress and regress to its real properties necessary to retrieve the Caterpillar Collateral.

2.  All books, records, files and papers, whether in hard copy or computer format, related to the Purchased Assets, including any information relating to any tax imposed on the Purchased Assets; provided, however, the Sellers may retain copies of the same.

3.  All of those certain parcels of real property located in Harlan County, Kentucky, as well as, to the extent owned by Sellers, among other things, all buildings, improvements and fixtures thereon, all coal, oil, gas, hydrocarbons and other minerals that are a part thereof, all timber, standing timber, timber to be cut, cut timber and other rights respecting such real property, as more fully described and evidenced by the following:

    (a)    Deed dated September 25, 1995 from Aubra Paul Dean and Sue Dean to J.A.D. Coal Company, Inc. and of record in Deed Book 320, Page 578 in the Office of the Harlan County Clerk;

    (b)    Deed dated January 20, 2009 from Brenda Kay O. Blanton to J.A.D. Coal Company, Inc. and of record in Deed Book 423, Page 509 in the Office of the Harlan County Clerk;

    (c)    Deed dated July 30, 1977 from H.K. Buttermore, et al. to J.A.D. Coal Company, Inc. and of record in Deed Book 229, Page 155 in the Office of the Harlan County Clerk;

    (d)    Deed dated April 7, 2006 from Charles Robert Blanton, Four "B" Enterprises, a Kentucky corporation, and Brothers Construction, Inc., a Kentucky Corporation, to LAD. Coal Company, Inc. and of record in Deed Book 402, Page 6 in the Office of the Harlan County Clerk;

    (e)    Deed dated January 21, 2009 from David Deron Blanton, II to J.A.D. Coal Company, Inc. and of record in Deed Book 423, Page 505 in the Office of the Harlan County Clerk;

*Exhibit A to General Assignment and Assumption Agreement and Bill of Sale*

(f)     Deed of Easement dated June 9, 2006 from David D. Blanton and Wendolyn G. Blanton to J.A.D. Coal Company, Inc. in the Office of the Harlan County Clerk;

(g)     Deed dated September 15, 2004 Eunice Blanton, widow, to J.A.D. Coal Company, Inc. and of record in Deed Book 388, Page 17 in the Office of the Harlan County Clerk;

(h)     Deed dated August 25, 1999 from Harco Fuels, Inc., a Kentucky corporation, to J.A.D. Coal Company, Inc. and of record in Deed Book 344, Page 711 in the Office of the Harlan County Clerk;

(i)     Deed dated October 20, 2004 from Harlan Honey, Inc. to J.A.D. Coal Company, Inc. and of record in Deed Book 389, Page 22 in the Office of the Harlan County Clerk;

(j)     Deed dated August 25, 1999 from Harlan Honey, Inc. to J.A.D. Coal Company, Inc. and of record in Deed Book 344, Page 699 in the Office of the Harlan County Clerk;

(k)     Deed dated August 25, 1999 from Jimmy and Arlene Blanton to J.A.D. Coal Company, Inc. and of record in Deed Book 344, Page 717 in the Office of the Harlan County Clerk;

(1)     Deed dated April 6, 2004 from Kentucky Harlan Coal Company, Inc. to J.A.D. Coal Company, Inc. and of record in Deed Book 383, Page 550 in the Office of the Harlan County Clerk;

(m)     Deed dated May 31, 2005 from Marcus Ridner to J.A.D. Coal Company, Inc. and of record in Deed Book 394, Page 451 in the Office of the Harlan County Clerk;

(n)     Deed dated November 15, 1974 from Charlsie Harris, et al., to J.A.D. Coal Company, Inc. and of record in. Deed Book 213, Page 455 in the Office of the Harlan County Clerk;

(o)     Deed dated February 4, 1994 from Robert and Deborah Neal to J.A.D. Coal Company and of record in Deed Book 309, Page 1 in the Office of the Harlan County Clerk;

(p)     Deed dated December 31, 2004 from Trinity Holdings, Inc., a Virginia corporation to J.A.D. Coal Company, Inc. and of record in Deed Book 393, Page 665 in the Office of the Harlan County Clerk;

(q)     Deed dated August 25, 1999 from Charles Robert Blanton to J.A.D. Coal Company, Inc. and of record in Deed Book 344, Page 706 in the Office of the Harlan County Clerk; and

*Exhibit A to General Assignment and Assumption Agreement and Bill of Sale*

(r)     Commissioner's Deed dated December 8, 2010 from Master Commissioner of the Harlan Circuit Court to J.A.D. Coal Company, Inc., et al. and of record in Deed Book 433, Page 388 in the Office of the Harlan County Clerk.

