# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Blackjewel, L.L.C., *et al.*, | ) | Case No. 19-30289 |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |

## JOINT EX PARTE MOTION OF THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 AUTHORIZING EXAMINATIONS AND WRITTEN DISCOVERY DIRECTED TO JEFF A. HOOPS, SR. AND VARIOUS <u>HOOPS-RELATED ENTITIES AND INDIVIDUALS</u>

Blackjewel, L.L.C., and its affiliated debtors and debtors-in-possession (collectively, the "<u>Debtors</u>") and the Official Committee of Unsecured Creditors (the "<u>Committee</u>," collectively with the Debtors, the "<u>Movants</u>") in the above-captioned chapter 11 cases, hereby jointly move the Court for entry of an order, pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), substantially in the form attached hereto as **<u>Exhibit A</u>** (the "<u>Proposed Order</u>"), authorizing Bankruptcy Rule 2004 discovery from Jeff A. Hoops, Sr. ("<u>Mr. Hoops</u>") and various Hoops-Related Entities and Hoops-Related Individuals[2] (Hoops, the Hoops-Related Entities, and the Hoops-Related Individuals, collectively, the "<u>Hoops Parties</u>") in

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Blackjewel, L.L.C. (0823); Blackjewel Holdings L.L.C. (4745); Revelation Energy Holdings, LLC (8795); Revelation Management Corporation (8908); Revelation Energy, LLC (4605); Dominion Coal Corporation (2957); Harold Keene Coal Co. LLC (6749); Vansant Coal Corporation (2785); Lone Mountain Processing, LLC (0457); Powell Mountain Energy, LLC (1024); and Cumberland River Coal LLC (2213). The headquarters for each of the Debtors is located at 1051 Main Street, Milton, West Virginia 25541-1215.

[2] The "<u>Hoops-Related Entities</u>" include, but are not limited to, the following entities: (1) Genesis Trucking; (2) Construction & Reclamation Services; (3) Lexington Coal Company, LLC; (4) Lexington Coal Royalty Company, LLC; (5) Aquatic Resources Management LLC; (6) Grand Patrician Resort, LLC; (7) Triple H Real Estate, LLC; (8) Black Diamond Insurance Group, LLC; (9) Clearwater Investment Holdings, LLC; (10) Hoops Dynasty Trust(s); (11) Clearwater Trust(s); (12) JBLCO, LLC; (13) Active Medical; (14) Forrest Machine, LLC; (15) Prep Plant Solutions LLC; (16) Blackjewel Trust; (17) Revelation Energy Trust; (18) Lexington Trust; (19) Walls & Associates, PLLC; and (20) Triple H Aviation, LLC. The "<u>Hoops-Related Individuals</u>" include, but are not limited to, the following individuals: (1) Patricia A. Hoops; (2) Jeffery Hoops, Jr.; (3) Jeremy Hoops; (4) Josh Hoops; (5) Jessica Hoops; (6) Lesley Hoops; (7) Amanda Hoops; (8) Keith Runyon; (9) Steven Poe; and (10) Brent Walls.

the form of (a) requests for production of documents and electronically stored information as requested in **Exhibit 1** to the Proposed Order and (b) oral examinations of Mr. Hoops, Patricia A. Hoops, Jeffery Hoops, Jr., Jeremy Hoops, Josh Hoops, Keith Runyon, Steven Poe, and Brent Walls and representatives of Clearwater Investment Holdings, LLC, Grand Patrician Resort, LLC, Genesis Trucking, Black Diamond, Lexington Coal Company, LLC, Lexington Coal Royalty Company, LLC, Construction & Reclamation Services, Aquatic Resources Management LLC, Triple H Real Estate, LLC, Hoops Dynasty Trusts, Clearwater Trusts, JBLCO, LLC, Active Medical, Prep Plant Solutions LLC, Blackjewel Trust, Revelation Energy Trust, Lexington Trust, Walls & Associates, PLLC, and Triple H Aviation, LLC as requested in, and on the topics specified in, **Exhibit 2** to the Proposed Order.  In support of this motion, the Movants state as follows:

## PRELIMINARY STATEMENT

1.      By the time of their chapter 11 bankruptcy filings in July 2019, the Debtors were woefully insolvent.  This level of insolvency and the inevitable bankruptcy filings were the result of a years-long effort by Mr. Hoops to transfer tens of millions of dollars of the Debtors' assets for his benefit and the benefit of his family and other Hoops-Related Entities.  This motion seeks to initiate the process to make the Debtors whole for these transfers of assets, apparent self-dealing by Hoops and the Hoops Parties, and numerous other breaches of fiduciary duty.

