IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Blackjewel, L.L.C., *et al.*, | ) | Case No. 19-30289 |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |

**DEBTORS' SECOND MOTION FOR ENTRY OF AN ORDER EXTENDING
THE EXCLUSIVE PERIODS DURING WHICH ONLY THE DEBTORS
MAY FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF**

Blackjewel, L.L.C., and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases, hereby move the Court for entry of an order, pursuant to section 1121(d) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), substantially in the form attached hereto as **Exhibit A** (the "Proposed Order") further extending the periods during which the Debtors have the exclusive right to (a) file a chapter 11 plan by an additional 91 days, through and including April 27, 2020 (the "Filing Exclusivity Period"),[2] and (b) solicit votes thereon by an additional 91 days, through and including July 27, 2020 (the "Soliciting Exclusivity Period" and, together with the Filing Exclusivity Period, the "Exclusivity Periods"), without prejudice to the Debtors' right to seek further extensions of the Exclusivity Periods.  In support of this motion, the Debtors respectfully state as follows:

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Blackjewel, L.L.C. (0823); Blackjewel Holdings L.L.C. (4745); Revelation Energy Holdings, LLC (8795); Revelation Management Corporation (8908); Revelation Energy, LLC (4605); Dominion Coal Corporation (2957); Harold Keene Coal Co. LLC (6749); Vansant Coal Corporation (2785); Lone Mountain Processing, LLC (0457); Powell Mountain Energy, LLC (1024); and Cumberland River Coal LLC (2213).  The headquarters for each of the Debtors is located at 7093, 971 WV-34, Hurricane, WV 25526.

[2] The initial deadline for the Filing Exclusivity Period was October 29, 2019 (*i.e.*, 120 days following the Debtors' July 1, 2019 petition date).  The Court previously extended that deadline through and including January 27, 2020.  *See* Docket No. 1455.

**PRELIMINARY STATEMENT**

1.   By this motion, the Debtors seek a 91-day extension of the Exclusivity Periods to file and solicit acceptances of a chapter 11 plan so that they may continue to diligently pursue a value-maximizing resolution to these chapter 11 cases and build upon the substantial progress made to date without distraction from other competing chapter 11 plans.

2.   As more fully set forth in the *Debtors' Motion for Entry of an Order Extending the Exclusive Periods During Which Only the Debtors May File a Chapter 11 Plan and Solicit Acceptances Thereof* [Docket No. 1266] (the "First Motion"), during the first 120 days of the chapter 11 cases, the Debtors successfully (i) obtained short term debtor in possession financing facilities; (ii) conducted an auction for the sale of substantially all of the Debtors' assets; (iii) closed ten separate sales resulting from the auction; (iv) closed two additional private sales of the Debtors' assets, including the sale of all of the Debtors' Wyoming assets; (v) litigated and settled prepetition employee wage disputes with the United States Department of Labor ("DOL"); and (vi) in connection with the private sale of the western assets, (a) compromised and resolved all claims and disputes with Riverstone Credit Partners – Direct, L.P. ("Riverstone"), (b) compromised and resolved all disputes with Blackjewel Marketing & Sales, and (c) obtained the agreement of Highbridge Capital Management, LLC and Whitebox Advisors LLC (together, the "Junior DIP Lenders") to forego any recovery on the debtor in possession financing extended to the Debtors.

3.   The Debtors achieved that initial progress in no small part due to the breathing spell provided by chapter 11, and these steps have put the Debtors on a path toward a successful resolution of these cases.  Since filing the First Motion, the deadline to file claims against the Debtors on account of prepetition claims and/or administrative claims incurred through and including October 14, 2019, has lapsed, including governmental claims.  Accordingly, the Debtors

have now turned their attention to claims reconciliation and negotiations with creditors in order to formulate a chapter 11 plan of liquidation. Indeed, over the last three months, the Debtors devoted significant time to analyzing administrative and secured claims and contacting the respective claimants.

