# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

IN RE:
BLACKJEWEL, L.L.C.,
BLACKJEWEL HOLDINGS L.L.C.,
REVELATION ENERGY HOLDINGS, LLC,
REVELATION MANAGEMENT CORP.,
REVELATION ENERGY, LLC,
DOMINION COAL CORPORATION,
HAROLD KEENE COAL CO. LLC,
VANSANT COAL CORPORATION,
LONE MOUNTAIN PROCESSING, LLC,
POWELL MOUNTAIN ENERGY LLC,
CUMBERLAND RIVER COAL LLC,

                Debtor-in-Possess.

UNITED BANK,

                Appellant,

v.                                    CIVIL ACTION NO.  3:20-00866
                                    BANKRUPTCY NO.  3:19-30289

BLACKJEWEL, L.L.C.,
BLACKJEWEL HOLDINGS L.L.C.,
REVELATION ENERGY HOLDINGS, LLC,
REVELATION MANAGEMENT CORP.,
REVELATION ENERGY, LLC,
DOMINION COAL CORPORATION,
HAROLD KEENE COAL CO. LLC,
VANSANT COAL CORPORATION,
LONE MOUNTAIN PROCESSING, LLC,
POWELL MOUNTAIN ENERGY LL,
CUMBERLAND RIVER COAL LLC,

                Appellees.

**MEMORANDUM OPINION & ORDER**

Pending before the Court is Appellant United Bank's Appeal from the United States Bankruptcy Court. For the reasons that follow, the Court **AFFIRMS** the Bankruptcy Court's Memorandum Order Denying United Bank's Motion for Adequate Protection.[1]

## BACKGROUND[2]

### A. United Bank's Relationship with Debtors[3]

On July 18, 2012, United Bank entered into a "Loan and Security Agreement" with Revelation Energy, LLC ("Revelation").[4] After the Security Agreement was executed, United Bank filed a financing statement with the Kentucky Secretary of State.[5] On February 28, 2013, Revelation and United Bank executed a "Second Amended and Restated Loan and Security Agreement" ("2013 Loan and Security Agreement").[6] The 2013 Loan and Security Agreement provided:

> Debtor hereby grants, pledges and assigns to Secured Party a security interest in, and a Lien on, the following property of Debtor wherever located and whether now owned or hereafter acquired:
> (a) All Debtor Accounts and Receivables.
> (b) All guaranties, collateral, Liens on, or security interests in, real or personal property, leases, letters of credit, and other rights, agreements, and property securing or relating to payment of the Receivables.
> . . .
> (l) All Proceeds and products of all of the foregoing in any form, including, without limitation, accounts payable under any policies of insurance insuring the foregoing against loss or damage, and all increases and profits received from all of the foregoing.[7]

On the same day, United Bank filed an amended financing statement with the Kentucky

---

[1] *Mem. Order Denying United Bank's Mot. for Adequate Protection ("Mem. Order")*, ECF No. 1-1.
[2] The record on appeal is voluminous and many of the relevant documents are difficult to locate on the electronic docket. As such, the Court cites to the majority of the documents using the Appellant's "Appendix Record" or "A.R." cite. Where possible, the Court has cited to CM/ECF docket numbers.
[3] "Debtors" is the collective term the Court will use to refer to Blackjewel, L.L.C; Blackjewel Holdings, L.L.C.; Revelation Energy Holdings, LLC; Revelation Management Corp.; and Revelation Energy, LLC.
[4] *Debtors' Obj. to United Bank's Motion for Adequate Protection* 3, A.R. 584.
[5] *UCC Financing Statement*, A.R. 605.
[6] *Second Am. and Restated Loan and Security Agreement*, A.R. 622.
[7] *Id.* at A.R. 641–42.

