_____
BENJAMIN A. KAHN
UNITED STATES BANKRUPTCY JUDGE

**Dated: August 15th, 2025**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Blackjewel, L.L.C., *et al.*,[1] | ) | Case No. 19-30289 |
| | ) | |
| Former Debtors. | ) | (Jointly Administered) |

## OPINION GRANTING IN PART AND DENYING IN PART THE DEPARTMENT OF LABOR'S MOTION TO COMPEL DISCOVERY

This case came before the Court for hearing on the Motion to Compel filed by the Secretary of the United States Department of Labor ("DOL") on May 30, 2025, ECF No. 3972 ("Motion"), the Response in Opposition to the Motion filed by the Liquidation Trustee of the Blackjewel Liquidation Trust, LLC ("Trust") on July

---

[1] The former debtors in these chapter 11 cases and the last four digits of each debtor's taxpayer identification number are as follows: Blackjewel, LLC (0823); Blackjewel Holdings LLC (4745); Revelation Energy Holdings, LLC (8795); Revelation Management Corporation (8908); Revelation Energy, LLC (4605); Dominion Coal Corporation (2957); Harold Keene Coal Co. LLC (6749); Vansant Coal Corporation (2785); Lone Mountain Processing, LLC (0457); Powell Mountain Energy, LLC (1024); and Cumberland River Coal LLC (2213) (collectively, "Debtors"). The mailing address for each Debtor is located at 999 17th Street, Suite 700, Denver, Colorado 80202, Attn: David J. Beckman, Trustee.

7, 2025, ECF No. 3981 ("Response"), and the Reply in Support of
the Motion filed by the DOL on July 14, 2025.  ECF No. 3982
("Reply").  At the conclusion of the hearing, the Court took this
matter under advisement.  For the reasons stated herein, the Court
will grant the Motion in part and deny the Motion in part.

**FACTUAL BACKGROUND**

**I. The Prior Health Plan**

Debtors filed voluntary petitions for relief under chapter 11
of title 11 on July 1, 2019, and July 24, 2019.  ECF No. 1 &
309.[2]  Debtors' "core business was mining and processing
metallurgical, thermal and other specialty and industrial
coals."  ECF No. 2500, at 17.  At the time of the initial filing,
Debtors intended to operate their businesses and manage their
properties as debtors and debtors in possession under §§ 1107 and
1108.  See ECF No. 2, at 3.  As of the petition date, Debtors
employed approximately 1,700 employees (600 in the "Western
Division" and 1,100 in the "Eastern Division").  ECF No. 14, ¶¶ 7
& 8.  Debtors unexpectedly could not secure debtor-in-possession
financing at the outset of the case, and suspended operations and
furloughed almost all employees on the petition date.  ECF No.
2500, at 27.  From the July 1 petition date through approximately
August 24, 2019, Debtors attempted to find financing that would

---

[2] For purposes of this opinion and order, the Court will refer to July 1, 2019,
as the petition date.

2

permit them to restart operations and attempt a rehabilitation, but these efforts were unsuccessful, and, unable to restart operations, Debtors promptly sought to liquidate all their assets. See ECF No. 3887, at 14. To assist with this wind-down and liquidation, Debtors returned 192 of the furloughed employees. Id.

At the time of filing, Debtors contracted with various insurance companies to provide health and supplemental insurance to their employees. ECF No. 3887, at 12. United Healthcare Services, Inc. ("UHSI") served as the third-party administrator for Debtors' self-funded health plan (the "Prior Health Plan"). Id. Under the Prior Health Plan, Debtors self-funded a bank account from which UHSI paid employees' insurance premiums and medical expense claims. ECF No. 2639, ¶ 2. Prior to the failure to obtain financing for operations and contemporaneous with the filing of the original petitions, Debtors filed a motion seeking approval to continue operating the Prior Health Plan in the ordinary course of business, ECF No. 6, which motion was granted on August 8, 2019. ECF No. 626.

On July 9, 2019, due to Debtors' inability to fund the account as necessary to satisfy certain medical expense claims arising under the Prior Health Plan, UHSI suspended the payment and processing of claims arising after that date under the Prior Health Plan. ECF No. 2639, ¶ 5. On July 17, 2019, this hold was extended

3

to stop the payment and processing of all claims arising under the Prior Health Plan regardless of the date of service of the claim. Id. ¶ 6.[3]  Soon thereafter, on August 25, 2019, Debtors filed a motion seeking approval to terminate the Prior Health Plan effective August 31, 2019, ECF No. 879, which motion was granted on August 30, 2019.  ECF No. 968.[4]

## II. The DOL's Claims

On July 3, 2019, the Court entered an Order providing for the joint administration of the chapter 11 cases of certain Debtors, including Blackjewel, LLC and Revelation Energy, LLC.  ECF No. 60. This order provides that all further filings and docket entries shall be made in the chapter 11 case of Blackjewel, LLC, but all proofs of claim must be filed in the specific case to which they apply.  Id. ¶¶ 3 & 5.  On August 8, 2019, the DOL filed on behalf of the Prior Health Plan itself a proof of claim in the case of Revelation Energy, LLC, POC No. 210, as well as a proof of claim in the case of Blackjewel, LLC, POC No. 208.  Each claim is for an

---

[3] The claim hold did not stop the processing and payment of claims submitted before the July 17th extension or the payment of claims for prescription drug benefits.  ECF No. 2639, ¶ 6.