Being the same property conveyed to Revelation Energy, LLC by Special Warranty Deed dated April 22, 2015, of record in Deed Book 458, Page 503, in the office of the Harlan County Clerk, also being the same property conveyed to Blackjewel, L.L.C. by Deed dated July 17, 2017, of record in Deed Book 470, Page 268, in the office of the Harlan County Clerk, and LESS AND EXCEPTING THEREFROM so much of said property above as was sold and transferred to Dannie Saylor by virtue of the Special Warranty Deed dated January 10, 2017, of record in Deed Book 467, Page 386, in the office of the Harlan County Clerk.

*Exhibit A to General Assignment and Assumption Agreement and Bill of Sale*

# **EXHIBIT B**

Form of Special Warranty Deed

EXECUTION VERSION

SPECIAL WARRANTY DEED

This SPECIAL WARRANTY DEED (this "<u>Deed</u>") is made as of the _____ day    of _____, 2019, by BLACKJEWEL L.L.C., a Delaware limited liability company, and REVELATION ENERGY, LLC, a Kentucky limited liability company, both with an address of 1051 Main Street, Milton, West Virginia 25541 (collectively, "<u>Grantor</u>"), and Julia L. McAfee and Carl E. McAfee, husband and wife, having a mailing address of P.O. Box 321, Norton, Virginia 24273 (the "<u>McAfees</u>"), Dean-McAfee Holdings, LLC, a Virginia limited liability company, having a mailing address of P.O. Box 321, Norton, Virginia 24273 ("<u>McAfee Holdings</u>"), Jeffery Paul Dean, Trustee of the Trust for Jeffery Paul Dean (GS Exempt), under Agreement dated August 29, 2008, having a mailing address of 249 Paul Dean Farm Road, Jonesville, Virginia 24263, Donna Mae Kolb, Trustee for the Trust for Donna Mae Kolb (GS Exempt), under Agreement dated August 29, 2008, having a mailing address of 184 Russell Place Drive, Jonesville, Virginia 24263, and Aubra Brian Dean, Trustee for the Trust for Aubra Brian Dean (GS Exempt), under Agreement dated August 29, 2008, having a mailing address of 225 Pattons Ridge Drive, Jonesville, Virginia 24263 (collectively, the "<u>Deans</u>"; the McAfees, McAfee Holdings, and the Deans are collectively, "<u>Grantees</u>").

The in-care of tax mailing address for the current year is c/o Dean-McAfee Holdings, LLC, P.O. Box 321, Norton, Virginia 24273.

Witnesseth:

WHEREAS, the Grantor is the debtor-in-possession of the Chapter 11 Bankruptcy Estate of Blackjewel L.L.C., Blackjewel Holdings L.L.C., Revelation Energy Holdings, LLC, Revelation Management Corporation, Revelation Energy, LLC, Dominion Coal Corporation, Harold Keene Coal Co. LLC, Vansant Coal Corporation, Lone Mountain Processing, LLC, Powell Mountain Energy, LLC and Cumberland River Coal LLC, now pending in the United States Bankruptcy Court for the Southern District of West Virginia (the "<u>Bankruptcy Court</u>") and styled as *In Re: Blackjewel L.L.C., et al.*, Case No. 19-30289.

WHEREAS, the Grantor is duly authorized to sell and convey the hereinafter described real estate, free and clear of all liens and encumbrances, to the Grantees pursuant to that certain *Order Approving the Sale of Certain Assets to Dean-McAfee Lenders Free and Clear of Liens,*

*Claims, Encumbrances, and Other Interests and Granting Related Relief*, entered by the Bankruptcy Court on _____ ___, 2019 (the "Order"), a copy of which is attached hereto as Exhibit A and made a part hereof.