2.      Throughout Hoops' involvement with the Debtors and despite the various fiduciary obligations he owed, it appears that Hoops acted with one guiding principle:  to use the Debtors and their assets to improve his personal, and the Hoops Parties', bottom line—despite the harm it caused the Debtors and their creditors.  Altogether, Hoops caused tens of millions of dollars of cash and other assets to be transferred to the Hoops Parties, in an attempt to move them beyond the immediate reach of the Debtors' creditors.  As the Hoops Parties stripped the Debtors of tens

2

of millions of dollars-worth of assets and encumbered remaining assets with new obligations and

liens, the Debtors suffered millions of dollars of losses annually and had not generated positive

cash flow from operations for years.  In the years prior to the Petition Date, the Debtors had no

realistic plan to return to profitability and solvency, yet all the while the Hoops Parties continued

to be unjustly enriched to the detriment of the Debtors and their creditors, as described herein.

3.       The discovery requested in this motion seeks necessary information from the Hoops

Parties that have long-standing personal and financial relationship with the Debtors and Mr.

Hoops—the former President and Chief Executive Officer of Blackjewel, L.L.C.  The Movants

believe that the Hoops Parties have taken improper actions to harm the Debtors for their own

financial gain, with little regard for the impact on the Debtors, their creditors, and the community

at large.

4.       Mr. Hoops' relationships with the Hoops-Related Entities and Hoops-Related

Individuals, and the prepetition dealings between and among them and the Debtors, are numerous,

complicated and intertwined.  As part of their ongoing efforts to untangle this web, the Movants

have dedicated a substantial amount of time and resources to uncovering and analyzing significant

transactions involving the Hoops Parties that must be investigated and, where appropriate,

addressed through actions to avoid the transfers or other relief.  The discovery requested herein

will facilitate the Movants' investigations and may lead to a substantial recovery to the Debtors'

estates.

5.       Among other things, the Movants are investigating the nature and propriety of

various prepetition transfers of cash and property that various Hoops Parties received from the

Debtors.  Some of these transfers relate, among other things, to potentially below-market transfers

of assets to Hoops Parties, above-market invoicing for mining-related services, such as trucking,

3

construction, reclamation, insurance, and water management, and preferential treatment of Hoops

Parties relative to other creditors and stakeholders.

6.      For example, just in the 90 days prior to the Petition Date (not even counting the

longer preference period applicable to insiders), certain of the Hoops-Related Entities received

payments of approximately $7 million in cash and/or property from the Debtors.  Additionally,

transfers to Lexington Coal Royalty Company, LLC, Lexington Coal Company, LLC, and Triple

H Real Estate LLC (including the granting of, and payment on, overriding royalties) raise concerns

about the multitude of transfers from the Debtors to the Hoops Parties.  These concerns include,

but are not limited to, whether there was appropriate consideration, whether agreements among

the parties were properly authorized, whether payment were preferential in nature, and whether

such agreements are effective and enforceable.  Applicable state law provides for a period of up to

five years to challenge certain constructive fraudulent transfers and, upon the Debtors' current

information and belief, there may have been hundreds of questionable transfers within this

timeframe.

7.      The Movants are also investigating various Hoops-Related Entities that may have

received goods and services paid for by the Debtors.  The Debtors' assets may have been depleted

by paying bills and expenses on behalf of Hoops-Related Entities.  For example, upon information

and belief, the Debtors paid invoices and expenses of Hoops-Related Entities relating to mobile

equipment leases, information technology services, water treatment services, document storage

services, and employee healthcare claims, among other expenses.