4. During this time, the Debtors have also devoted a substantial amount of time to:

   a. pursuing sales of remaining assets pursuant to the *Debtors' Motion for Entry of an Order Establishing Procedures for the Sale, Transfer, or Abandonment of Certain De Minimis Assets* [Docket No. 1365] (the "De Minimis Motion");

   b. working with the various asset purchasers on issues related to assumption and assignment of executory contracts and unexpired leases of nonresidential property [Docket Nos. 1364, 1418, 1454, 1595, 1618];

   c. working with sureties and regulators to determine the best disposition of the Debtors' remaining assets; and

   d. working with United HealthCare Services, Inc. ("UHSI") and those employers believed to be under the direct or indirect control of the Debtors' former President and Chief Executive Officer, Jeff Hoops (the "Hoops Bill Groups") to understand the amount and nature of those unprocessed claims accrued under the Debtors' self-insured health plan (the "Health Plan"), and preparing and filing the *Motion of the Debtors for an Ex Parte Order Temporarily Prohibiting Healthcare Providers from Direct Billing and/or Commencing Any Actions Against Current and Former Employees and their Dependents or United Healthcare Services, Inc. Related to Unpaid Claims* [Docket No. 1656].

5. In addition, the Debtors, in cooperation with the Official Committee of Unsecured Creditors (the "Committee"), have started the process of investigating, and potentially bringing causes of action against, multiple parties, including the Debtors' former President and Chief Executive Officer, Jeff Hoops, and various persons and entities related to Mr. Hoops. This resulted in the Debtors' recent motion seeking an order authorizing the examination of Jeff A. Hoops, Sr. and various Hoops-related entities and individuals. *See* Docket No. 1611. The Debtors believe that these investigations may lead to causes of action valued in the tens of millions of dollars that

3

could be available for distribution to creditors.  In the coming months, the Debtors will continue to work constructively with the Committee to pursue these investigations, develop an exit strategy, successfully conclude these chapter 11 cases, and maximize value for all stakeholders.

6.      The Debtors believe maintaining the exclusive right to file a chapter 11 plan and solicit votes thereon is critical to their ability to complete their chapter 11 process and achieve their remaining goals as efficiently and expeditiously as possible.  By contrast, allowing the Exclusivity Periods to expire would risk disrupting these cases in ways that could result in substantial additional cost to the Debtors' estates and risk the successful conclusion of these cases.  The requested 91-day extension of the Exclusivity Periods will afford the Debtors and their stakeholders much needed time to formulate their go forward strategy and pursue a chapter 11 plan of liquidation.  Accordingly, the Debtors submit that the requested extension of the Exclusivity Periods is reasonable and appropriate under the circumstances and should be approved.

### JURISDICTION AND VENUE

7.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b), and the Debtors consent to entry of a final order by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

8.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

9.      The bases for the relief requested herein are section 1121(d) of the Bankruptcy Code, rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

and rule 9006-1 of the Local Rules of the United States Bankruptcy Court for the Southern District of West Virginia (the "Local Rules").³

## BACKGROUND

10. Each of the Debtors filed a voluntary petition for relief with the Court under chapter 11 of the Bankruptcy Code on either July 1, 2019 or July 24, 2019 (the "Petition Date"). The Debtors are continuing to operate and maintain their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

11. As of the date hereof, no party has requested the appointment of a trustee or an examiner in these chapter 11 cases. On July 3, 2019, the Office of the United States Trustee for Region 4, the District of West Virginia (the "U.S. Trustee") appointed the Committee [Docket No. 46].

12. A description of the Debtors' business and the reasons for filing these chapter 11 cases is set forth in the *Declaration of Jeff A. Hoops, Sr. in Support of Chapter 11 Filings and First-Day Motions* [Doc. No. 14] (the "First Day Declaration").⁴

## RELIEF REQUESTED

13. By this motion, the Debtors respectfully request entry of the Proposed Order further extending (a) the Filing Exclusivity Period by 91 days, through and including April 27, 2020, and

---

³ Pursuant to Local Rule 9006-1, if this motion is not heard until after January 27, 2020, the date the Filing Exclusivity Period would otherwise expire, the Filing Exclusivity Period will "automatically extend[] until the court rules on the motion."

⁴ Mr. Hoops resigned his positions as an officer and director of each of the Debtors on July 3, 2019 and is no longer involved in the management of the Debtors or their businesses.

5

(b) the Soliciting Exclusivity Period by 91 days, through and including July 27, 2020, without prejudice to the Debtors' right to seek further extensions of the Exclusivity Periods.