Secretary of State ("2013 Financing Statement").[8] Approximately four years later, Blackjewel became a co-borrower on United Bank's loan to Revelation.[9] United Bank thereafter filed a financing statement ("Amended Blackjewel Financing Statement") in the state of Delaware with the hopes of perfecting its security interest.[10] The Amended Blackjewel Financing Statement states, in pertinent part, that United Bank has a security interest in the following collateral:

> (i) all of Debtor's accounts, except for Accounts 8573-3238 and 8566-3190 established at Secured Party; (ii) all of Debtor's account receivables; [and] (iii) all guaranties, collateral, liens on, or security interests in, real or personal property, leases, letters of credit, and other rights, agreements, and property securing or relating to payment of account receivables . . ..[11]

On December 11, 2017, Blackjewel and MR Coal Marketing and Trading LLC ("MR Coal") executed a "Master Coal Purchase and Sale Agreement" ("MR Coal East PSA"), under which Blackjewel was to sell all coal mined/produced at its Eastern facilities to MR Coal.[12] Then, on January 1, 2018, Blackjewel and Blackjewel Marketing and Sales, LP ("BJMS") executed a Master Coal Purchase and Sale Agreement ("BJMS West PSA"), under which Blackjewel was to sell all coal produced at its Wyoming facilities to BJMS.[13] "MR Coal is a predecessor for BJMS,"[14] accordingly, "BJMS was the exclusive offtaker and marketing agent for all coal produced by the Debtors."[15]

In "June 2019, BJMS paid $23,470,282 to Blackjewel with respect to the delivery of coal in the states of Kentucky and Virginia."[16] This appears to be the last Blackjewel coal sale that occurred before Blackjewel filed for bankruptcy. As of the end of June, Debtors contend, and

---

[8] *UCC Financing Statement Am.*, A.R. 606.
[9] *Joinder Agreement*, A.R. 2223.
[10] *UCC Financing Statement*, A.R. 610.
[11] *Id.* at A.R. 610–11.
[12] *MR Coal East PSA*, A.R. 690–718; *Debtors' Obj. to United Bank's Mot.* 6, A.R. 587.
[13] *BJMS West PSA*, A.R. 720–46; *Debtors' Obj. to United Bank's Mot.* 6, A.R. 587.
[14] *Tr. Of Mot. Hearing (Jan. 22, 2019)*, ECF No. 7-10 at 5.
[15] *Debtors' Obj. to United Bank's Mot.* 6, A.R. 587.
[16] *Id.* at 7, A.R. 588.

United Bank seemingly concedes, that there were "no outstanding prepetition accounts receivable owed by BJMS to the Debtors" under either PSA.[17]

**B. Bankruptcy Petition and Post-Petition Events**

On July 1, 2019, Debtors filed voluntary bankruptcy petitions under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").[18] Shortly after the petitions were filed, Blackjewel's June 2019 sale to BJMS "became the subject of extensive litigation between the Debtors, BJMS, and the Department of Labor."[19] Essentially, the Department of Labor ("DOL") contended that the coal BJMS purchased had been produced by laborers who had not yet be paid, and thus the coal was considered "hot goods" under the Fair Labor Standards Act.[20] In August 2019, the DOL moved in the bankruptcy proceedings to have the shipment of the "hot goods" halted until Blackjewel paid the laborers.[21]

In October 2019, Debtors moved in the bankruptcy proceeding for authorization to sell substantially all of their Wyoming assets to Eagle Specialty Materials ("ESM").[22] The motion asked the Court to approve four separate settlement agreements, three of which are pertinent to this appeal:

> (1) "BJMS Settlement" Under this proposed settlement, BJMS and the Debtors agreed to release each other from all claims and BJMS agreed to pay $5.475 million to Debtors. Pursuant this agreement, Blackjewel was to use the majority of the funds to settle the "hot goods" issue with the DOL.[23]