[4] This order authorized Debtors to enter a new plan, which was not self-funded, to provide health insurance for returning employees.  ECF No. 968.  Debtors contracted with UHSI for new health insurance coverage for their current employees and their dependents, effective September 1, 2019 (the "New Health Plan").  ECF No. 3887, ¶ 12.  On October 24, 2019, Debtors filed a motion seeking approval to terminate the New Health Plan, ECF No. 1275, which motion was granted by the Court on November 21, 2019.  ECF No. 1456.  Debtors timely paid all premiums under the New Health Plan.  ECF No. 3887, ¶ 12.  Debtors did not contract for any further health or supplemental insurance coverage for their employees after the termination of the New Health Plan.  Id. ¶ 14.

unliquidated amount and states that the basis of the claim is "money due to ERISA covered 401(k) plan;" however, the attachment to each proof of claim explains that the claim is actually regarding money due to the Blackjewel, LLC Health Care Plan and the Revelation Energy, LLC Health Care Plan, respectively. POC Nos. 210 & 208. Neither claim asserts entitlement to administrative priority, instead, each states that it should be "accorded unsecured priority treatment to the extent permitted in accordance with § 507(a)(5)." Id. The attachment to each proof of claim further states that the DOL was in the process of investigating potential ERISA violations and that the DOL would amend or withdraw each proof of claim upon completion of its investigation. Id. On November 1, 2019, in the Revelation Energy, LLC case, the DOL filed on behalf of the Prior Health Plan, an amendment to POC No. 210, asserting a priority claim under § 507(a)(5) in the amount of $3,290,622.89 for contributions to an employee benefit plan and a general unsecured claim in the amount of $473,246.85. Id. This amendment states that the DOL initiated an investigation into potential ERISA violations and determined that Debtor failed to pay participant medical claims under the Prior Health Plan and such failure "may or may not constitute a violation actionable" under ERISA. POC No. 1327. On April 16, 2021, the DOL amended POC No. 1327, increasing the priority claim amount to $4,656,339.17 and the general unsecured claim to

$892,311.73.  POC No. 1625.  The amendment again states that the DOL initiated an investigation into potential ERISA violations and determined that Debtor failed to pay participant medical claims under the Prior Health Plan and such failure "may or may not constitute a violation actionable" under ERISA.  Id.[5]

## III. The DOL's Request for Administrative Priority

On October 4, 2019, the Court entered an Order which, *inter alia*, set a bar date of November 4, 2019, for the filing of requests for allowance of administrative expense claims, ECF No. 1188, at 3-4,[6] which deadline was extended to November 12, 2019, by stipulation.  ECF No. 1383.  The DOL timely filed on the bar date a request for an unliquidated administrative expense claim "for any and all unpaid amounts resulting from the postpetition operation of the Debtors' ERISA Plans, including any damages arising from their operation subsequent to the Petition Date."  ECF No. 1352, ¶ 10.  In this request, the DOL stated that there were approximately $7,500,000.00 in unpaid claims for postpetition

---

[5] This amendment states that $446,717.88 of the liquidated amount represents 525 claims that were for dates of service prior to August 1, 2018.  POC No. 1625.

[6] The order provides that: "Each party asserting a request for allowance of Administrative Claims arising between the Petition Date and October 14, 2019 (excluding claims for (a) fees and expenses of professionals retained in these proceedings, and (b) payables arising from postpetition goods or services provided to the Debtors in the ordinary course of business) must file an Administrative Claim Request with the Court . . . before November 4, 2019."  ECF No. 1188, at 3-4.

services asserted against the Prior Health Plan. Id. ¶ 7.[7]  On

May 19, 2020, the DOL amended its administrative claim request to

indicate that the amount of postpetition claims against the Prior

Health Plan had increased to approximately $9,500,000.00.  ECF No.

1986, ¶ 3.  The DOL stated that the purpose of this amendment was

"to reflect this approximate two million dollar increase in

postpetition claims being asserted against the [Prior Health

Plan]."  Id. ¶ 4.  On January 20, 2021, the DOL amended its

administrative claim request again, to indicate that the amount of

postpetition claims against the Prior Health had increased to

almost $13,000,000.00, including "likely duplicative claims."  ECF

No. 2852, ¶ 4.  The DOL stated that this amendment was filed "to

reflect such approximately $3,500,000.00 increased amount."  Id.

¶ 5.  On April 15, 2021, the DOL filed its final request for

payment of an administrative expense claim in the amount of

"$14,052,175.23 plus unbilled amounts."  ECF No. 3265, ¶ 5 (the

"DOL Claim").  The form used for the request provides that

"Documentation Supporting the Claim Must be Attached Hereto."  Id.