NOW, THEREFORE, for and in consideration of the mutual exchange of rights, claims and other good and valuable consideration set forth in that certain General Assignment and Assumption Agreement and Bill of Sale (the "Agreement"), the receipt and sufficiency of which is hereby acknowledged, Grantor does hereby GRANT and CONVEY unto Grantees, in fee simple, their respective heirs, successors and assigns forever, all of Grantor's right, title and interest in the properties more particularly described on Exhibit B attached hereto, made a part hereof, and incorporated herein by reference, and the appurtenances thereunto belonging, all of such property (the "Property") lying and being located in Harlan County, Kentucky, as follows:

An undivided 42.70% interest in the Property to the McAfees;

An undivided 14.60% interest in the Property to McAfee Holdings; and

An undivided 42.70% interest in the Property to the Deans.

TO HAVE AND TO HOLD the Property, together with all rights, privileges, appurtenances and improvements thereunto belonging, unto the Grantees, and their respective heirs, successors and assigns forever in the percentages set forth above.

This Deed is executed pursuant to and in accordance with the terms and provisions of the Agreement.

The Property is hereby conveyed with covenants of SPECIAL WARRANTY of title. The Property is conveyed free and clear of all liens and encumbrances to the extent provided in the Order, and is further conveyed free and clear of all Liens (as defined in the Agreement) created by, through or under the Grantor, other than those Liens created by Grantees.

Grantees assume and agree to pay when due the ad valorem taxes assessed against the Property from the date of conveyance and thereafter.

For the purpose of complying with KRS 382.135, the Grantor and the Grantees hereby certify that the consideration reflected in this Deed is the full consideration paid for the Property herein conveyed.  The Grantor and the Grantees hereby affirm that the fair cash value of the property herein conveyed is Two Million Nine Hundred Thousand and 00/100 Dollars ($2,900,000.00).  The Grantees join herein for the sole purpose of certifying the consideration recited herein.

This transfer is exempt from transfer tax pursuant to KRS 142.050(7)(j)(2).  It is the purpose and intent of Grantor and Grantees that the interests of Grantees shall not merge with the interests of Grantees under that certain Real Estate Mortgage, dated April 22, 2015, of record in Mortgage Book 433, Page 450, in the Harlan County Clerk's office, as assigned to Grantees

pursuant to that certain Assignment of Real Estate Mortgage dated April 22, 2015, of record in Mortgage Book 433, Page 463.

[*No further text on this page; signature page follows*.]

010-8812-6994/5/AMERICAS

IN WITNESS WHEREOF, the Grantor and the Grantees have caused this Deed to be duly executed by their authorized representatives as of the day and year first above written.

Grantor:

BLACKJEWEL L.L.C.

By:_____
Name:_____
Title:_____

REVELATION ENERGY, LLC

By:_____
Name:_____
Title:_____

Grantees:

_____
JULIA L. MCAFEE

_____
CARL E. MCAFEE

DEAN-MCAFEE HOLDINGS, LLC

By:_____
Name:_____
Title:_____

TRUST FOR JEFFERY PAUL DEAN (GS EXEMPT), UNDER AGREEMENT DATED AUGUST 29, 2008

By: _____
   Jeffery Paul Dean, Trustee

- 4 -

TRUST FOR DONNA MAE KOLB (GS EXEMPT), UNDER AGREEMENT DATED AUGUST 29, 2008

By: _____

    Donna Mae Kolb, Trustee

TRUST FOR AUBRA BRIAN DEAN (GS EXEMPT), UNDER AGREEMENT DATED AUGUST 29, 2008

By: _____

    Aubra Brian Dean, Trustee

STATE OF _____ )
                                      )   ss
COUNTY OF _____ )

The foregoing Special Warranty Deed and statement of consideration was subscribed, sworn to, and acknowledged before me on _____ ___, 2019, by _____, as the _____ of Blackjewel L.L.C., a Delaware limited liability company, for and on behalf of said company.

_____
Notary Public
My commission expires:_____
Notary #: _____

STATE OF _____ )
                                        )   ss
COUNTY OF _____ )

The foregoing Special Warranty Deed and statement of consideration was subscribed, sworn to, and acknowledged before me on _____ ___, 2019, by _____, as the _____ of Revelation Energy, LLC, a Kentucky limited liability company, for and on behalf of said company.

_____
Notary Public
My commission expires:_____
Notary #: _____

- 5 -

STATE OF _____    )
                                   )       ss
COUNTY OF _____    )

    The foregoing statement of consideration was subscribed, sworn to, and acknowledged before me on _____ ___, 2019, by Julia L. McAfee.