8.      Another area of investigation relates to the Movants' analysis of pre- and

postpetition activity on the Debtors' properties by Mr. Hoops and various Hoops-Related Entities

or Hoops-Related Individuals.  Such activity (a) may not have been legitimate or properly

authorized, (b) may have resulted in the improper removal of valuable resources from the Debtors'

estates, and (c) may have generated additional taxi and production liabilities for the Debtors.    As

a result, the Debtors may be entitled to compensation and/or damages.

9.    The Movants are also examining the propriety of various prepetition distributions

from the Debtors to Mr. Hoops and Clearwater Investment Holdings, LLC ("Clearwater").

Specifically, just in 2019 alone, Hoops and Clearwater received **more than $41 million** in

prepetition distributions from the Debtors related to purported and undocumented loans or

advances.    Upon information and belief, neither Mr. Hoops nor any Hoops-Related Entities or

Hoops-Related Individuals executed any loan agreements or other writings or specific terms

establishing these distributions as loan repayments and these 'arrangements' were never presented

to, reviewed by, or approved by the Debtors' prepetition board of directors nor were they subject

to any other independent, third party review.    The nature and volume of these substantial payments

in the period preceding the Debtors' chapter 11 filings raise significant questions about whether

they were appropriate or enforceable.    The discovery requested in this motion will provided needed

transparency into these material prepetition transfers.

10.    Documentation and examinations related to the financial transactions and dealings

between the Debtors on the one hand and the Hoops Parties on the other hand must be timely

afforded to the Movants.    This discovery is necessary to determine the extent to which the Hoops

Parties enriched themselves to the financial detriment of the Debtors and their estates.    The

Movants anticipate that this discovery may give rise to a number of estate claims, including without

limitation, possible claims for avoidance of preferential transfers and fraudulent conveyances,

recharacterization, equitable subordination, substantive consolidation, breach of fiduciary duty,

conversion, and unjust enrichment.

11.     The Movants intend to use the requested discovery to investigate and substantiate these claims for the benefit of the Debtors' estates.  They require Bankruptcy Rule 2004 discovery as part of these proceedings to appropriately investigate, quantify, and discover support for potential claims that could provide significant value to the Debtors' estates.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction to consider this motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b), and the Movants consent to entry of a final order by the Court in connection with this motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

13.     Venue is proper before this District pursuant to 28 U.S.C. §§ 1408 and 1409.

14.     The bases for the relief requested herein are Bankruptcy Rule 2004 and Rule 2004-1 of the Local Rules of the United States Bankruptcy Court for the Southern District of West Virginia (the "Local Rules").

## BACKGROUND

15.     Each of the Debtors filed a voluntary petition for relief with the Court under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on July 1, 2019 and July 24, 2019 (the "Petition Date").  The Debtors are continuing to operate and maintain their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

16.     As of the date hereof, no party has requested the appointment of a trustee or an examiner in these chapter 11 cases.  On July 3, 2019, the Office of the United States Trustee for Region 4, the District of West Virginia (the "U.S. Trustee") appointed the Committee [Docket No.

46].   On August 13, 2019, the Court granted Whiteford, Taylor & Preston LLP's retention
application to represent the Committee [Docket No. 705].

17.     A description of the Debtors' business and the reasons for filing these chapter 11
cases is set forth in the *Declaration of Jeff A. Hoops, Sr. in Support of Chapter 11 Filings and
First Day Motions* [Docket No. 14].[3]

## RELIEF REQUESTED

18.     By this motion, the Movants respectfully request entry of the Proposed Order
authorizing Bankruptcy Rule 2004 discovery from the Hoops Parties in the form of (a) requests
for production of documents and electronically stored information as requested in **Exhibit 1** to the
Proposed Order, and (b) oral examinations of Mr. Hoops, Patricia A. Hoops, Jeffery Hoops, Jr.,
Jeremy Hoops, Josh Hoops, Keith Runyon, Steven Poe, and Brent Walls and examination of
representatives of Clearwater Investment Holdings, LLC, Grand Patrician Resort, LLC, Genesis
Trucking, Black Diamond, Lexington Coal Company, LLC, Lexington Coal Royalty Company,
LLC, Construction & Reclamation Services, Aquatic Resources Management LLC, Triple H Real
Estate, LLC, Hoops Dynasty Trust(s), Clearwater Trust(s), JBLCO, LLC, Active Medical, Prep
Plant Solutions LLC, Blackjewel Trust, Revelation Energy Trust, Lexington Trust, Walls &
Associates, PLLC, and Triple H Aviation, LLC as requested in, and on the topics specified in,
**Exhibit 2** to the Proposed Order.