## BASIS FOR RELIEF REQUESTED

14. Pursuant to section 1121(b) of the Bankruptcy Code, a debtor has the exclusive right to propose a chapter 11 plan for the first 120 days of a chapter 11 case. *See In re Bryson Properties, XVIII,* 961 F.2d 496, 504 (4th Cir. 1992) ("Under the Bankruptcy Code, the debtor has the exclusive right to propose a reorganization plan for 120 days.")  Section 1121(c)(3) of the Bankruptcy Code further extends the period of exclusivity for an additional 60 days, to an initial maximum of 180 days, where the debtor has filed a chapter 11 plan and is soliciting votes on such plan. *See In re Corvus Corp.,* 122 B.R. 685, 685-86 (Bankr. E.D. Va. 1991) ("If the debtor files a plan within the 120 day period, the debtor is given a period of 180 days . . . during which the debtor may solicit acceptances of its plan. No other person may file a plan during such periods." (citing 11 U.S.C. § 1121)).  The purpose of the exclusivity period is "to promote an environment in which the debtor's business may be rehabilitated and a consensual plan may be negotiated." *In re Bruns & Roe Enters., Inc.,* 2005 WL 6289213, at *4 (D.N.J. 2005).  In these chapter 11 cases, the current Filing Exclusivity Period will expire on January 27, 2020 absent further order of the Court.

15. Section 1121(d)(1) of the Bankruptcy Code permits a court to extend a debtor's exclusivity "for cause," subject to certain limitations not relevant here.[5]  Specifically, section 1121(d)(1) of the Bankruptcy Code provides that "on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing,

---

[5] Section 1121(d)(2) provides that, even if cause is shown, the 120-day period "may not be extended beyond a date that is 18 months after the [petition] date" and the 180-day period "may not be extended beyond a date that is 20 months after the [petition] date." 11 U.S.C. § 1121(d)(2). The exclusivity extensions requested by this motion do not implicate either of these deadlines.

6

the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section." 11 U.S.C. § 1121(d).

16. Although the Bankruptcy Code does not define the term "cause," the legislative history indicates the term should be viewed flexibly "in order to allow the debtor to reach an agreement." H.R. Rep. No. 95, 95th Cong., 1st Sess. 232 (1997); *see also In re Ames Dep't Stores Inc.,* 1991 WL 259036, at *3 (S.D.N.Y. Nov. 25, 1991) ("The purpose of the Bankruptcy Code's exclusivity period is to allow the debtor flexibility to negotiate with its creditors."). Simply put, a debtor should be given a reasonable opportunity to negotiate with creditors and to prepare adequate information concerning the ramifications of any proposed plan for disclosure to creditors. *See In re Texaco Inc.,* 76 B.R. 322, 327 (Bankr. S.D.N.Y. 1987).

17. The decision to extend exclusivity is fact-specific; and courts examine a number of factors to determine whether "cause" exists to extend the Exclusivity Periods. These factors include the following:

  a) the size and complexity of the case;

  b) the existence of good faith progress;

  c) the need for sufficient time to permit the debtor to negotiate a chapter 11 plan and prepare adequate information;

  d) whether the debtor is paying its bills as they come due;

  e) whether the debtor has demonstrated reasonable prospects for filing a viable chapter 11 plan;

  f) whether the debtor has made progress in its negotiations with creditors;

  g) the length of time the case has been pending;

  h) whether the debtor is seeking to extend exclusivity to pressure creditors to accede to the debtor's reorganization demands; and

  i) whether an unresolved contingency exists.

*See In re Adelphia Commc'ns Corp.,* 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006) (listing factors); *In re Cent. Jersey Airport Servs., LLC,* 282 B.R. 176, 183 (Bankr. D.N.J. 2002); *see Quality Inns Int'l, Inc. v. L.B.H. Associates Ltd. P'ship*, 911 F.2d 724, at *2 (4th Cir. 1990) (affirming the bankruptcy court's grant of an exclusivity extension based on four such factors: (a) the debtor had been involved in protracted litigation; (b) the case was complex; (c) the debtor had been making every effort to rehabilitate itself; and (d) there was a promise of success).

18.　Importantly, not all of these factors are relevant to every case and courts use only the relevant subset of the above factors to determine whether cause exists to grant an exclusivity extension in a particular chapter 11 case. *See L.B.H. Associates,* 911 F.2d 724 at *2 (concluding that the four "factors considered by the bankruptcy court are both relevant and permissible."); *see also In re Express One Int'l,* 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (four factors relevant in determining whether cause exists to extend exclusivity); *In re Pine Run Trust, Inc.,* 67 B.R. 432, 435 (Bankr. E.D. Pa. 1986) (relying on two factors in holding that cause existed to extend exclusivity). In this instance, as explained below, the relevant factors weigh in favor of extending the Exclusivity Periods.