---

[17] *Id.*
[18] *See Decl. of Jeff. A. Hoops, Sr.* ¶ 4, ECF No. 5-1; *Voluntary Pet. for Non-Individuals Filing for Bankr.*, ECF No. 11-1.
[19] *Debtors' Obj. to United Bank's Mot.* 7, A.R. 588.
[20] *Id.* at 7–8, A.R. 588–89.
[21] *See U.S. Dep't of Labor's Emergency Mot. to Halt the Transport and Transfer of Coal Located in Harlan Cnty., Ky.*, ECF No. 8-5; *U.S. Dep't of Labor's Emergency Mot. to Halt the Transport and Transfer of Coal Located in Raven, Va. and Honaker, Va.*, A.R. 148.
[22] *Debtors' Mot. for an Order Authorizing the Private Sale of the Western Assets to Eagle Specialty Materials, LLC Free and Clear of All Claims, Liens, Liabilities, Rights, Interests and Encumbrances and Granting Related Relief*, A.R. 286–317.
[23] *Id.* at 297. BJMS also agree to pay in full "all outstanding accounts receivable generated by the Debtors on September 27, 2019" through the approval of the sale of the Western Assets to Eagle Specialty Materials. *Id.*

(2) "DOL Settlement" Under this proposed agreement, the Debtors and the DOL agreed that the Debtors would pay $3,440,937 to employees of the Eastern Mines and $793,847 to employees at the Western Mines and in exchange, BJMS would have access to the coal that it purchased prepetition.[24]

(3) "Settlement with Riverstone" Under this proposed settlement, Debtors agreed to pay Riverstone Credit Partners[25] ("Riverstone") $32 million in cash and Riverstone agreed to "release any liens, security interest, mortgages, claims interest and encumbrances it asserts against any property of the Debtors."[26]

The Bankruptcy Judge approved the sale to ESM on October 4, 2019 ("ESM Effective Date").[27] Upon approval, "BJMS paid the Debtors the aggregate sum of $8,513,496 pursuant to the BJMS Settlement, comprised of (i) $3,038,496 for post-petition accounts receivable generated between September 27, 2019 and the ESM Effective Date, and (ii) $5.475 million for accounts receivable generated between the Petition Date and September 26, 2019."[28] The Debtors used approximately $6.3 million of the $8,413,496 to pay off outstanding debts (i.e., to pay off the hot goods).[29] The Bankruptcy Judge labeled the remaining funds Debtors received under the BJMS Settlement the "Residual BJMS Settlement Proceeds."[30]

## C. Motion for Adequate Protection

On October 28, 2019, United Bank filed a Motion for Adequate Protection in the Debtors' bankruptcy proceedings.[31] The Motion claimed that (1) United Bank "holds a valid, perfected and first priority interest in Blackjewel's accounts receivable and the proceeds thereof," (2) its "security interest attached to prepetition and postpetition accounts receivable," (3) its security

---

[24] *Id.* at 298–99.
[25] As will be more thoroughly discussed later, Riverstone had loaned Blackjewel millions of dollars in return for a security interest in "substantially all" of Blackjewel's assets.
[26] *Id.* at 300.
[27] *Order (I) Approving the Sale of Certain Assets to Eagle Specialty Materials, LLC Free and Clear of Liens, Claims, Encumbrances, and Other Interests, (II) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief*, A.R. 403, 420, 435–36.
[28] *Debtors' Obj. to United Bank's Mot.* 9, A.R. 590.
[29] *Id.* at 10–11, A.R. 591–92.
[30] *Mem. Order* 13.
[31] *Mot. for Adequate Protection*, ECF No. 8-6.

interest is undersecured, and (4) the "equities of the case" favor United Bank.[32]

United Bank claimed that its security interest attached to pre- and postpetition accounts receivable and that it properly falls under the exception provided in 11 U.S.C. § 552(b)(1).[33] Accordingly, United Bank argued that it was entitled to the Residual BJMS Settlement Proceeds as adequate protection of its security interest.[34]

On November 1, 2019, the Bankruptcy Judge entered an Agreed Order Adjourning United Bank's Motion for Adequate Protection.[35] That order required the Debtors to place the Residual BJMS Settlement Proceeds ($2,155,000) in escrow.[36]

On December 17, 2019, Debtors objected to the Motion for Adequate Protection.[37] Debtors' Objection conceded that "United Bank had a lien on certain of the Debtors' prepetition accounts receivable and the products and proceeds thereof," but argued that "United Bank's prepetition security interests in the accounts do not extend to the settlement proceeds received from BJMS because the amounts remitted pursuant to the settlement were not amounts due prepetition and section 552(a) of the Bankruptcy Code otherwise cuts off prepetition interest in assets the Debtors acquired post-petition."[38]