¶ 6.  The request did not include any attachments.  See id.  The

---

[7] In its original application, the DOL stated that the amount of postpetition
administrative expense obligations arising under the Prior Health Plan were
undetermined and until the unpaid claims were processed to determine the amount
of benefits payable and to distinguish the claims of Debtors' employees from
non-debtor employees, it was not possible to determine which of these claims
constitute administrative expense obligations of Debtors.  ECF No. 1352, ¶¶ 8
& 9.  Still, as a "protective measure," the DOL filed its request for an
unliquidated administrative claim for any and all unpaid amounts resulting from
the postpetition operation of the plans.  Id. ¶ 10.

request describes the nature of the claim as "Post-petition claims
covered by the [Prior Health Plan]." Id. ¶ 3.  None of the DOL's
requests or amendments state that the basis for administrative
expense priority of the DOL Claim is an ERISA violation.  See ECF
Nos. 1352, 1986, 2852 & 3265.

### III. Confirmation

On October 21, 2020, Debtors filed an Amended Chapter 11 Plan
and First Amended Disclosure Statement.  ECF Nos. 2499 & 2500
("Plan" and "Disclosure Statement," respectively).  The DOL
objected to confirmation of the Plan because, among other reasons,
the Plan, by failing to account for how distributions would be
made from Debtors' health plan following its termination, did not
provide treatment for the DOL Claim.  ECF No. 2641, at 4-5.  On
March 22, 2021, with the support of the DOL, the Court confirmed
the Plan and approved the Disclosure Statement as amended to obtain
the support and consent of the DOL.  ECF No. 3147.  The resolution
supported by the DOL is reflected in paragraphs 24 to 29 of the
Confirmation Order, creating a procedure by which the Trust and
UHSI are to review and make distributions on certain unadjudicated
claims under the Prior Health Plan.  Id. ¶¶ 24-29.

### IV. The Trust's Objection the DOL Claim

On January 12, 2023, the Court entered an Order Approving
Certain Claim Objection Procedures and Related Claim Hearing
Procedures (the "Procedures Order"), authorizing the Trust to

object to claims on an omnibus basis on grounds beyond those enumerated in Fed. R. Bankr. P. 3007(d) and establishing streamlined hearing procedures to efficiently resolve the Trust's omnibus objections.  ECF No. 3705.  On May 28, 2024, the Trust filed the Thirteenth Omnibus Objection, seeking, in part, a reduction of the administrative expense request of the DOL from $14,052,175.23 to $144,214.80, and a reclassification of the remainder as a general unsecured claim.  ECF No. 3887, at 21.  On September 9, 2024, the DOL filed a response to the Trust's objection, arguing that the objection should be denied because (1) it violates the Procedures Order; (2) no benefit to the bankruptcy estate needs to be shown for a claim to have administrative expense priority when the claim arises from a violation of the law;[8] and (3) even if a benefit to the estate is required, it fails to recognize the value provided to the estate by UHSI's postpetition operation of the Prior Health Plan.  ECF No. 3912.  On September 20, 2024, the Trust filed a reply in support of its objection. ECF No. 3913.

**V. Hearing on the Trust's Objection**

The Court held a hearing on the Trust's objection, ECF No.

---

[8] The response states that no benefit to the estate needs to be shown to establish administrative expense priority of the DOL Claim because "Debtors apparently violated ERISA."  ECF No. 3912, at 10.  This is the first instance in which the DOL states that the basis for administrative expense priority of its claim is an allegation that Debtors' violated ERISA.

3918, and for the reasons set forth on the record at the hearing,
including that the terms of the Confirmed Plan superseded the
omnibus objection procedures with respect to the DOL, adjourned
the hearing to a later date and directed the parties to file a
status report detailing the processes by which the parties intend
to proceed in determining the amount by which the DOL Claim is to
be reduced and providing an estimation of how long this process
will take.  ECF No. 3916.  On October 25, 2024, the parties filed
such status report, providing that in lieu of proceeding as set
forth in paragraph 26 of the Confirmation Order, the parties would
instead conduct a six-month discovery process concerning only
issues relevant to determining whether any portion of the DOL Claim
was entitled to administrative priority.  ECF No. 3924, ¶ 5.  On
December 5, 2024, the Court entered a Joint Scheduling Order
providing the DOL and the Trust until May 23, 2025, to conduct and
complete this discovery, and setting an evidentiary hearing to
adjudicate the proper classification of the DOL Claim on July 17,
2025.  ECF No. 3951.[9]

---

[9] The Joint Scheduling Order provides:

> The Parties shall have until and including May 23, 2025, to conduct
> and complete discovery concerning the administrative expense status
> of the DOL's claims . . . including, but not limited to, whether a
> benefit to the estate is required to be shown for granting
> administrative expense status for the DOL Claims and including
> others matters concerning the administrative expense classification
> of the DOL Claims other than the amount of the DOL Claims.

ECF No. 3951, ¶ 2.

### VI. Current Motion

On May 30, 2025, the DOL filed the current Motion seeking an order compelling the Trust to comply with Requests for Production of Documents numbers 5, 7, and 10 and to produce certain documents and communications listed in the Trust's privilege log for *in camera* review to allow the Court to assess the Trust's asserted privileges and the application of the ERISA fiduciary exception. ECF No. 3972.  On July 7, 2025, the Trust filed the Response to the DOL's Motion, stating, *inter alia*, that it has produced all non-privileged, responsive communications that are relevant to the administrative expense status classification dispute, the ERISA fiduciary exception is inapplicable, *in camera* review is not necessary, and none of the communications and documents identified in the privilege log should be produced.  ECF No. 3981.  On July 14, 2025, the DOL filed its Reply in support of the Motion.  ECF No. 3982.