                         _____
                         Notary Public
                         My commission expires:_____
                         Notary #: _____

STATE OF _____    )
                                   )       ss
COUNTY OF _____    )

    The foregoing statement of consideration was subscribed, sworn to, and acknowledged before me on _____ ___, 2019, by Carl E. McAfee.


                         _____
                         Notary Public
                         My commission expires:_____
                         Notary #: _____

STATE OF _____    )
                                   )       ss
COUNTY OF _____    )

    The foregoing statement of consideration was subscribed, sworn to, and acknowledged before me on _____ ___, 2019, by _____, as the _____ of Dean-McAfee Holdings, LLC, a Virginia limited liability company, for and on behalf of said company.


                         _____
                         Notary Public
                         My commission expires:_____
                         Notary #: _____

- 6 -

STATE OF _____          )
                                        )        ss
COUNTY OF _____       )

     The foregoing statement of consideration was subscribed, sworn to, and acknowledged before me on _____ ___, 2019, by Jeffery Paul Dean, as Trustee of the Trust for Jeffery Paul Dean (GS Exempt), under Agreement dated August 29, 2008, for and on behalf of said Trust.

 

                            _____
                            Notary Public
                            My commission expires:_____
                            Notary #: _____

STATE OF _____          )
                                        )        ss
COUNTY OF _____       )

     The foregoing statement of consideration was subscribed, sworn to, and acknowledged before me on _____ ___, 2019, by Donna Mae Kolb, as Trustee of the Trust for Donna Mae Kolb (GS Exempt), under Agreement dated August 29, 2008, for and on behalf of said Trust.

 

                            _____
                            Notary Public
                            My commission expires:_____
                            Notary #: _____

STATE OF _____          )
                                        )        ss
COUNTY OF _____       )

     The foregoing statement of consideration was subscribed, sworn to, and acknowledged before me on _____ ___, 2019, by Aubra Brian Dean, as Trustee of the Trust for Aubra Brian Dean (GS Exempt), under Agreement dated August 29, 2008, for and on behalf of said Trust.

 

                            _____
                            Notary Public

- 7 -

My commission expires:_____
Notary #: _____

This instrument was prepared by and
after recording is to be returned to:

Allison J. Donovan
Stoll Keenon Ogden PLLC
300 West Vine Street, Suite 2100
Lexington, KY 40507
(859) 231-3098
allison.donovan@skofirm.com

- 8 -

**EXHIBIT A**

<u>Copy of Order</u>

(see attached)

A-1

# EXHIBIT B

## Legal Description

All of those certain parcels of real property located in Harlan County, Kentucky, as well as, to the extent owned by Grantor, among other things, all buildings, improvements and fixtures thereon, all coal, oil, gas, hydrocarbons and other minerals that are a part thereof, all timber, standing timber, timber to be cut, cut timber and other rights, estates and interests respecting such real property acquired by Revelation Energy, LLC, a Kentucky limited liability company and/or Blackjewel Holdings, L.L.C., a Delaware limited liability company, as more fully described by the following:

(a)    Deed dated September 25, 1995 from Aubra Paul Dean and Sue Dean to J.A.D. Coal Company, Inc. and of record in Deed Book 320, Page 578 in the Office of the Harlan County Clerk;

(b)    Deed dated January 20, 2009 from Brenda Kay O. Blanton to J.A.D. Coal Company, Inc. and of record in Deed Book 423, Page 509 in the Office of the Harlan County Clerk;

(c)    Deed dated July 30, 1977 from H.K. Buttermore, et al. to J.A.D. Coal Company, Inc. and of record in Deed Book 229, Page 155 in the Office of the Harlan County Clerk;

(d)    Deed dated April 7, 2006 from Charles Robert Blanton, Four "B" Enterprises, a Kentucky corporation, and Brothers Construction, Inc., a Kentucky Corporation, to LAD. Coal Company, Inc. and of record in Deed Book 402, Page 6 in the Office of the Harlan County Clerk;

(e)    Deed dated January 21, 2009 from David Deron Blanton, II to J.A.D. Coal Company, Inc. and of record in Deed Book 423, Page 505 in the Office of the Harlan County Clerk;