## BASIS FOR RELIEF REQUESTED

### A.      The Movants Are Obligated and Empowered to Investigate Potential Estate Causes of Action.

---

[3] Mr. Hoops resigned his positions as an officer and director of each of the Debtors on July 3, 2019 and is no longer involved in the management of the Debtors or their businesses.

19.     The Debtors have a duty to investigate the conduct of persons or entities that may have contributed to the need for relief under chapter 11 of the Bankruptcy Code or that may have engaged in conduct that injured the Debtors or their estates.  This includes investigating potential causes of action against such parties.  In these cases, as set forth above, the Debtors need to investigate the conduct of the Hoops Parties in their financial transactions and dealings with the Debtors.  Based on the ongoing investigations being conducted by the Movants, it appears that the Hoops Parties enriched themselves to the financial detriment of the Debtors.  The Movants anticipate that this discovery may give rise to a number of estate claims, including without limitation, claims for avoidance of preferential transfers and fraudulent conveyances, recharacterization, equitable subordination, substantive consolidation, breach of fiduciary duty, conversion, and unjust enrichment.

20.     Likewise, as the official representative of unsecured creditors appointed in these cases, the Committee bears a statutory duty to "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor . . . and any other matter relevant to the case or to the formulation of a plan." 11 U.S.C. § 1103(c)(2); *see Advisory Comm. of Major Funding Corp. v. Sommers* (*In re Advisory Comm. of Major Funding Corp.*), 109 F.3d 219, 224-25 (5th Cir. 1997) (recognizing the duty of a creditors' committee to investigate); *see also Loop Corp. v. United States Trustee*, 379 F.3d 511, 519 (8th Cir. 2004) (recognizing the duty of a creditors' committee to advance creditors' interests).

21.     Given these duties and the factual background described above, the Movants are obligated to investigate and consider potential claims relating to the prepetition financial transactions and dealings that the Hoops Parties had with the Debtors.  Both the Debtors and Committee are obligated to use their best efforts to maximize the value of the Debtors' estates.

The investigation that the Movants are undertaking, and this motion, are intended to enable these parties to satisfy their duties.

22.    Bankruptcy Rule 2004(a) provides that "on motion of any party in interest, the court may order the examination of any entity."  Examinations authorized under Bankruptcy Rule 2004 are broad and may relate to any "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge."  *See* Fed. R. Bankr. R. 2004(b).  This includes the production of documents and information.  *See* Fed. R. Bankr. R. 2004(c).

23.    Furthermore, it is well-settled that a debtor "may use Rule 2004 to determine the nature and extent of a bankruptcy estate and to ascertain whether wrongdoing has occurred."  *In re Hilsen*, 2008 WL 2945996, at *4 (Bankr. S.D.N.Y. July 25, 2008) (citations omitted).  The scope of Bankruptcy Rule 2004 is broader than the scope of permissible discovery under Rule 26 of the Federal Rules of Civil Procedure.  *See In re Hentz*, 2012 WL 2263121, at *2 (Bankr. D.N.D. June 18, 2012) ("The scope of a Rule 2004 examination is broader than the scope of discovery under Rule 26 of the Federal Rules of Civil Procedure. . . . The request for discovery concerning debtor's assets and financial affairs may include examination of the debtor and/or third parties.") (internal citations omitted); *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004) ("The purpose of a Rule 2004 examination is to assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred.").

24.    This is because the purpose of a Bankruptcy Rule 2004 examination is to determine whether "grounds exist to commence an action."  *In re Ramadan*, 2012 Bankr. LEXIS 1602, at *5 (Bankr. E.D.N.C. Apr. 12, 2012) ("The scope of a Rule 2004 examination is broad and is often

referred to as a sanctioned 'fishing expedition'; it is in many ways a 'pre-litigation device for

assessing whether grounds exist to commence an action'[.]") (quoting *In re Szadkowski*, 198 B.R.