**A.　The Debtors' Chapter 11 Cases are Large and Complex.**

19.　Courts hold that the mere complexity and size of a chapter 11 case may warrant extension of the exclusive periods to permit a debtor a meaningful opportunity to formulate a chapter 11 plan. *See, e.g., In re Texaco Inc.,* 76 B.R. 322, 325-27 (Bankr. S.D.N.Y. 1987) (holding that "cause" existed to grant the debtor's first request to extend exclusivity based on the size and complexity of the case alone); *In re Manville Forest Prods. Corp.,* 31 B.R. 991, 995 (S.D.N.Y. 1983) ("[S]heer mass, weight, volume and complication of the [debtors'] filings undoubtedly justify a shakedown period.").

8

20. Both Congress and courts have recognized the size and complexity of a debtor's case alone may constitute cause for the extension of a debtor's exclusive period to file a plan and the period to solicit acceptances of such a plan. "[I]f an unusually large company were to seek reorganization under chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement." H.R. Rep. No. 95-595, at 231-32, 406 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6191, 6362. In fact, the size and complexity of a chapter 11 case is the basis upon which courts most commonly grant extensions. *See, e.g., Express One Int'l,* 194 B.R. at 100; *In re Texaco, Inc.,* 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987) ("The large size of a debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods.").

21. As set forth in the First Day Declaration, as of the Petition Date, the Debtors were a leading producer of coal in the United States, holding more than 500 mining permits and operating 32 properties across Kentucky, Virginia, West Virginia, and Wyoming that held approximately 1.2 billon reserve tons of coal. These chapter 11 cases involve 11 separate Debtor entities with approximately $70 million in prepetition funded debt and hundreds of millions in prepetition unsecured claims. Further, as of the Petition Date, the Debtors employed approximately 1,700 individuals. As has been evident at the various hearings in these chapter 11 cases, there are numerous creditor constituencies in these cases whose complex issues will need to be resolved for the Debtors to reach a successful conclusion of these cases. In short, these chapter 11 cases are large and complex. This complexity alone warrants granting the Debtors' request to extend the Exclusivity Periods.

010-8922-8917/4/AMERICAS

**B.      The Debtors Have Made Good Faith Progress Towards Successfully Navigating Chapter 11 in the Little Time that Has Elapsed Since the Petition Date.**

22.     Since the Petition Date, the Debtors have made substantial progress in administering these chapter 11 cases and negotiating with stakeholders, which further warrants an extension of the Exclusivity Periods.  As more fully set forth above and in the First Motion, among other milestones already realized, the Debtors have (a) secured two rounds of short term bridge financing necessary to avoid the immediate conversion of these cases to cases under chapter 7 and a third round of funding, in the form of a purchase deposit from Contura, needed to conduct a fulsome sale process; (b) conducted a three-day auction process and subsequently consummated ten asset sale transactions with various successful bidders; (c) received approval and closed two private sales for a substantial portion of the Debtors' remaining assets, including the sale of the Debtors' Wyoming assets to Eagle Specialty Materials, LLC; (d) settled outstanding litigation and other disputes with the DOL and BJMS; (e) compromised the claims of, as well as all other related issues and disputes with, Riverstone; (f) secured the agreement of the Junior DIP Lenders to forgive $2.9 million of debtor in possession financing; and (g) secured the funds necessary to pay outstanding prepetition wages to the Debtors' employees.

23.     Since the First Motion was filed, the Debtors have also made significant progress reviewing and analyzing the various secured and administrative claims filed in these cases, began critical investigations of parties that may have benefitted at the expense of the Debtors and their creditors, continued to pursue sales of their remaining assets, worked to resolve various issues with the completed sales of the Debtors' assets, including the assumption and assignment of various contracts and leases and the transfer of permits, developed a strategy to address unpaid claims

under the Health Plan and filed a motion seeking to prohibit providers from seeking to collect against their former employees and their dependents.