### D. Bankruptcy Court's Memorandum Opinion[39]

---

[32] *Id.* at 7–8.
[33] *Id.* at 10–22.
[34] *Id.* On October 29, 2019, the IRS, US Department of the Interior, and other federal government creditors joined in the motion, as did WESCO Distribution, Inc. *See Resp. of the U.S. Internal Revenue Serv., U.S. Dep't of the Interior, and Other Fed. Gov'l Creditors to United Bank's Mot. for Adequate Protection*, ECF No. 7-9, A.R. 561; *WESCO Distribution, Inc.'s Joinder to Resp. of the U.S. Internal Revenue Serv., U.S. Dep't of the Interior, and Other Fed. Gov'l Creditors to United Bank's Mot. for Adequate Protection*, A.R. 564.
[35] *Agreed Order Adjourning United Bank's Motion for Adequate Protection*, A.R. 573–77.
[36] *Id.* at 2, A.R. 574.
[37] *Debtors' Obj. to United Bank's Mot.*, A.R. 582.
[38] *Id.* at 2, A.R. 583.
[39] The underlying bankruptcy case, and United Bank's Motion for Adequate Protection, were originally assigned to United States Bankruptcy Judge Volk. While United Bank's Motion was pending, the case was reassigned to United States Bankruptcy Judge Kahn. *See Mem. Order* 3. Judge Kahn's Memorandum Order lays out the procedural and briefing history in greater detail.

On December 7, 2020, the Bankruptcy Court entered a 59-page order that denied United Bank's Motion for Adequate Protection.[40] In sum, the Court found that although United Bank had a valid security interest in the BJMS West PSA,[41] it failed to properly perfect that security interest because the Amended Blackjewel Financing Statement does not sufficiently identify the BJMS West PSA such that it falls within the safe harbors of West Virginia Law or the confines of the former Article 9 of the UCC.[42] Additionally, the Court made an alternative finding and held that even if United Bank had perfected the interest "it would be inequitable for any liens to attach to the postpetition proceeds in this case because those proceeds arose out of the unencumbered inventory of the estate, allowing United Bank to receive the proceeds of unencumbered estate assets would be inequitable to the unsecured creditors."[43]

**E. United Bank's Appeal**

United Bank appealed the Bankruptcy Court's Memorandum Order.[44] United Bank filed its Opening Brief on January 19, 2021, the Debtors filed their Brief on February 2, 2021, and United Bank filed its Reply Brief on February 16, 2021.[45] The parties briefings address the two questions raised by United Bank on appeal:

1. "Whether the bankruptcy court erred as a matter of law when it held that United Bank did not perfect its valid security interest in a pre-petition contract for the sale of coal entered by Debtors, and thus the post-petition proceeds thereof."

2. "Whether the bankruptcy court abused its discretion by relying on a clearly erroneous factual finding to rule that, even if United Bank had perfected its valid

---

[40] *Mem. Order*.
[41] In a careful analysis, Judge Kahn described how the 2013 Loan and Security Agreement sufficiently described an interest in the BJMS West PSA because the Agreement's definition of "receivables" mirrors that of "account" under the UCC as adopted by West Virginia. *See Mem. Order* 25–30.
[42] *Id.* at 36–53. West Virginia's adoption of the UCC states that collateral may be reasonably identified by a number of methods. Judge Kahn's Order thoroughly addresses, and ultimately rejects, all the different ways in which the Amended Blackjewel Financing Statement could have satisfied West Virginia Code § 46-9-504.
[43] *Id.* at 53.
[44] *Notice of Bankruptcy Appeal and Transmittal*, ECF No. 1.
[45] *Appellant's Br.*, ECF No. 4; *Appellees' Br.*, ECF No. 12; *Appellant's Reply Br.*, ECF No. 14.

security interest, the equities of the case nonetheless prevent that interest from attaching."[46]

## II. STANDARD OF REVIEW

Whether the financing statement perfected the United Bank's security interest is a question of law to be reviewed *de novo*. *See In re Kirkland*, 600 F.3d 310, 314 (4th Cir. 2010). The propriety of the Bankruptcy Court's decision to apply the equities of the case exception under § 552(b) of the Bankruptcy Code is reviewed for abuse of discretion. *See In re Endresen*, 548 B.R. 258, 267 (B.A.P. 9th Cir. 2016).