### DISCUSSION

If a party from whom discovery is sought responds by serving objections to the requests or responds in a way that the requesting party considers evasive or incomplete, the validity of the objections and the adequacy of the responses may be tested through a motion to compel discovery.  Fed. R. Civ. P. 37(a)(3)(B) & (4), made applicable by Fed. R. Bankr. P. 7037.  The requesting party has the burden of proving that the responses are incomplete, false,

11

or inadequate. <u>Cont'l Ins. Co. v. McGraw</u>, 110 F.R.D. 679, 682 (D. Colo. 1986) (citing <u>Daiflon, Inc. v. Allied Chem. Corp.</u>, 534 F.2d 221 (10th Cir. 1976)). When deciding a motion to compel, the court should consider whether the discovery sought is relevant and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1), made applicable by Fed. R. Civ. P. 7026.

A motion to compel will be denied to the extent materials sought are privileged. Fed. R. Civ. P. 26(b)(1); <u>see also</u> <u>Conant v. McCoffey</u>, No. C 97-0139 FMS, 1998 WL 164946, at *2 (N.D. Cal. Mar. 16, 1998) ("To succeed on its motion to compel, the [movant] must show that the information sought is relevant, and that it does not fall under the various privileges plaintiffs have asserted."). The party resisting discovery based on privilege bears the burden of proving that the asserted privilege applies. <u>See, e.g.</u>, <u>In re Horowitz</u>, 482 F.2d 72, 82 (2d Cir. 1973) (citing <u>United States v. Kovel</u>, 296 F.2d 918, 923 (2d Cir. 1961)). When a party withholds discovery based on attorney-client privilege or work product doctrine, that party is required to produce a privilege log that satisfies the requirements of Fed. R. Civ. P. 26(b)(5)(A)(ii) (providing that a privilege log must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim"). "Privilege is a matter

12

of both 'the context and content' of the disputed documents." Tatum v. R.J. Reynolds Tobacco Co., No. 1:02CV373, 2008 WL 11355417, at *2 (M.D.N.C. Jan. 11, 2008) (quoting United States v. Mett, 178 F.3d 1058, 1064 (9th Cir. 1999)).

Courts may conduct *in camera* review of materials before ruling on motions to compel that are opposed based on privilege. See, e.g., United States v. Zolin, 491 U.S. 554, 572 (1989). To be granted *in camera* review, the movant must present "'a factual basis adequate to support a good faith belief by a reasonable person' . . . that *in camera* review of the materials may reveal evidence to establish the claim that the . . . exception applies." Id. (quoting Caldwell v. Dist. Ct. In & For City & Cnty. of Denver, 644 P.2d 26, 33 (Colo. 1982)). Once the movant makes this showing, "whether to engage in an *in camera* review is a matter of the Court's discretion." Peters v. Aetna Inc., No. 1:15-CV-00109-MR, 2018 WL 3616923, at *10 (W.D.N.C. July 27, 2018) (citing Zolin, 491 U.S. at 572).

**I. The DOL's requests for production of documents are overbroad.**

In order to determine both the relevancy and the proportionality of the discovery requests, the Court first must consider the extent to which the requested discovery affects any potential administrative priority to which the claim may be entitled. See Fed. R. Civ. P. 26(b)(1). The purpose of discovery

in this case is solely to determine the administrative priority of the DOL Claim. See ECF No. 3951, ¶ 2. An administrative expense is "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). Because of the presumption that the assets of a bankruptcy estate will be equally distributed, administrative priority is narrowly construed. Ford Motor Credit Co. v. Dobbins, 35 F.3d 860, 865 (4th Cir. 1994). To qualify as an actual and necessary administrative expense, "(1) the expense and right to payment arise after the filing of bankruptcy, and (2) the consideration supporting the right to payment provides some benefit to the estate." In re Midway Airlines Corp., 406 F.3d 229, 237 (4th Cir. 2005) (two requirements: (1) expense arises after petition; and (2) the consideration supporting the right to payment provides some benefit to the estate). "The focal point of the allowance of a priority is to prevent unjust enrichment of the estate, not to compensate the creditor for its loss." In re Globe Metallurgical, Inc., 312 B.R. 34, 40 (Bankr. S.D.N.Y. 2004) (citing In re R.H. Macy & Co., Inc., 170 B.R. 69, 78 (Bankr. S.D.N.Y. 1994)). The party claiming administrative priority has the burden of demonstrating entitlement to such priority by a preponderance of the evidence. In re Liberty Fibers Corp., 383 B.R. 713, 717 (Bankr. E.D. Tenn. 2008) (citing In re HNRC Dissolution Co., 343 B.R. 839, 843 (Bankr. E.D. Ky. 2006)). The claimant must also show that the benefit is more than a speculative or potential

14

benefit.  In re Kmart Corp., 290 B.R. 614, 621 (Bankr. N.D. Ill.
2003)) (citing In re Lickman, 273 B.R. 691, 704 (Bankr. M.D. Fla.
2002)).