(f)    Deed of Easement dated June 9, 2006 from David D. Blanton and Wendolyn G. Blanton to J.A.D. Coal Company, Inc. in the Office of the Harlan County Clerk;

(g)    Deed dated September 15, 2004 Eunice Blanton, widow, to J.A.D. Coal Company, Inc. and of record in Deed Book 388, Page 17 in the Office of the Harlan County Clerk;

(h)    Deed dated August 25, 1999 from Harco Fuels, Inc., a Kentucky corporation, to J.A.D. Coal Company, Inc. and of record in Deed Book 344, Page 711 in the Office of the Harlan County Clerk;

(i)     Deed dated October 20, 2004 from Harlan Honey, Inc. to J.A.D. Coal Company, Inc. and of record in Deed Book 389, Page 22 in the Office of the Harlan County Clerk;

(j)     Deed dated August 25, 1999 from Harlan Honey, Inc. to J.A.D. Coal Company, Inc. and of record in Deed Book 344, Page 699 in the Office of the Harlan County Clerk;

(k)     Deed dated August 25, 1999 from Jimmy and Arlene Blanton to J.A.D. Coal Company, Inc. and of record in Deed Book 344, Page 717 in the Office of the Harlan County Clerk;

(1)     Deed dated April 6, 2004 from Kentucky Harlan Coal Company, Inc. to J.A.D. Coal Company, Inc. and of record in Deed Book 383, Page 550 in the Office of the Harlan County Clerk;

(m)     Deed dated May 31, 2005 from Marcus Ridner to J.A.D. Coal Company, Inc. and of record in Deed Book 394, Page 451 in the Office of the Harlan County Clerk;

(n)     Deed dated November 15, 1974 from Charlsie Harris, et al., to J.A.D. Coal Company, Inc. and of record in. Deed Book 213, Page 455 in the Office of the Harlan County Clerk;

(o)     Deed dated February 4, 1994 from Robert and Deborah Neal to J.A.D. Coal Company and of record in Deed Book 309, Page 1 in the Office of the Harlan County Clerk;

(p)     Deed dated December 31, 2004 from Trinity Holdings, Inc., a Virginia corporation to J.A.D. Coal Company, Inc. and of record in Deed Book 393, Page 665 in the Office of the Harlan County Clerk;

(q)     Deed dated August 25, 1999 from Charles Robert Blanton to J.A.D. Coal Company, Inc. and of record in Deed Book 344, Page 706 in the Office of the Harlan County Clerk; and

(r)     Commissioner's Deed dated December 8, 2010 from Master Commissioner of the Harlan Circuit Court to J.A.D. Coal Company, Inc., et al. and of record in Deed Book 433, Page 388 in the Office of the Harlan County Clerk.

All of the above being the same property conveyed to Revelation Energy, LLC by Special Warranty Deed dated April 22, 2015, of record in Deed Book 458, Page 503, in the office of the Harlan County Clerk, also being the same property conveyed to Blackjewel L.L.C. by Quitclaim Deed dated July 17, 2017, of record in Deed Book 470, Page 268, in the office of the Harlan County Clerk, and being part of the same property conveyed to Revelation Energy, LLC by

Timber Deed dated June 26, 2018, of record in Deed Book 475, Page 237, in the office of the Harlan County Clerk, and LESS AND EXCEPTING THEREFROM so much of said property above as was sold and transferred to Dannie Saylor by virtue of the Special Warranty Deed dated January 10, 2017, of record in Deed Book 467, Page 386, in the office of the Harlan County Clerk.

## SCHEDULE 1

Whatever rights Sellers have in any and all claims, causes of action and rights arising out of or relating to that certain lease relationship between Revelation Energy, LLC, as successor landlord to J.A.D. Coal Company, and Double Branch Energy, LLC, as successor tenant to Sequoia Energy, LLC, pursuant to that certain Lease Agreement dated February 27, 2004, as amended by a certain First Amendment to Lease Agreement dated July 1, 2011, a certain Second Amendment to Lease Agreement dated October 29, 2013, and a certain Third Amendment to Lease Agreement entered into in 2015 (as amended, the "Lease"), including, without limitation, respecting unpaid rent and royalty payment obligations of tenant pursuant to the terms of the Lease, but excluding any claims or causes of action under Chapter 5 of the Bankruptcy Code held by the Sellers' bankruptcy estates.