140, 141 (Bankr. D. Md. 1996)).

25.     This Court has broad discretion in determining whether to grant a motion for

discovery under Bankruptcy Rule 2004.  *See In re Hentz*, 2012 WL 2263121 at *1 (holding that

Rule 2004 affords the court "complete discretion in making a determination regarding Rule 2004

examinations") (internal citations and quotations omitted); *In re Enron Corp.*, 281 B.R. 836, 840

(Bankr. S.D.N.Y. 2002) ("the Court has the discretion to grant a request for a 2004 examination")

(citations omitted); *In re Okla. Automatic Door, Co.*, 599 B.R. 167, 170 (Bankr. W.D. Okla. 2019)

(recognizing that Rule 2004 by "its plain meaning grants the bankruptcy court[] complete

discretion in determining whether a Rule 2004 examination is appropriate.").

**B.     The Discovery Sought Falls Within the Broad Scope of Bankruptcy Rule 2004.**

26.     The discovery that the Movants seek falls clearly within the contours of Bankruptcy

Rule 2004.  The Movants are seeking to investigate "acts, conduct, or property or to the liabilities

and financial condition of the debtor, or to any matter which may affect the administration of the

debtor's estate, or to the debtor's right to a discharge." Fed. Bankr. R. 2004(b), (c).  Further, the

requested discovery is intended to assist the Movants "in determining the nature and extent of the

bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has

occurred." *In re Almatis*, No. 10-12308, 2010 WL 4877868, at *3 (Bankr. S.D.N.Y. Nov. 24,

2010); *see also In re Countrywide Home Loans, Inc.*, 384 B.R. 373, 400 (Bankr. W.D. Pa. 2008)

(noting that investigation of matters affecting a debtor's estate "comfortably falls within the allowed limits under Rule 2004").

27.     Bankruptcy Rule 2004 permits the Debtors and Committee to obtain discovery and investigate potential claims before initiating them.  Bankruptcy Rule 2004 is appropriately used as a "pre-litigation discovery device."  *In re Wilson*, No. 07-11862, 2009 WL 304672, at *5 (Bankr. E.D. La. Feb. 6, 2009); *In re Almatis*, 2010 WL 4877868, at *3 ("No contested matter or adversary proceeding need be instituted as a prerequisite to conducting an examination under [Rule 2004]"); *In re Symington*, 209 B.R. 678, 683 (Bankr. D. Md. 1997) (observing that Rule 2004 allows "examination of any party without the requirement of a pending adversary proceeding or contested matter").  The Court also has the authority to require compliance with Bankruptcy Rule 2004 subpoenas on an expedited basis.  *See*, *e.g.*, *In re Mirant Corp.*, 326 B.R. 354, 356 (Bankr. N.D. Tex. 2005) (granting request for expeditious production because "there is clearly a need for expedition.")

28.     The requested discovery from the Hoops Parties is appropriate and fits in the broad scope of examination permitted by Bankruptcy Rule 2004.  *E.g., In re Yahweh Center, Inc.*, 2017 WL 327473 at *1 (Bankr. E.D.N.C. 2017) (observing that "the scope of inquiry permitted under Rule 2004 is very broad, practically unrestricted by the usual concepts of materiality and relevance[.]"); *In re Correa*, 589 B.R. 76 (Bankr. N.D. Tex. 2018) (recognizing that the scope of Rule 2004 examinations is recognized as broad, unfettered, and in the nature of a "fishing expedition.").  The requested discovery concerning the financial transactions and dealings that the Hoops Parties had with the Debtors, including evidence that the numerous transactions with the Hoops Parties injured the Debtors or their estates in order to enrich themselves falls well within the ambit of the Court's discretion. *See*, *e.g.*, *McLaughlin v. McPhail*, 707 F.2d. 800, 804

(4th Cir. 1983); *In re Hammond*, 140 B.R. 197, 200 (Bankr. S.D. Ohio 1992); *In re Wash. Mut., Inc.*, 408 B.R. 45, 50 (Bankr. D. Del. 2009) ("Legitimate goals of Rule 2004 examinations including discovering assets, examining transactions, and determining whether wrongdoing has occurred.").