24.     The Debtors' substantial progress in working with their stakeholders and administering the chapter 11 cases to this point supports the extension of the Exclusivity Periods. *See In re Mirant Corp.*, No. 4-04-CV-476-A, 2004 WL 2250986, at *2 (N.D. Tex. Sept. 30, 2004) (noting that an extension of exclusivity is typically granted where "the debtor has shown substantial progress toward reorganization").

C.      **Extending the Exclusivity Periods Will Provide the Debtors with Sufficient Time to Negotiate the Final Phases of these Chapter 11 Cases and Prepare Adequate Information.**

25.     The Debtors and their advisors have been working toward the conclusion of these chapter 11 cases and have had substantial discussions with the Committee and other parties in interest about the Debtors' exit from chapter 11.  The Committee and the Debtors have worked collaboratively on exploring the best way to liquidate the remaining assets, to pursue valuable causes of action and to wind down the estates.  However, given the size and complexity of these cases as well as the likelihood of litigation against Mr. Hoops and other parties to fund a chapter 11 plan, the Debtors require additional time to complete the planning and development of a plan of liquidation.  Moreover, the Debtors could not make further progress toward formulation of a plan until they had a full understanding of their claims population, which required expiration of the claim bar deadlines.  The time provided by an extension of the Exclusivity Periods will also be used to continue analyzing the claims population, working with all parties to resolve various outstanding matters, and formulate a liquidating plan.  This is critical to ensuring an efficient, cost-effective, and value-maximizing process and will provide the Debtors with needed time to obtain support and resolve remaining issues in these chapter 11 cases.

11

**D.     The Debtors Are Paying Their Bills as They Come Due.**

26.     Since the Petition Date, the Debtors have been paying their postpetition debts in the ordinary course of business or as otherwise provided by Court order.

**E.     The Debtors Have Demonstrated Reasonable Prospects for Filing a Viable Plan.**

27.     Since the Petition Date, the Debtors have had a great deal of success in sustaining these cases, selling substantially all of their assets in value maximizing transactions, managing the various issues and disputes that have arisen, and now investigating the parties that may have benefitted at the expense of the Debtors and their creditors.  As the Court will recall, the specter of an immediate conversion to chapter 7 has hung over these cases since the beginning.  That the Debtors have avoided that conversion, sold substantially all of their assets, and in a position to pivot to a chapter 11 liquidating plan is truly remarkable.  The Debtors believe that the time afforded by the requested Exclusivity Extensions will allow them to continue to engage in good faith negotiations with key stakeholders and achieve a successful conclusion of these cases.  All of this has allowed the Debtors to position themselves to negotiate and pursue a viable plan of liquidation.

**F.     Relatively Little Time Has Elapsed in these Chapter 11 Cases.**

28.     This request to extend the Exclusivity Periods is the Debtors' second request and comes approximately 200 days into these chapter 11 cases.  In general, large, complex chapter 11 cases take substantial time to reach confirmation.  *See, e.g. In re GenOn Energy, Inc.*, No. 17-33695 (Bankr. S.D. Tex. April 9, 2018) (granting second extension of exclusive filing period of approximately 8 months for a total 18-month exclusive filing period); *In re TSA WD Holdings, Inc., et al. (f/k/a Sports Authority Holdings, Inc.)*, No. 16-10527 (MFW) (Bankr. D. Del. 2016) (643 days between petition date and the date set for confirmation hearing); *In re Edison Mission*

*Energy*, No. 12-49219 (JPC) (Bankr. N.D. Ill. 2012) (450 days between petition date and confirmation hearing); *In re BB Liquidating Inc., et al. (f/k/a Blockbuster Inc., et al.)*, No. 10-14997 (CGM) (Bankr. S.D.N.Y. 2010) (1,028 days between petition date and confirmation hearing); *In re Circuit City Stores, Inc.*, No. 08-35653 (KRH) (Bankr. E.D. Va. 2008) (670 days between petition date and confirmation hearing). Accordingly, the Debtors believe that the additional 91-day extension is warranted.

**G.      The Debtors Are Not Pressuring Creditors to Submit to Any Demands.**

29.     The Debtors do not seek to extend the Exclusivity Periods to pressure creditors. Rather, the Debtors intend to use their chapter 11 process to produce a consensual plan that maximizes value for all stakeholders. *See River Bend-Oxford Assocs.*, 114 B.R. 111, 114 (Bankr. D. Md. 1990) ("Section 1121 is designed to afford a debtor an exclusive period in which to propose a plan [and] … furthers the purpose of a rehabilitation."). At this stage, the Debtors seek the proposed extension to provide additional time to pursue necessary litigation, further the claims reconciliation process and gather consensus among parties in interest to fully accomplish their chapter 11 goals.