## III. LAW & ANALYSIS

While United Bank has asked the Court to answer two questions on appeal, the Court only answers the second one. The Court finds that the Bankruptcy Court did not abuse its discretion when it determined that the equities of the case prevent United Bank's security interest from attaching to the postpetition proceeds of the BJMS West PSA.

Section 552 of the Bankruptcy Code provides the general rule for postpetition effect of security interests: "property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case." 11 U.S.C. § 552(a). Subsection(b)(1), however, provides an exception to this general rule:

> if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, products, offspring, or profits of such property, then such security interest extends to such proceeds, products, offspring, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

---

[46] *Appellant's Br.* 1.

-8-

11 U.S.C. § 552 (b)(1). Courts have noted that "[t]he exceptions found in § 552(b)(1) are, in turn, subjection to the exception that the court may order otherwise based on the 'equities of the case.'" *In re Endresen*, 548 B.R. at 268.

This exception to the exception gives bankruptcy judges significant discretion to decide whether it is equitable for a prepetition interest to attach to postpetition proceeds. *See United Va. Bank v. Slab Fork Coal Co.*, 784 F.2d 1188, 1191 (4th Cir. 1986). In *Slab Fork*, the Fourth Circuit looked to the legislative history of § 552 and concluded that "Congress undertook in that section to find an appropriate balance between the rights of secured creditors and the rehabilitative purposes of the Bankruptcy Code. The latitude afforded to the bankruptcy court seems to this court to indicate that such a balancing of interests was intended in the framing of § 552." *Id.*

In this case, the Bankruptcy Court emphasized that "[t]he legislative history of section 522 indicates that the equitable exception to 552(b) is intended to 'cover[] the situation where raw materials, for example, are converted into inventory, or inventory into accounts, at some expense to the estate, thus depleting the funds available for general unsecured creditors, but is limited to the benefit inuring to the secured party thereby.'" *Mem. Order* 55 (citing H.R. Rep. No. 95-989, at 91 (1978)).

While the Bankruptcy Code itself does not define the "equities of the case" or explicitly state the purpose of the exception, Courts across the country "have held that the principal purpose of the equities of the case exception is to prevent secured creditors from reaping unjust benefits from an increase in the value of collateral during a bankruptcy case resulting from the (usually) reorganizing chapter 11 debtor's use of other assets of the estate or from the investment of non-estate assets." *In re Endresen*, 548 B.R. at 274.

In determining whether the equities of the case exception should be applied, courts consider

the following factors: "[(1)] the amount of time and estate funds expended on the collateral, [(2)] the position of the secured party, and [(3)] the rehabilitative nature of the bankruptcy case." *In re Laurel Hill Paper Co.*, 393 B.R. 89, 93 (Bankr. M.D.N.C. 2008).

Here, the Bankruptcy Court properly noted that the third factor, the rehabilitative nature of the bankruptcy case, is not at issue because Debtors have filed a liquidating plan. *Mem. Order* 55. Additionally, the Court noted that the first factor, the estate funds expended on the collateral, "is not limited to any actual funds expended, but further includes the loss to the estate occasioned by the conversion of unencumbered coal inventory to post-petition proceeds of a potentially encumbered but unassumed contract." *Id.*