In this case, the parties do not dispute that the health plan
claims of Debtors' employees who returned post-petition are
entitled to administrative priority.  See ECF No. 3887, at 19-21.
However, the DOL Claim includes postpetition health plan claims of
furloughed employees who did not return to work.  See ECF No. 3912.
The DOL contends that the health plan claims of furloughed
employees are also entitled to administrative priority because no
benefit to the estate needs to be shown when a claim arises from
a violation of the law and, alternatively, even if a benefit to
the estate needs to be shown, that requirement is met because the
continued operation of the Prior Health Plan for furloughed
employees provided substantial value to Debtors' estates.  Id.

**A.  The DOL must demonstrate a benefit to the estate to
entitle the claims of the furloughed employees to
administrative expense priority.**

The Court first will consider whether the claims of the
furloughed employees are entitled to priority because they
allegedly were caused by the plan administrator's failure to give
sufficient notice of termination of the Prior Health Plan in
violation of ERISA.  In Reading Co. v. Brown, 391 U.S. 471 (1968),
the Supreme Court established an exception to the requirement that
an expense confer a benefit to the bankruptcy estate to be entitled

15

to administrative expense priority.  In Reading, the Court held
that the fire damage claim, caused by postpetition tortious
negligence of the receiver, was an "actual and necessary cost" of
operating the debtor's business despite not providing a benefit to
the estate.  Reading, 391 U.S. at 485.  The Court explained that
"actual and necessary costs" "should include costs ordinarily
incident to operation of a business, and not be limited to costs
without which rehabilitation would be impossible."  Id. at 483.[10]
"The Court reasoned that its decision allocates the burden of the
tort damages arising from the operation of the debtor post-petition
to the pre-petition creditors, who are the intended beneficiaries
of the debtor's rehabilitation."  In re Sunarhauserman, Inc., 126
F.3d 811, 816 (6th Cir. 1997) (citing Reading, 391 U.S. at 482-
83).

As recognized in Reading itself, the exception finds its
purchase in the operating costs of a business and the costs of
rehabilitation, rather than liquidation.  Reading, 391 U.S. at
483.  Courts therefore have limited the exception to instances in
which the purported victims' claims arise out of postpetition
business operations, holding that the exception does not apply in
non-operating, liquidating cases.  In re Lister-Petter Americas,

---

[10] "Rehabilitation" refers to a debtor's ability "to restore the viability of
its business," and "is a more demanding standard than reorganization," which
can include a liquidation as occurred in this case.  In re Paterno, 511 B.R.
62, 68 (Bankr. M.D.N.C. 2014).

_Inc._, No. 15-10502, 2020 WL 598433, at *5 n.36-38 (Bankr. D. Kan.
Feb. 6, 2020) (and accompanying text) ("[a]t least three circuit
courts of appeal have drawn the operating-liquidating distinction,
denying _Reading_ treatment to victims of liquidating trustee
mishaps") (citing _In re Hemingway Transp., Inc.,_ 954 F.2d 1, 6-7
(1st Cir. 1992); _In re Res. Tech. Corp.,_ 662 F.3d 472, 476-77 (7th
Cir. 2011) (rejecting the application of _Reading_ in a liquidating
case during which the debtor "was not operating in any meaningful
sense," and finding that "the policy against permitting bankrupt
firms to externalize the costs of their torts—depends on whether
the bankrupt firm is operating, not which part of the Bankruptcy
Code (that is, whether Chapter 7 or Chapter 11) it is operating
under"); and _In re Abercrombie_, 139 F.3d 755, 758 (9th Cir. 1998)
(refusing to extend _Reading_, and observing that it applies only in
operating cases because the costs of rehabilitation of a debtor's
business benefit creditors).

In this case, none of the disputed claims of former employees
under the Prior Health Plan relate to Debtors' limited postpetition
wind-down in connection with the rapid liquidation of Debtors'
assets. All the claims under the New Health Plan for workers who
returned have been paid, ECF No. 3887, ¶ 12, and the Trust does
not dispute that the unpaid benefits for returning employees under
the Prior Health Plan are entitled to priority. _See_ ECF No. 3887,
at 19-21. Therefore, unlike the tort claims in _Reading_, there is

no connection between any limited post-petition operations and the former employee claims, and courts have not extended the <u>Reading</u> exception in these circumstances.  This Court similarly will not expand <u>Reading</u> in contradiction of the intended narrow application of administrative priority.

   **B.  The benefit to the estate provided by the furloughed employees must be actual and not speculative.**

   Absent the <u>Reading</u> exception, "[a] postpetition expense may only qualify as an actual, necessary expense of preserving the estate to the extent that the incurring of such expense conferred some concrete benefit upon the estate."  <u>In re Right Time Foods, Inc.</u>, 262 B.R. 882, 884 (Bankr. M.D. Fla. 2001) (citing <u>In re Subscription Television of Greater Atlanta</u>, 789 F.2d 1530, 1532 (11th Cir. 1986)).  "'[*T*]*he mere potential of benefit to the estate is insufficient* for the claim to acquire status as an administrative expense.'"  <u>Ford Motor</u>, 35 F.3d at 866 (quoting <u>In re ICS Cybernetics, Inc.</u>, 111 B.R. 32, 36 (Bankr. N.D.N.Y. 1989)).  As the Eleventh Circuit put it:

> That which is actually utilized by a trustee in the operation of a debtor's business is a necessary cost and expense of preserving the estate and should be accorded the priority of an administrative expense.  That which is thought to have some potential benefit, in that it makes a business more likely salable, may be a benefit but is too speculative to be allowed as an "actual, necessary cost and expense of preserving the estate."