29.     Pursuant to Local Rule 2004-1, the Movants attempted to schedule a time, place, and date for a Bankruptcy Rule 2004 production and examination by agreement with the Hoops Parties but no agreement was reached.  Movants initiated various communications to counsel for Hoops and provided copies of the requested discovery in mid-December 2019.   After several attempts to meet and confer, Movants requested that counsel for Hoops respond by January 8, 2020 as to whether the Hoops Parties would agree to all or some of the requested discovery.  As of the date of this Motion, the Hoops Parties have not provided any substantive response. As warranted by Bankruptcy Rule 2004 and Local Rule 2004-1, the Movants request that this motion be granted ex parte.[4]

### NOTICE

30.     The Debtors, with the assistance of their claims and noticing agent, will provide notice of this motion by email and/or first class mail to:  (i) the Office of the United States Trustee for the Southern District of West Virginia, (ii) the Debtors' prepetition secured lenders, (iii) the creditors appearing on the Debtors' consolidated list of top 30 unsecured creditors, (iv) the Office of the United States Attorney for the District of West Virginia, (v) the Internal Revenue Service, (vi) counsel to United Bank, Inc., Steptoe & Johnson PLLC, (vii) counsel to the Creditors'

---

[4] Bankruptcy Rule 2004 provides for an ex parte procedure whereby the Court can enter an order of the examination without allowing an opportunity an opportunity to object.  *See, e.g.*, *In re Russell*, 392 B.R. 315, 360 (Bankr. E.D. Tenn. 2008) ("Rule 2004 provides for an ex parte procedure . . . and the court can enter an order for the examination without allowing . . . an opportunity to object"); *In re Symington*, 209 B.R. 678, 689-90 (Bankr. D. Md. 1997) (explaining that "Rule 2004 motions are generally granted ex parte" when there is good cause for the examination request).

Committee, Whiteford Taylor & Preston, LLP, (viii) the Hoops Parties; and (ix) all parties requesting notices pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

Wherefore, the Movants respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other relief that is just and proper.

DATED: January 9, 2020                    **SUPPLE LAW OFFICE, PLLC**

Joe M. Supple, Bar. No. 8013
801 Viand St.
Point Pleasant, WV 25550
Telephone: 304.675.6249
Facsimile: 304.675.4372
joe.supple@supplelaw.net

– and –

**SQUIRE PATTON BOGGS (US) LLP**

*/s/ Stephen D. Lerner*
Stephen D. Lerner (admitted *pro hac vice*)
Nava Hazan (admitted *pro hac vice*)
Scott A. Kane (admitted *pro hac vice*)
Travis A. McRoberts  (admitted *pro hac vice*)
F. Maximilian Czernin (admitted *pro hac vice*)
201 E. Fourth St., Suite 1900
Cincinnati, Ohio 45202
Telephone: 513.361.1200
Facsimile: 513.361.1201
stephen.lerner@squirepb.com
nava.hazan@squirepb.com
scott.kane@squirepb.com
travis.mcroberts@squirepb.com
max.czernin@squirepb.com

*Co-Counsel to the Debtors and
Debtors-in-Possession*

– and –

13

**WHITEFORD TAYLOR & PRESTON LLP**

*/s/ Brandy M. Rapp*
Brandy M. Rapp (WV Bar No. 10200)
10 S. Jefferson Street, Suite 1110
Roanoke, Virginia 24011
(540) 759-3577 Tel.
(540) 759-3567 Fax
brapp@wtplaw.com

Michael J. Roeschenthaler (PA Id. No. 87647)
Daniel R. Schimizzi (PA Id. No. 311869)
200 First Avenue, Third Floor
Pittsburgh, Pennsylvania 15222
(412) 618-5601 Tel.
mroeschenthaler@wtplaw.com
dschimizzi@stplaw.com

*Counsel to the Official Committee of*
*Unsecured Creditors of the Debtors and*
*Debtors-in-Possession*