**H.      An Extension of the Exclusivity Periods Will Not Prejudice Creditors.**

30.     Finally, extending the Exclusivity Periods will not harm creditors. As set forth above, since the Petition Date, the Debtors have obtained financing to continue these chapter 11 cases, closed twelve separate public and private sales of substantially all of their assets, and settled numerous highly complex issues with the DOL, BJMS, the Junior DIP Lenders, and Riverstone. Additionally, since filing the First Motion, the Debtors have (i) commenced the claims reconciliation process; (ii) requested authorization to establish a procedure for pursuing sales of de minimis assets and pursuing the same; (iii) worked with the various asset purchasers to provide

13

for the assumption and assignment for executory contracts and unexpired leases of nonresidential property; (iv) worked with UHSI and the Hoops Bill groups to understand the amount and nature of those unprocessed claims accrued under the Health Plan; and (v) worked with the Committee to investigate multiple parties, including Mr. Hoops and those persons and entities related to Mr. Hoops. Accordingly, the Debtors have obtained approval of critical relief to progress toward confirming a chapter 11 plan that maximizes value for all stakeholders.

31. By contrast, allowing the Exclusivity Periods to expire would defeat the very purpose of section 1121 of the Bankruptcy Code—to afford a debtor a meaningful and reasonable opportunity to negotiate with creditors and propose and confirm a consensual chapter 11 plan. *See* H.R. Rep. No. 103-835, at 36 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3344 ("[E]xclusivity is intended to promote an environment in which the debtor's business may be rehabilitated and a consensual plan may be negotiated."); *see also In re Lehigh Valley Prof. Sports Club, Inc.,* 2000 WL 290187 (Bankr. E.D. Pa. 2000) ("Given bankruptcy's overarching goal of consensual reorganization, it not surprising that Congress would have elected to preclude competing plans in the formative period of the Chapter 11 case . . . the Code policy of encouraging consensual reorganizations will be served by leaving exclusivity in place as Congress intended.").

32. Accordingly, the Debtors submit that the foregoing factors merit granting a further extension of the Exclusivity Periods as requested herein.

## NOTICE

33. The Debtors, with the assistance of their claims and noticing agent, will provide notice of this Motion by email and/or first class mail to: (i) the Office of the United States Trustee for the Southern District of West Virginia, (ii) the Debtors' prepetition secured lenders, (iii) the creditors appearing on the Debtors' consolidated list of top 30 unsecured creditors, (iv) the Office of the United States Attorney for the District of West Virginia, (v) the Internal Revenue Service,

14

Main Document    Page 15 of 15

(vi) counsel to United Bank, Inc., Steptoe & Johnson PLLC, (vii) counsel to the Creditors' Committee, Whiteford Taylor & Preston, LLP, and (viii) all parties requesting notices pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other relief that is just and proper.

| | |
|---|---|
| DATED: January 23, 2020 | **SUPPLE LAW OFFICE, PLLC** |
| | Joe M. Supple, Bar. No. 8013 |
| | 801 Viand St. |
| | Point Pleasant, WV 25550 |
| | Telephone: 304.675.6249 |
| | Facsimile: 304.675.4372 |
| | joe.supple@supplelawoffice.com |
| | |
| | – and – |
| | |
| | **SQUIRE PATTON BOGGS (US) LLP** |
| | |
| | */s/ Stephen D. Lerner* |
| | Stephen D. Lerner (admitted *pro hac vice*) |
| | Nava Hazan (admitted *pro hac vice*) |
| | Travis A. McRoberts (admitted *pro hac vice*) |
| | 201 E. Fourth St., Suite 1900 |
| | Cincinnati, Ohio 45202 |
| | Telephone: 513.361.1200 |
| | Facsimile: 513.361.1201 |
| | stephen.lerner@squirepb.com |
| | nava.hazan@squirepb.com |
| | travis.mcroberts@squirepb.com |
| | |
| | *Co-Counsel to the Debtors and Debtors-in-Possession* |

15