Courts generally place the most weight on the second factor— "whether a debtor expended unencumbered funds of the estate, at the expense of unsecured creditors, to enhance the value of the collateral." *In re Laurel Hill Paper Co.*, 393 B.R. at 93. In this case, the BJMS West PSA proceeds were derived from the sale of Blackjewel owned coal. The coal at issue was from Blackjewel's western facility in Wyoming. The Bankruptcy Court found that United Bank failed to establish that it had a perfected security interest in any mined coal owned by Blackjewel in Wyoming. *Mem. Order* 56–58. Accordingly,

> the coal sold by Debtors to BJMS post-petition was unencumbered by United Bank's liens, and to the extent, if any, it was converted to create encumbered proceeds under the BJMS West PSA, allowing any pre-petition security interest to attach to these post-petition proceeds would constitute a windfall to United Bank at the expense of the estate and unsecured creditors. Therefore, it would be inequitable to permit any lien held by Untied Bank to attach to the post-petition proceeds of the unencumbered coal, even if those proceeds ultimately were realized under the BJMS West PSA.

*Id.* at 58–59.

As previously noted, this Court reviews the Bankruptcy Court's findings regarding the equities of the case of abuse of discretion. *In re Endresen*, 548 B.R. at 267. "A court 'has abused

-10-

its discretion if its decision is guided by erroneous legal principles or rests upon a clearly erroneous factual finding.'" *PBM Prod., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 123 (4th Cir. 2011) (quoting *Brown v. Nucor Corp.*, 576 F.3d 149, 161 (4th Cir. 2009)).

On appeal, United Bank argues that Bankruptcy Court's equities of the case holding was an abuse discretion because the decision was based on the "erroneous factual finding" that the Wyoming coal was unencumbered. *Appellant's Br.* 17. United Bank submits that this finding was erroneous because the coal was encumbered by a third party, Riverstone. *Id.* at 19.

On July 17, 2017, Riverstone agreed to loan Blackjewel $34 million in exchange for a security interest in "substantially all the debtor Obligors' assets and property . . . including, but not limited to . . . all Fixtures and Goods, including without limitation all Inventory . . ." *Id.*[47] Accordingly, Riverstone held a security interest in Blackjewel's mined Wyoming coal.

United Bank argues that because coal was encumbered by Riverstone, "depriving United Bank of its security interest does not protect the unsecured creditors in this case," but instead "creates a windfall for unsecured creditors where none should exist." *Id.* at 17.

On the other hand, Debtors argue that this is a "textbook" "equities of the case" situation. According to the Debtors,

> [w]hen Debtors filed for bankruptcy, it is undisputed that no accounts receivables on their coal supply contracts (in which United Bank now claims a security interest) remained outstanding. With Debtors' mining operations suspended, the value of the accounts receivables under the contracts was thus negligible. *After* the petition date, Debtors took several steps to increase the value of the collateral. Debtors obtained post-petition financing, resolved certain disputes with their employees, business partners, and the Department of Labor, and resumed limited mining operations in Wyoming. Through these efforts, Debtors managed to convert "raw materials" (unextracted coal) into "inventory," and "inventory into accounts." *In re Laurel Hill Paper Co.*, 393 B.R. at 93. . . . Allowing United Bank to receive the proceeds of sales generated solely by the post-petition efforts of the Debtors "would create a windfall to the bank at the expense of the estate and unsecured creditors," who

---

[47]Quoting *Statement in Support of Master Proof of Claim of Riverstone Credit Partners – Direct, L.P. as Administrative and Collateral Agent, Under Debtors' Prepetition Credit Agreement*, A.R. 2184–98.

-11-

owned the coal at issue and were directly responsible for any increase in value realized through the post-petition sales.

*Br. of Appellees'* 9–10 (emphasis in original).

Debtors also argue that United Bank's emphasis on the coal being encumbered is misplaced. First, "[t]he residual settlement proceeds represented the remainder of Debtors' post-petition coal sales in Wyoming, after the Debtors, BJMS, and Riverstone settled and mutually released all claims against each other." *Id.* at 11. Therefore, the proceeds were "unencumbered" assets of the Blackjewel's estate. *Id.*[48]

Second, even if the coal was encumbered by Riverstone, Debtors submit that "United Bank fails to explain why a lien held (and released) by a *different secured party* would affect the Bankruptcy Court's conclusion that it was 'inequitable' *for United Bank* to receive the post-petition proceeds . . . ." *Br. of Appellees* 11 (emphasis in original).