<u>Subscription Television</u>, 789 F.2d at 1532; <u>see also</u> <u>Right Time Foods</u>, 262 B.R. 882 (holding that costs of maintaining health

coverage were not actual, necessary costs or expenses of preserving
the estate because the debtor did not employ anyone during the
period when those costs accrued).

In this case, the DOL argues that continued operation of the
Prior Health Plan provided a benefit to the estate because it gave
the furloughed employees an incentive to remain with the company
which made the company more attractive to potential buyers.  ECF
No. 3912, at 20.[11]  This argument is speculative and insufficient
to confer an actual benefit on the estate.  The fact that potential
purchasers may have valued continued healthcare benefits to
furloughed employees and made such benefits a requisite to their
offers does not constitute an actual benefit to the estate.  This
is true even if the offers of such potential purchasers may have
facilitated higher offers from actual purchasers who imposed no
such requirement because such attenuated benefit is too
speculative to constitute an actual benefit.  An actual benefit to
the estate only exists if the actual purchasers made continued

---

[11] The DOL cites In re ES2 Sports & Leisure, LLC, 519 B.R. 476, 482 (Bankr.
M.D.N.C. 2014), for the proposition that a potential benefit when negotiating
with a purchaser is sufficient to confer administrative priority.  ECF No. 3912,
at 17.  The DOL's reliance on ES2 is misplaced.  In that case, the court denied
administrative priority because the use of the equipment did not actually
benefit the estate, and there was no evidence "that the potential availability
of the Equipment was beneficial to the Estate when negotiating with the
purchaser."  The court was not discussing the potential benefit, it was
discussing the potential availability.  If the lease for the equipment in that
case were a true lease, any assumption and assignment of the lease would have
been subject to court approval after notice and hearing.  The fact that
assumption and assignment was subject to court approval made the leased
equipment potentially available.  But, as the court stated, in order to confer
administrative priority, the record would have had to demonstrate that its
potential availability was beneficial in the negotiations with the purchaser.

healthcare benefits to furloughed employees a condition of their consummation of a purchase.  At the hearing on the Motion, the DOL conceded that none of the asset purchase agreements approved in this case contained such a requirement or warranty by the estates.  Thus, to the extent that the requests for production seek documents and communications related to the negotiations of potential purchasers, or documents and communications related to actual purchasers that do not discuss continued health benefits to furloughed employees, the requests are overly broad.  Even if relevant, the request must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, . . . the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  Despite the absence of any provision in the applicable asset purchase agreements for Debtors to retain furloughed employees, the Court nevertheless will permit discovery related to the communications with actual purchasers as provided herein.

**C.   The DOL's requests for production of documents will be allowed to the extent relevant to a determination of the benefit to the estates.**

Having determined that the Reading exception does not apply, and that only the portion of health care benefits that actually benefited Debtors' estates might be entitled to priority, the Court

will address the breadth and burden of the disputed requests.

### i.  Request for Production of Documents No. 5

Request 5 seeks all communications with UHSI regarding the
Prior Health Plan [excluding invoices for payment] for the period
from June 1, 2019, through March 31, 2021.  ECF No. 3972, at 6.
The DOL contends that the putative benefit to the estates of
maintaining the health care plan was to keep furloughed employees
available for potential purchasers, thereby making the assets
potentially more attractive to purchasers.  ECF No. 3912, at 20.
As discussed above, this speculative benefit is insufficient.  The
DOL further contends that Debtors must have additional responsive
documents because in its August 25, 2019 Motion to terminate the
Prior Health Plan, ECF No. 879, Debtors referenced pre-termination
communications with the third-party plan administrator regarding
giving furloughed employees notice of termination.  <u>Id.</u> at 11-12.[12]
This theory necessarily terminates on the date the Prior Health
Plan was terminated.  Thus, the Court will compel the Trust to
produce all responsive non-privileged[13] documents in its custody
and control for the period from July 1, 2019, through August 31,
2019, that refer to maintaining the Prior Health Plan or

---

[12] The cited communication likely is relevant only to the DOL's theory for
application of the <u>Reading</u> exception, which the Court has determined does not
apply in this liquidating case.  Nevertheless, the burden of producing
communications with UHSI regarding maintaining the plan or plan termination
during such a short time frame should not be substantial.

[13] The Court discusses the extent of privilege below.

terminating the Prior Health Plan.

### ii.  Request for Production of Documents No. 7

Request 7 seeks all documents exchanged and/or communications between Debtors and any potential or actual purchasers of assets of Debtors for the period from July 1, 2019, through September 17, 2019.  ECF No. 3972, at 6.  The DOL contends that communications between the Trust and the potential and actual purchasers of Debtors' assets will indicate whether continuing to provide health insurance for furloughed employees was a benefit to the bankruptcy estate.  Id. at 10.  However, this request is overbroad to the extent that it seeks documents and communications between Debtors and potential purchasers who did not consummate sales with the estates.  As explained above a mere potential benefit to the estates is insufficient to confer administrative expense priority.  Therefore, the Court will compel the Trust to produce all responsive non-privileged documents exchanged and communications in its custody and control: (1) between Debtors and actual purchasers of estate assets; (2) which exchanges and communications occurred between July 1, 2019, and August 31, 2019; and (3) which discuss or relate to continuing to provide healthcare benefits to furloughed employees.

### iii.  Request for Production of Documents No. 10

Request 10 seeks documents and/or communications discussing the furloughing of Debtors' employees for the period from June 1,

2019, through March 31, 2021.  ECF No. 3972, at 12.  This request is overly broad to the extent that it seeks communications for the period after the Prior Health Plan was terminated on August 31, 2019, or seeks either internal discussions of potential value or communications with potential purchasers.  Even if Debtors' management thought there might be value in maintaining the Prior Health Care Plan before August 31, 2019, that internal speculation or hope does not confer an actual benefit to the estate.  Globe Metallurgical, 312 B.R. at 40 ("focal point of the allowance of a priority is to prevent unjust enrichment of the estate," not the damage to the claimant).  Therefore, the Court will compel the Trust to produce all responsive non-privileged documents and communications: (1) for the period from June 1, 2019, through August 31, 2019; and (2) which discuss or are related to maintaining the Prior Health Plan in connection with a transaction or contemplated transaction with any actual purchaser of assets from the estates.

## II. The ERISA fiduciary exception to the attorney-client privilege is inapplicable to the documents sought by the DOL.

The DOL contends that the Trust's privilege log is insufficient to allow the DOL to assess: the relevancy of the documents, whether there is adequate basis for the privilege asserted, and whether the ERISA fiduciary exception applies.  ECF No. 3972, at 16.  Therefore, the DOL requests an *in camera* review

of the documents listed on the privilege log. Id. The Trust
contends that the privilege log contains a clear description of
the communication or document at issue without disclosing
privileged information, the ERISA fiduciary exception is
inapplicable, in camera review is unnecessary, and none of the
documents identified on the privilege log should be produced. ECF
No. 3981, at 15.

"[T]he attorney-client privilege is, perhaps, the most sacred
of all legally recognized privileges." United States v. Bauer,
132 F.3d 504, 510 (9th Cir. 1997). However, "[b]ecause it impedes
full and free discovery of the truth, the attorney-client privilege
is strictly construed." Weil v. Inv./Indicators, Rsch. & Mgmt.,
Inc., 647 F.2d 18, 24 (9th Cir. 1981). Courts recognize a limited
exception to attorney-client privilege in the context of fiduciary
relationships. "Rooted in the common law of trusts, the fiduciary
exception is based on the rationale that the benefit of any legal
advice obtained by a trustee regarding matters of trust
administration runs to the beneficiaries." Solis v. Food Emps.
Lab. Rels. Ass'n, 644 F.3d 221, 226 (4th Cir. 2011). The exception
developed in the context of corporate derivative actions, in which
courts found that a corporation could not invoke attorney-client
privilege against shareholders in suits brought by the
shareholders against the corporation for breaches of fiduciary

duty.  See, e.g., Garner v. Wolfinbarger, 430 F.2d 1093 (5th Cir. 1970).

The fiduciary exception also has been applied in the context of ERISA enforcement actions: "'where an ERISA trustee seeks an attorney's advice on a matter of plan administration and where the advice clearly does not implicate the trustee in any personal capacity, the trustee cannot invoke the attorney-client privilege against the plan beneficiaries.'" Solis, 644 F.3d at 227 (quoting Mett, 178 F.3d at 1064).[14]  This exception does not apply to "communications between ERISA fiduciaries and plan attorneys regarding non-fiduciary matters, such as adopting, amending, or terminating an ERISA plan." Id. at 228 (citing Bland v. Fiatallis N. Am., Inc., 401 F.3d 779, 787-88 (7th Cir. 2005)); see also In re Jafroodi, No. 9:19-BK-11918-MB, 2023 WL 4289523, at *15 (Bankr. C.D. Cal. June 30, 2023) ("The exception simply provides that trustees owe a fiduciary duty to plan beneficiaries and may not hide behind the attorney-client privilege when beneficiaries *sue the trustee for malfeasance and request discovery in furtherance of such a lawsuit*.") (emphasis added).

A review of the caselaw does not present any case in which a court has applied the ERISA fiduciary exception to a CRO/Debtor in

---

[14] The Solis Court said in dicta that "there is no legitimate basis on which to distinguish between [the attorney-client privilege and the work product doctrine] in the application of the fiduciary exception in the ERISA context." 644 F.3d at 233.

Possession, who is managing bankruptcy estates and an ERISA plan through a third-party administrator.  See OHI Asset (CT) Lender, LLC v. Woodland Manor Improvement Ass'n by & through Shine, No. CA 09-219 ML, 2010 WL 11693554, at *3 (D.R.I. Aug. 13, 2010) (noting that the fiduciary exception appears to have been applied only in traditional trusteeship situations or in an ERISA context but not in the context of a court-appointed trustee, a court-appointed receiver, or a court-appointed bankruptcy trustee);[15] see also Solis, 644 F.3d at 227 (collecting cases recognizing the exception to assertions of attorney-client privilege by ERISA fiduciaries in the context of ERISA enforcement actions).

Even if the fiduciary exception might apply to an operating debtor in possession who is acting as a plan fiduciary, it does not apply in this liquidating case.  The fiduciary exception is grounded in the premise that, when performing fiduciary functions, the beneficiary, rather than the fiduciary, is the ultimate client who is entitled to claim privilege.  Petz v. Ethan Allen, Inc., 113 F.R.D. 494, 497 (D. Conn. 1985) (collecting cases).  The agreed topic for discovery in this case is solely what amount, if any, of the DOL Claim is entitled to administrative priority.  ECF No.

---

[15] The OHI Court reasoned that the rationale of the fiduciary exception, that the trustee is not the real client, but rather a representative of the beneficiaries, is not persuasive when the interests of the beneficiaries are diverse and in conflict.  2010 WL 11693554, at *3-4 ("the fiduciary exception ceases to apply once the interests of the parties have diverged") (collecting cases).

3951, ¶ 2.  Since the <u>Reading</u> exception does not apply, this issue
is limited to a determination of the extent of any actual benefit
to the estates in maintaining health benefits for furloughed
employees under the Prior Health Plan.  Determination of
administrative priority is not an ERISA enforcement action or a
claim for damages under ERISA, and any putative breach of ERISA is
not relevant to the priority determination for the reasons stated
above.  Entitlement to administrative expense priority arises
under the Bankruptcy Code, not ERISA.  Thus, whether Debtors or
the Trust upheld any respective fiduciary duties or complied with
ERISA is not relevant to determining what portion, if any, of the
DOL Claim provided an actual benefit to the estates and might be
entitled to administrative priority.  Unlike cases in which the
fiduciary exception applies, the priority of the DOL Claim is not
based on any putative breach of fiduciary duty to the
beneficiaries.  The DOL has not provided any authority applying
the ERISA fiduciary exception outside of this context,[16] and this
case is inapposite to those in which courts have applied the ERISA
fiduciary exception where discovery is sought in furtherance of a
claim based on such a breach of fiduciary duty or other ERISA

---

[16] Moreover, even if the ERISA fiduciary exception were applicable to the
circumstances of this case, the exception would not apply to the type of
communications that are relevant to this dispute because legal advice regarding
whether to continue to provide coverage to furloughed employees in connection
with termination of the Prior Health Plan is a non-fiduciary matter to which
the ERISA exception does not apply.  <u>See Solis</u>, 644 F.3d at 228.

violation.    Therefore,    the    ERISA    fiduciary    exception    is

inapplicable.[17]

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, and DECREED

as follows:

1.    Within 30 days of entry of this Order, unless otherwise

extended by stipulation in writing (which writing may include

electronic mail) between the parties or by further order of the

Court, the Trust must: (a) produce all non-privileged documents

responsive to the requests for production as provided herein; (b)

produce a transmittal letter describing to which requests each

document is responsive; and (c) with respect to any responsive

documents the Trust withholds based on a claim of privilege, the

Trust must produce an updated privilege log that satisfies the

content    and    specificity    requirements    of    Fed.    R.    Civ.    P.

---

[17] The DOL requests that the Court conduct an *in camera* review of Revised Log
Documents 1, 2, 3, 24-26, 28, 29, 43, 44, 45, 48, 50, 58, 60, 62, 107-110, 112,
165, 166, 168-171, 177, 179, 182-185, 200, 201, 240, 241, 343, 352.  ECF No.
3972, at 16-24.  The DOL's stated basis for this review is solely to determine
whether the documents fall within the fiduciary exception, or with respect to
the documents described as "draft former employee update notice[s]," whether
the notice process constituted a breach of ERISA, not whether the description
is sufficient to determine relevancy with respect to any actual benefit to the
estates or to assess privilege.  With respect to document 335, the Court is
unable to determine whether it would be responsive to the requests as compelled
herein and will reserve any ruling on that document to the extent that it is
responsive, and the claim of privilege remains.  In any event, the Court has
determined that the fiduciary exception does not apply in this case, and any
putative breach of ERISA with respect to the notices is not relevant to the
priority of the DOL Claim for the reasons stated herein in.  Therefore, the
Court will not conduct an *in camera* review or compel production of the other
listed documents at this time.  If any of the affected documents are identified
as responsive to the responses compelled in this order but again withheld on
the assertion of privilege, the Court will consider then whether the privilege
applies and whether to conduct an *in camera* review.

26(b)(5)(A)(ii);

2.    The DOL shall have 30 days after service of any updated privilege log to object to any claim of privilege asserted in the updated privilege log, or to the sufficiency of the updated privilege log;

3.    The DOL shall have until 30 days after the deadline for production established in this Order to seek enforcement of this Order.

[END OF DOCUMENT]

## Parties to be Served
19-30289

All parties of record via CM/ECF