United Bank ultimately hinges its equities of the case appeal on the Fourth Circuit's holding in *Laurel Hill*. *See Appellant's Reply Br.* 14, ECF No. 14. There the Court noted that "[p]ayments at the expense of secured creditors rather than at the expense of the estate do not support an equities of the case award to the unsecured creditors." *In re Laurel Hill Paper Co.*, 393 B.R. at 94. The Court, however, concludes that United Bank has read *Laurel Hill* too narrowly. In that case, the debtors sought to allocate $1,000,000 from the sale of encumbered assets to unsecured creditors. *Id.* at 91. Those assets were encumbered *by the very creditors who sought payment pursuant to their security interest. Id.* Accordingly, the Court found that the equities of the case exception could not be applied to deprive the secured creditors access to the sale proceeds,

---

[48] United Bank concedes that Blackjewel settled its debt with Riverstone and was released from all liens "on the same day that the BJMS Settlement occurred," but it maintains that "because the BJMS Settlement was approved at the same time as the Riverstone Settlement, any coal made subject of the BJMS Settlement had been converted from inventory to proceeds prior to approval of the Riverstone Settlement and the associated release of its lien on the inventory." *Appellant's Br.* 19–20, 20 n.77.

-12-

because "[t]he costs of the alleged enhancement thus were paid from encumbered funds and not from unencumbered funds of the estate." *Id.* at 94.

In this case, the estate assets that were sold to create the BJMS Settlement Proceeds were encumbered by a different creditor who has since released Blackjewel from its lien and who has never claimed a right to the Residual BJMS Settlement Proceeds.

When Judge Kahn denied a stay of the bankruptcy case pending this appeal, he noted that

> [a]ny lien previously held but released by Riverstone does not inure to the benefit of United Bank simply because that lien was satisfied.
>
> Rather, the Blackjewel bankruptcy estate paid Riverstone $32 million to settle Riverstone's claim and to have any surviving collateral released. ($24 million from a sale to ESM and $8 million directly from Debtors). It would be inequitable for United Bank to spring into position as a secured creditor as a result of the release of collateral by another creditor when the released inventory collateral was indisputably not subject to United Bank's lien. The equitable exception under § 552(b) was designed precisely for a situation such as this.

*Order Denying Mot. for Stay Pending Appeal* 20, ECF No. 11-7.

Here, the Court finds that the Bankruptcy Court appropriately considered all the factors laid out in *Laurel Hill* and determined that it was inequitable for United Bank to receive the Residual BJMS Settlement Proceeds. That finding does not appear to be arbitrary, irrational, unsupported by the record, or a product of a clearly erroneous factual finding. *See United States v. Welsh*, 879 F.3d 530, 536 (4th Cir. 2018).

Even if United Bank had an interest in the proceeds of the BJMS West PSA, it certainly did not have a security interest in Blackjewel's raw materials or inventory. Blackjewel converted its raw materials into inventory and then into accounts, and in doing so, depleted estate assets. *See Mem. Order* 55–56. Although those assets may have been encumbered by a different creditor at the time they were converted into inventory, they were released from that encumbrance on the very same day the BJMS West PSA became effective. Because the sale depleted estate assets, it

necessarily follows that fewer assets are available to unsecured creditors if they are denied access to the excess proceeds of the BJMS West PSA. Accordingly, it was not an abuse of discretion for the Court to conclude that it would be inequitable for United Bank alone to reap the benefits of the BJMS West PSA.

The Court **AFFIRMS** the Bankruptcy Court's Memorandum Order Denying United Bank's Motion for Adequate Protection to the extent it held that the equities of the case prevent United Bank's security interest from attaching to the Residual BJMS Settlement Proceeds. Additionally, because the Court has affirmed the order on the equities of the case, it finds that it need not reach the question of whether United Bank's security interest was properly attached and perfected.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:   June 29, 2021

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE